**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF SHERVIN PISHEVAR FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. _____. |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...............................................................................................1

I.   FACTUAL BACKGROUND ......................................................................................2

    A.   The Parties and Relevant Third-Parties ........................................................2

    B.   Petitioner's Encounter With British Police...................................................4

    C.   Respondent Obtains Forged Police Report ...................................................5

    D.   Respondent Makes Enquiries About The Arrest And The Forged Police
        Report...........................................................................................................6

    E.   Respondent's Publication Of Fake News Article Disseminating Forged
        Police Report................................................................................................8

    F.   Petitioner Uncovers, And British Police Confirm, That Report Is Fake ...............9

    G.   The First Section 1782 Application .............................................................12

    H.   Petitioner's Contemplated Proceedings ......................................................13

    I.   Respondent Possesses Highly Material Information Concerning The
       Forged Report Distributors .........................................................................15

II.   ARGUMENT ...........................................................................................................16

    A.   Legal Framework ........................................................................................16

    B.   Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782. ...............18

        1.   Respondent Is "Found" In The Southern District Of New York. ..............18

        2.   The Discovery Sought Is For Use In Foreign Proceedings.......................19

        3.   Petitioner Is An "Interested Person." ......................................................21

    C.   All Of The Discretionary Factors Of Section 1782 Weigh In Favor of
       Permitting The Discovery Petitioner Seeks. ...............................................22

        1.   The First *Intel* Factor Favors Granting Discovery....................................22

        2.   The Second *Intel* Factor Favors Granting Discovery. ..............................23

        3.   The Third *Intel* Factor Favors Granting Discovery. .................................24

        4.   The Fourth *Intel* Factor Favors Granting Discovery................................25

III.   CONCLUSION........................................................................................................27

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Application of Shervin Pishevar for an Order to Take Discovery for use in Foreign
    Proceedings Pursuant to 28 U.S.C.1782,*
    No. 19-mc-00370, Dkt. 8 (S.D.N.Y.)..................................................................... 2, 19

*Brandi-Dohrn v. IKB Deutsche Industriebank AG,*
    673 F.3d 76 (2d Cir. 2012)........................................................... 17, 18, 20, 24

*Branzburg v. Hayes,*
    408 U.S. 665 (1972)...................................................................................... 26

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.,*
    613 F. App'x 319 (5th Cir. 2015) ................................................................. 20

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.,*
    798 F.3d 113 (2d Cir. 2015)......................................................................... 21

*Chevron Corp. v. Berlinger,*
    629 F.3d 297 (2d Cir. 2011).......................................................................... 26

*Euromepa S.A. v. R. Esmerian, Inc.,*
    51 F.3d 1095 (2d Cir. 1995)..................................................................... 17, 23

*In re Accent Delight Int'l Ltd.,*
    869 F.3d 121 (2d Cir. 2017).......................................................................... 21

*In re Application of Chevron Corp.,*
    709 F. Supp. 2d 283 (S.D.N.Y. 2010)............................................................ 26

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery,*
    121 F.3d 77 (2d Cir. 1997)...................................................................... 17, 24

*In re Application of OOO Promnesftstroy,*
    No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct 15, 2009) .......................... 23

*In re Bayer AG,*
    146 F.3d 188 (3d Cir. 1998).......................................................................... 25

*In re Catalyst Managerial Servs., DMCC,*
    680 F. App'x 37 (2d Cir. 2017) ..................................................................... 20

*In re Children's Inv. Fund Found. (UK),*
    363 F. Supp. 3d 361 (S.D.N.Y. 2019)........................................................ 20, 21

*In re Christensen*,
   No. M19-138 (JFK), 2006 WL 278169 (S.D.N.Y. Feb. 3, 2006).......................................... 26

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002)................................................................................................... 18

*In re Ex Parte Application of SERETM*,
   2013 WL 6141655 (N.D. Cal. Nov. 21, 2013) ..................................................................... 21

*In re Fed'n Internationale de Basketball, for a Subpoena Pursuant to 28 U.S.C. | 1782*,
   117 F. Supp. 2d 403 (S.D.N.Y. 2000).................................................................................... 26

*In re Furstenberg Fin. SAS*,
   No. 18-MC-44(JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018) ................................... 19

*In re Hornbeam Corp.*,
   722 F. App'x 7 (2d Cir. 2018) .............................................................................................. 19

*In re Kiobel*,
   2017 WL 354183 (S.D.N.Y. Jan 24, 2017) .......................................................................... 19

*In re Mangouras*,
   No. 17-MC-172, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) ........................................... 19

*In re: Application of Bracha Found.*,
   663 F. App'x 755 (11th Cir. 2016) ....................................................................................... 20

*In re Republic of Ecuador*,
   No. 2:11-MC-00052 GSA, 2011 WL 4089189 (E.D. Cal. Sept. 13, 2011)........................... 18

*In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP
   Pursuant to 28 U.S.C. sec. 1782*,
   110 F. Supp. 3d 512 (S.D.N.Y. 2015).................................................................................... 18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   542 U.S. 241 (2004).......................................................................................................... passim

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
   62 F. Supp. 3d 358 (S.D.N.Y. 2014)..................................................................................... 20

*McKevitt v. Pallasch*,
   339 F.3d 530 (7th Cir. 2003) ............................................................................................... 26

*Mees v. Buiter*,
   793 F.3d 291 (2d Cir. 2015).................................................................................................. 19

*von Bulow by Auersperg v. von Bulow*,
   811 F.2d 136 (2d Cir. 1987).................................................................................................. 26

## **Statutory Authorities**

28 U.S.C. § 1782 .................................................................................................................. passim

N.Y. Civ. Rights Law § 79-h(b)(1)(8) ..................................................................................... 26

Shervin Pishevar ("Petitioner") respectfully submits this Memorandum of Law in support of his Application and Petition pursuant to 28 U.S.C. § 1782 ("Section 1782"), for an order authorizing him to obtain limited discovery from Mr. Marcus Baram ("Baram," or "Respondent"), in the form of the attached subpoenas *duces tecum* and *ad testificandum* (the "Subpoenas") (the "Application").[1]

## PRELIMINARY STATEMENT

This Application arises from the forgery of a City of London Police report ("Forged Police Report") that was subsequently used in an article ("Fake News Article") authored by the Respondent—despite being repeatedly told by the British police, prior to publication, that the report was fake.  The article, which likely encouraged other publications to further disseminate the contents of the Forged Police Report, caused Petitioner to suffer irreparable harm to his reputation and standing.  Through his own admission, the Respondent has obtained a copy of the Forged Police Report directly from the distributor of the Forged Police Report ("Forged Report Distributor 1") and the Respondent therefore has possession, custody, or control of information sufficient to identify the author(s) (the "Forger" or "Forgers") and/or distributor(s) of the Forged Police Report, including Forged Report Distributor 1 ("Forged Report Distributors").  Petitioner brings this Application to obtain that information for use in contemplated criminal and civil proceedings in England against the Forger(s) and Forged Report Distributors ("Contemplated English Proceedings").

---

[1]   The Subpoenas are attached as Exhibit 2 to the Declaration of Lucas Bento, dated October 31, 2019 ("Bento Decl.").

This Application meets all of the requirements of Section 1782.  Respondent "resides" and is "found" in this district because he works as a Senior News Editor at Fast Company's headquarters located in this district.  The discovery sought by the Petitioner is highly material and relevant to the issues at stake in the Contemplated English Proceedings and unobtainable elsewhere. Moreover, each of the discretionary factors laid down in the Supreme Court's *Intel* decision favor the discovery sought by Petitioner.  Petitioner has been the victim of a multi-jurisdictional conspiracy to destroy his character and seeks information to obtain justice abroad.  Accordingly, the Petitioner respectfully requests that the Court grant Petitioner's Application and permit Petitioner to serve the Subpoenas on Respondent.[2]

## I.  FACTUAL BACKGROUND

### A.  The Parties and Relevant Third-Parties

*Shervin Pishevar (Petitioner).*  Shervin Pishevar is a venture capital investor, entrepreneur and philanthropist.[3]  He is the co-founder of Sherpa Capital, a leading venture capital firm.  He was chosen by the U.S. Government as an "Outstanding American by Choice", one of the only

---

[2] This is the second Section 1782 application filed by Petitioner on this matter.  The first application was granted by Magistrate Judge Stewart D. Aaron on August 9, 2019 ("First Section 1782 Application").  *See In re Application of Shervin Pishevar for an Order to Take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. 1782*, No. 19-mc-00370, Dkt. 8 (S.D.N.Y. Aug. 9, 2019).  However, Fast Company and Mansueto (Respondents in the First Section 1782 Application) refused to disclose the identity of Forged Report Distributor 1 purportedly on the basis of "reporter's privilege".  *See* Bento Decl., Ex. 9.  However, and as explained below, the "reporter's privilege" does not apply in these circumstances.

[3] Declaration of Charlotte Watson, dated October 31, 2019 ("Watson Decl."), ¶9; Declaration of Lord Kenneth Macdonald, dated October 31, 2019 ("Macdonald Decl."), ¶8.

100 naturalized Americans to be so chosen since the inception of the award.[4]  In 2015, he was appointed to the J. William Fulbright Foreign Scholarship Board.[5]

*Marcus Baram (Respondent)*. Marcus Baram is a Senior News Editor at Fast Company in New York.[6]  In September 2017, Mr. Baram was given a copy of the Forged Police Report by Forged Report Distributor 1.[7]  On October 20, 2017, the City of London Police—the purported author of the Forged Police Report—confirmed that the Forged Police Report was not authentic, and further clarified that the report format was not one used by the City of London Police, nor was the purported officer listed in the Forged Police Report an officer of the City of London Police.[8] On November 8, 2017, Mr. Baram nonetheless published an article in Fast Company entitled "'Smear Campaign' Or Not, Tech Investor Shervin Pishevar Really Was Arrested Earlier This Year" ("Fake News Article").[9]  To this day, the Fake News Article makes use of and references the Forged Police Report.[10]

*Fast Company (Third-Party).  Fast Company* is a magazine founded in 1995 with an "editorial focus on innovation in technology, leadership, world changing ideas, creativity, and

---

[4]  Macdonald Decl. ¶8.

[5]  Bento Decl., Ex. 14.

[6]  Bento Decl., Ex. 6.

[7]  Bento Decl., Exs. 8, 10.

[8]  Watson Decl., Ex. 3; Macdonald Decl., Ex. 3.

[9]  Watson Decl., Ex. 5.

[10]  *Id*.  Petitioner has not attached a copy of the Forged Police Report to this application to minimize further dissemination of the forged document.  However, Petitioner is prepared to promptly provide a copy of the Forged Police Report to the court for *in camera* review.

design".[11]   The magazine is headquartered at 7 World Trade Center, New York, NY.   Fast Company is a fictitious business name and/or brand operated and owned by Mansueto Ventures LLC and does not maintain distinct legal personality.   Fast Company published the Fake News Article, which references and makes use of the contents of the Forged Police Report.[12]

**Mansueto Ventures LLC (Third-Party).**   Mansueto Ventures LLC is the publisher of Fast Company.[13]   Mansueto is incorporated in Delaware and headquartered at 7 World Trade Center, New York, NY.[14]

### B.   Petitioner's Encounter With British Police

On May 27, 2017, the Petitioner had consensual sexual intercourse with a female acquaintance at a hotel in London.[15]   Later that day, the Petitioner was woken by police officers in his hotel room and arrested by City of London Police ("COLP") on suspicion of sexual assault.[16] The arrest was a total shock to the Petitioner, who was understandably distressed and traumatized by it.[17]   The Petitioner was released on bail on May 28, 2017 and on July 28, 2017 the COLP confirmed to the Petitioner that they would be taking no further action against him due to insufficient evidence.[18]

---

[11]   Bento Decl., Ex 5.

[12]   Watson Decl. ¶21 & Ex. 5.

[13]   Bento Decl., Ex. 3.

[14]   *Id.*

[15]   Watson Decl. ¶10.

[16]   Watson Decl. ¶11.

[17]   *Id.*

[18]   Watson Decl. ¶12.

After he received enquiries into the arrest by a journalist for a UK newspaper (the *Sun*), on June 21, 2017 the Petitioner obtained an injunction in England preventing the *Sun* from naming or identifying the Petitioner in relation to the arrest in any future publications (the "Injunction").  The Injunction was granted on the basis that if the *Sun* published an article speculating about the Petitioner's arrest it would have been a gross invasion of his privacy rights as protected by Article 8 of the Human Rights Act 1998.[19]

On August 1, 2017, COLP released a press statement which stated: "Following an investigation into a report of a rape at a location on Poultry, EC2 [London] on Saturday 27 May 2017, we can confirm that no further action will be taken.  A 43-year-old man from San Francisco was initially arrested on suspicion of rape before being released under investigation".[20]  The Petitioner was not named and as per the press statement on August 1, 2017, COLP announced the investigation had ended.[21]

### C.    Respondent Obtains Forged Police Report

Based on information provided to Petitioner in response to a prior Section 1782 subpoena to Fast Company in the First Section 1782 Application, in September 2017, the Respondent met with an individual—i.e. Forged Report Distributor 1—in a café in Washington, D.C.[22]  At that meeting, Forged Report Distributor 1 handed the Respondent a USB pen drive containing a copy of the Forged Police Report, which Forged Report Distributor 1 allegedly obtained from a "male

---

[19]  Watson Decl. ¶13.

[20]  Watson Decl. ¶14.

[21]  *Id.*

[22]  Bento Decl., Ex., 10; Macdonald Decl., Ex. 7.

lawyer in the United Kingdom" ("<u>Forged Report Distributor 2</u>").[23]  Forged Report Distributor 1 also communicated additional fabricated allegations concerning the arrest, including the Petitioner purportedly paid the alleged victim money to "drop the charges".[24]  Based on representations made by Fast Company's general counsel in response to the First Section 1782 Application, Respondent knows the identity of Forged Report Distributor 1 but has refused to disclose it on the purported basis of "reporter's privilege".[25]

> ### D.      Respondent Makes Enquiries About The Arrest And The Forged Police Report

On or around October 13, 2017, the Respondent contacted the COLP press team to enquire further about Petitioner's arrest.[26]  COLP responded that the investigation into the arrest was no longer ongoing and as such no further action would be taken.[27]  On October 15, 2017, the Respondent contacted COLP again, this time to ask whether they would confirm it was the Petitioner that was arrested.[28]  The following day COLP responded that, as per COLP policy, they could neither confirm nor deny any name's connection with an arrest.[29]  At the same time, COLP also confirmed that the investigation was not being reviewed and would not be reopened.[30]

---

[23]   Bento Decl., Exs. 8, 10, 11.  According to Respondent, the Forged Report Distributor allegedly obtained the Forged Police Report from a "male" lawyer in the United Kingdom.  *See* Bento Decl., Exs. 10-11.

[24]   Bento Decl., Ex. 11.

[25]   Bento Decl., Exs. 7, 11.

[26]   Watson Decl. ¶15.

[27]   *Id.*

[28]   *Id.*

[29]   *Id.*

[30]   *Id.*

On October 18, 2017, the Respondent emailed COLP attaching a copy of what he claimed to be a police report (i.e. the Forged Police Report) that he had obtained which named the Petitioner and, as subsequently confirmed by COLP, contained false information.[31]  Due to the fraudulent details contained in the Forged Police Report, anyone who read it would wrongly associate Petitioner with disreputable or notorious conduct.[32]  The Respondent requested that COLP confirm whether the Forged Police Report was authentic.[33]  On October 20, 2019—***almost three weeks before Respondent published the Fake News Article***—COLP responded that the Forged Police Report was ***not authentic***, and clarified that report format used in the Forged Police Report was ***not one used by COLP***, and further, that the purported police officer who authored the report ***was not, in fact, an officer employed by COLP***.[34]

The COLP further confirmed its findings in an internal investigation into the Forged Police Report and shared the results of that investigation with the Respondent in an email dated October, 23, where COLP confirmed that the Forged Police Report was "false".[35] On October 24, 2017, COLP produced a report, which stated that it was "unlikely" that the Forged Police Report had been created within COLP or leaked by COLP to the media.[36]  Thereafter, on or around October 24, 2017, COLP confirmed to the Respondent and others that the report was a fake.[37]  In another

---

[31]   Watson Decl. ¶16.

[32]   *Id.*

[33]   *Id.*

[34]   *Id.*, Ex. 3.

[35]   Watson Decl. ¶17.

[36]   Watson Decl. ¶18.

[37]   *Id.*

email in response to the Respondent, dated October 31, 2017, COLP confirmed that Petitioner's case had not been reopened.[38]

On November 7, 2017, the Respondent contacted COLP again and enquired whether they could provide further details about the case.[39]  COLP again confirmed Petitioner's case had not been reopened and stated they had no further comment on the matter.[40]

After being contacted by various media organizations requesting comment on the Forged Police Report, on November 8 2017, the Petitioner had no choice but to release a statement in which he confirmed that in May 2017 he was detained briefly in London in connection with an alleged sexual assault, an allegation categorically denied by the Petitioner.[41] The statement also confirmed that in July 2017 he was informed that no further action would be taken against him.[42]

### E.    Respondent's Publication Of Fake News Article Disseminating Forged Police Report

Notwithstanding the fact that COLP previously communicated to the Respondent that the Forged Police Report was false, on November 8, 2017, the Respondent and Fast Company nonetheless published the Fake News Article.[43]  The article made reference to details contained in the Forged Police Report, including private information about the Petitioner as well as false

---

[38]  *Id.*

[39]  Watson Decl. ¶19.

[40]  *Id.*

[41]  Watson Decl. ¶20.

[42]  *Id.*

[43]  Watson Decl. ¶21 & Ex. 5.

information about the circumstances leading to the arrest.[44]  The Fake News Article was wrongly afforded greater credibility because it referred to the details of the Forged Police Report.[45]

The following day, on November 9, 2017, more publications released articles referring to the contents of the Forged Police Report.  The New York Post published an article entitled "Billionaire ally of ex-Uber CEO busted on rape charge" which included details from the Forged Police Report.[46]  Forbes published an article entitled "Shervin Pishevar, arrested but never charged over alleged rape, says he's a victim of 'smear campaign'" which stated that "a copy of the police report obtained by Forbes, confirms the details of the arrest and the identity of the suspect."[47]

### F.    Petitioner Uncovers, And British Police Confirm, That Report Is Fake

On November 9, 2017, Hickman & Rose, English criminal counsel for the Petitioner, contacted COLP to enquire whether any private information relating to the Petitioner had been disclosed to the media following the arrest.[48]  On November 10, 2017, COLP confirmed that no such disclosure had been made and Hickman & Rose responded with a request for a copy of the Forged Police Report.[49]  On November 13, 2017, COLP declined the request due to ongoing enquiries as to the purported commission of any criminal offences related to the Forged Police Report.[50]

---

[44]   *Id.*

[45]   Watson Decl. ¶21.

[46]   Watson Decl. ¶22.

[47]   *Id.*

[48]   Watson Decl. ¶23.

[49]   *Id.*

[50]   *Id.*

In an email to COLP dated September 28, 2018, Hickman & Rose renewed their request for a copy of the Forged Police Report as well as confirmation as to the source that provided it to COLP.[51]  In a response dated October 25, 2018, COLP's in-house lawyer stated that they "can confirm that there is no criminal investigation in respect of the document in question.  The City of London Police is content for me to inform you that the screenshot of the document was supplied to them by Marcus Baram of Fast Company.  The City of London Police is not prepared to provide a copy of the screenshot without a court order requiring disclosure."[52]

On November 1, 2018, Hickman & Rose made a Subject Access Request (similar to a Freedom of Information request in the U.S.) to the COLP for the Forged Police Report.[53]  On April 4, 2019, Hickman & Rose subsequently made a disclosure application to the English High Court seeking to compel the COLP to disclose the information that had been requested.[54]  On May 29, 2019, the English High Court ordered the COLP to comply with the request.[55]  On the same day, the COLP complied and provided a copy of the Forged Police Report to Hickman & Rose.[56]  The COLP further confirmed via a signed witness statement from Teresa La Thangue (COLP's Communications Director) that the Forged Police Report was fake:

> "2. On the 18 October 2017, Corporate Communications received **an email from Marcus Baram, a journalist, stating that he had obtained the 'arrest report'** in relation to matter that he had previously enquired about; a report of rape at the

---

[51]  Watson Decl. ¶25.

[52]  Watson Decl. ¶25 & Ex 6.

[53]  Watson Decl. ¶26; Macdonald Decl. ¶17.

[54]  Macdonald Decl. ¶18; Watson Decl. ¶26.

[55]  Macdonald Decl. ¶18; Watson Decl. ¶27.

[56]  The copy was a screenshot of the purported Forged Police Report which had been sent by Mr. Baram to the COLP.

Ned Hotel on the 27 May 2017. I now produce marked "TLT/I" a copy of the said email.

3. In his email of the 18 October 2017, Marcus Baram asked us to verify that the document attached to his email was authentic. The attached document was a screenshot of what appeared to be an arrest report. I now produce marked "TLT/2" a copy of the attachment

4. The 'arrest report' was sent to the City of London Police's Professional Standards Directorate who were **able to confirm that the document was not a City of London Police document**.

5. Thereafter, <u>**Marcus Baram was told**</u>**, along with any other journalists who enquired,** <u>**that it was a fake**</u>**, explaining that it was not a document that is used by the City of London Police, and that the officer named does not work and has not worked for the City of London Police**."[57]

These findings are further supported by Detective Sergeant Jonathan Witt (a COLP officer), who concluded in a report dated October 24, 2017 that the Forged Police Report was "not authentic."[58]  On June 11, 2019, the COLP provided additional documents to Petitioner, detailing the COLP's internal investigation into the Forged Police Report's authenticity as well as contact with media outlets following enquiries into the Petitioner's arrest.[59]  Whilst this information was helpful, it failed to assist the Petitioner in identifying the author(s) or distributor(s) of the Forged Police Report.[60]

---

[57]  Macdonald Decl. ¶19 & Ex. 5 (emphasis added); Watson Decl. ¶29.

[58]  Watson Decl. ¶28.

[59]  Watson Decl. ¶27.

[60]  Macdonald Decl. ¶20.

### G.     The First Section 1782 Application

On August 6, 2019, the Petitioner petitioned the U.S. District Court for the Southern District of New York ("SDNY") for an order authorizing Petitioner to conduct discovery from Fast Company relating to the Fake News Article ("First Section 1782 Application").  On August 9, 2019, the Magistrate Judge Stewart D. Aaron granted the First Section 1782 Application.[61]  The Petitioner subsequently served subpoenas on Fast Company and Mansueto.  On August 27, 2019, Fast Company/Mansueto requested a 2-week extension to produce responsive documents pursuant to the subpoena.[62]  Petitioner consented to this request.[63]

Between September 17, 2019 and October 21, 2019, Fast Company/Mansueto produced certain information about the Forged Police Report[64] but, crucially, Mr. Baram (through Fast Company) refused to produce information about the identity of Forged Report Distributor 1 (i.e. the individual who gave Respondent a copy of the Forged Police Report), purportedly on the basis that the identity of Forged Report Distributor 1 is somehow protected under the "reporter's privilege".[65]

---

[61]   Bento Decl., Ex. 12.

[62]   Bento Decl., Ex. 13.

[63]   *Id.*

[64]   The information produced by Fast Company confirmed that Mr. Baram was told by the City of London Police that the Forged Police Report was not authentic, that the purported police officer on the report does not work for the police, and that in any event the forged report did not look like the type of report the City of London Police would use.  *See, e.g.*, Watson Decl., Ex. 3.  For reasons that are unknown to Petitioner, Mr. Baram nevertheless proceeded to publish his story making reference to the Forged Police Report, including to the report's content.  *See* Watson Decl., Ex. 5.

[65]   Bento Decl., Exs. 7, 9.

Petitioner therefore brought this Application to obtain information sufficient to identify Forged Report Distributor 1.[66]  As explained in more detail below, *see infra*, section II.C.4, the "reporter's privilege" does not apply to this case.

### H.    Petitioner's Contemplated Proceedings

Petitioner has suffered considerable reputational harm as a result of the creation and dissemination of the lies contained in the Forged Police Report.  Accordingly, Petitioner contemplates initiating criminal and civil proceedings against the Forger(s) and Forged Report Distributors in the United Kingdom.[67]

***Contemplated Criminal Proceedings.***  Petitioner seeks to initiate, either through public or private prosecutions,[68] criminal proceedings in England & Wales against the Forger and Forged Report Distributors for violations of the Forgery and Counterfeiting Act 1981, the Fraud Act 2006, and the Malicious Communications Act 1988 ("Contemplated Criminal Proceedings").[69]  As explained in the Declaration of Lord Macdonald of River Glaven Kt QC—the former Director of Public Prosecutions in England & Wales—the Forger and Forged Report Distributors have contravened the Forgery and Counterfeiting Act 1981 because in creating and disseminating the Forged Police Report—plainly a false instrument under English law—the Forger, and any complicit copiers and users (including the Forged Report Distributors) of the Forged Police Report,

---

[66]  To be clear, Petitioner does not seek information already produced by Fast Company, Mansueto, or Mr. Baram pursuant to the First Section 1782 Application.

[67]  Macdonald Decl. ¶¶23-37; Watson Decl. ¶¶32-44.

[68]  Under English law, a victim of a crime may initiate a private prosecution without police or State intervention. *See* Macdonald Decl. ¶35-37.

[69]  Macdonald Decl. ¶23-37.

or any copies thereof, intended by their acts to harm, and actually harmed, the Petitioner.[70]  The Forger and Forged Report Distributors also contravened Sections 2, 6, and 7 of the Fraud Act 2006 under English law because the Forged Police Report was intended by the Forger to be perceived by its readers as a genuine police report; the implied assertion that it was genuine amounted to a false representation; the Forger knew this was a false representation; and their plain and inescapable intention in making this false representation was to cause loss to the Petitioner.[71] Similar reasoning applies equally to anyone further down the chain, including the Forged Report Distributors, who passed the Forged Police Report on, knowing it was a fake, and intending thereby to cause loss to the Petitioner.  Similarly, the Forger and Forged Report Distributors contravened the Malicious Communications Act 1988 because when the Forger and the Forged Report Distributors conveyed the report to others, they did so knowing it contained false information (because that information had been invented), and with full awareness that it would inevitably be drawn to the Petitioner's attention (thus establishing the necessary intention under English law), with the equally inevitable result that the Petitioner would be caused distress and anxiety.[72]  To this end, Petitioner has retained English counsel to pursue these claims, who have already begun preparing pleadings, including criminal summonses.[73]

     ***Contemplated Civil Proceedings.***  The Petitioner contemplates initiating civil proceedings against the author(s) and distributor(s) (including the Forged Report Distributors) of the Forged

---

[70]  Macdonald Decl. ¶26-27.

[71]  Macdonald Decl. ¶28-30.

[72]  Macdonald Decl. ¶31-32.

[73]  Macdonald Decl. ¶23.

Police Report.[74]  Specifically, Petitioner intends to bring a claim of negligent misstatement, libel, and/or slander against the Forger(s) and disseminators of the Forged Police Report (including the Forged Report Distributors) on the theory that the Forger(s) and Forged Report Distributors of the Forged Police Report owed Petitioner a duty of care not to publish private information about him which they knew to be false, yet did so regardless, which information the media (and possibly others) have relied on, thereby causing Petitioner to suffer loss, including serious harm to his reputation ("Contemplated Civil Proceedings").[75]

To this end, the Petitioner has retained English counsel to pursue civil claims in England & Wales, including (without limitation) negligent misstatement, libel, and/or slander.[76]  English counsel has begun preparing pleadings to pursue these claims.[77]  While these claims may initially be brought against Persons Unknown (akin to John Doe defendants in the US), it would be more efficient and economical from the outset to initiate these proceedings against a named defendant(s).[78]

## I. Respondent Possesses Highly Material Information Concerning The Forged Report Distributors

Based on information produced by Fast Company in response to Petitioner's First Section 1782 Application, the Respondent confirmed to the City of London Police that he had "obtained" the Forged Police Report, and indeed sent a copy of it to the City of London Police for

---

[74] Watson Decl. ¶32.

[75] Watson Decl. ¶33-44.

[76] Watson Decl. ¶33.

[77] *Id*.

[78] Watson Decl. ¶49.

verification.[79]  The general counsel of Fast Company, acting on behalf of Mr. Baram, has also confirmed to Petitioner's counsel that Mr. Baram received the Forged Police Report directly from Forged Report Distributor 1.[80]  Forged Report Distributor 1, in turn, told Mr. Baram that it obtained the Forged Police Report from Forged Report Distributor 2, who could be the Forger.[81]  Based on information provided to Petitioner's counsel in response to the First Section 1782 Application, Mr. Baram knows the identity, including the name, of Forged Report Distributor 1.[82]

The Respondent is therefore in possession and control of information highly material to the Contemplated English Proceedings.  This information, inter alia, relates to the identity and location of the Forged Report Distributors; the identity of any of the Forged Police Report's disseminators and/or distributors; and any other information relating to the provenance and falsity of the report—facts and issues that are critical to the Contemplated English Proceedings.  Petitioner has no other way to uncover this information, thus rendering the discovery sought in this Application indispensable to the Contemplated English Proceedings.

## II.     ARGUMENT

### A.     Legal Framework

 Section 1782 of Title 28 of the United States Code ("Section 1782") permits United States District Courts to grant discovery for use in a pending or "reasonabl[y] contemplat[ed]" foreign

---

[79]   Watson Decl. ¶16 & Ex. 3.

[80]   *See* Macdonald Decl., Exs. 6, 7.

[81]   *See* Macdonald Decl., Ex. 8.

[82]   Bento Decl., Ex. 11.

proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004). The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person.
> 28 U.S.C. § 1782.

An application made pursuant to Section 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

After determining that the three statutory requirements are satisfied, courts must then consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264-65.

Moreover, courts in this circuit "evaluate discovery requests under section 1782 in light of the statute's twin aims of providing efficient means of assistance to participants in international

17

litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997).  Both the Supreme Court and the Second Circuit have acknowledged a Congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings.  *See, e.g.*, *Intel*, 542 U.S. at 247-48; *Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability."); *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . .").

### B.    Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782.

Petitioner satisfies the three statutory requirements of section 1782: (1) Respondent is "found" in the Southern District of New York; (2) the requested information is for use in the Contemplated English Proceedings; and (3) Petitioner is an "interested person" as the putative plaintiff and complainant in those foreign proceedings.

### 1.    Respondent Is "Found" In The Southern District Of New York.

Respondent works as Senior News Editor at Fast Company's headquarters located at 7 World Trade Center, New York, New York[83] and is thus "found" in this District for purposes of Section 1782. *In re Republic of Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. sec. 1782*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) (respondent found in the district under Section 1782 because it worked in the district); *In re Republic of Ecuador*, No. 2:11-MC-00052 GSA, 2011 WL 4089189, at *2 (E.D. Cal. Sept. 13, 2011) (same).

---

[83]    Bento Decl., Exs. 3-4.

### 2.      The Discovery Sought Is For Use In Foreign Proceedings.

The information sought in the Subpoenas is "for use" in foreign proceedings.  In the Second Circuit, "[w]here an applicant has not yet initiated a foreign proceeding, [1782] discovery is available when the materials may help the applicant either to plead or to prove the anticipated claims.  Indeed, 'the foreign proceeding need not be pending, so long as it is within reasonable contemplation.'"  *In re Mangouras*, No. 17-MC-172, 2017 WL 4990655, at \*5 (S.D.N.Y. Oct. 30, 2017) (*citing Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)); *Intel*, 542 U.S. at 259 (foreign proceeding need not have actually commenced at the time when Section 1782 discovery is sought; it need only "be within reasonable contemplation.").  Here, Petitioner will use the identity of the Forged Report Distributors to plead and prove his criminal and civil claims in the United Kingdom.[84]

Petitioner's Contemplated English Proceedings qualify as "foreign proceedings" for purposes of Section 1782.  A petitioner need only "provide some objective indicium that the action is being contemplated."  *In re Hansainvest Hanseatische Inv.-GmbH*, 364 F. Supp. 3d 243, 249 (S.D.N.Y. 2018).  Here, the declarations of Petitioner's English lawyers that they have been retained to pursue the claims articulated in their declarations and that they have begun preparing the necessary pleadings is objective evidence that Petitioner's "foreign proceeding" is "within reasonable contemplation."[85]  *See In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018)

---

[84]   Macdonald Decl., ¶¶23-37; Watson Decl., ¶¶32-44.  Petitioner may also subpoena Forged Report Distributor 1 to obtain information about Forged Report Distributor 2.

[85]   Similar evidence satisfied this statutory prong in Petitioner's First Section 1782 Application. *See In re Application of Shervin Pishevar for an Order to Take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. 1782*, No. 19-mc-00370, Dkt. 8 (S.D.N.Y. Aug. 9, 2019) ("WHEREAS, the Court finds that (a) the statutory requirements of 28 U.S.C. § 1782 are satisfied…").

(summary order) (holding that a foreign proceeding was reasonably contemplated where the applicant "represented that it intended to initiate further litigation," and "articulated a theory on which it intended to litigate"); *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (holding that for use requirement was met where petitioners swore that they intended to file a criminal complaint in Luxembourg Criminal Court and articulated a specific legal theory on which they intended to rely); *see also In re Application of Bracha Found.*, 663 F. App'x 755, 764 (11th Cir. 2016) (affirming district court's decision that foreign proceeding was within reasonable contemplation because "[applicants] have represented their intention to return to litigation in the BVI and have articulated a theory upon which they intend to litigate"); *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 322-23 (5th Cir. 2015) (finding that the application was "for use" in a contemplated proceeding because, inter alia, Petitioner filed a "sworn affidavit" from his foreign lawyer that he had prepared papers).

The Contemplated English Proceedings qualify as a proceeding in a "foreign or international tribunal" for purposes of Section 1782.  Indeed, numerous courts have found that civil proceedings before English courts satisfy Section 1782.  *See, e.g., In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 41 (2d Cir. 2017); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014).  With regard to the Contemplated Criminal Proceedings in particular, Section 1782(a) explicitly provides that the statute can be used to obtain discovery for use in "criminal investigations conducted before formal accusation", and courts in this district have confirmed the availability of Section 1782 for such criminal investigations.  28 U.S.C. § 1782(a); *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 370 (S.D.N.Y.

2019) (granting 1782 application for use in contemplated criminal proceedings abroad).  Thus, the Contemplated English Proceedings plainly qualify as foreign proceedings under Section 1782.

Petitioner is not required to show that the information sought would be discoverable or admissible in the foreign proceedings.  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application.").  Rather, Petitioner only needs to show that he has "the *practical ability* . . . to place a beneficial document—or the information it contains— before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017).

Here, Petitioner plainly satisfies this requirement.  The information sought in the Subpoenas is highly material to the contemplated criminal and civil proceedings because, inter alia, Petitioner needs the information to plead and prove his claims against the Forged Report Distributors and Forger(s).[86]

### 3.    Petitioner Is An "Interested Person."

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings.  While Section 1782 broadly covers those with the right to participate and submit evidence in foreign proceedings, *see Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015), there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 256 (2004).  Petitioner

---

[86]   Macdonald Decl. ¶¶38-39; Watson Decl. ¶¶45-49.

will be a party to the Contemplated English Proceedings and is therefore an "interested person" under Section 1782.[87]

### C. All Of The Discretionary Factors Of Section 1782 Weigh In Favor of Permitting The Discovery Petitioner Seeks.

Once the threshold requirements under section 1782 are met, the Court should consider the four discretionary "*Intel* factors." Each of these factors weighs in favor of granting the requested discovery here.

*First*, the Respondent will not be a party to the Contemplated English Proceedings. *Second*, there is no reason to believe that English courts would be unreceptive to evidence obtained through Section 1782 discovery. *Third*, Petitioner is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence. *Fourth*, Petitioner's single document request and request for limited testimonial evidence regarding the identity of Forged Report Distributor 1 are carefully circumscribed and targeted to key facts so as to avoid undue burden on the Respondent.

### 1. The First *Intel* Factor Favors Granting Discovery.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is

---

[87] With regard to the Contemplated Criminal Proceedings, if a public prosecution is elected, Petitioner qualifies as an "interested person" as a victim and aggrieved party of the crime. *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 372 (S.D.N.Y. 2019) ("[A] complainant in a criminal investigation satisfies the "interested person" requirement of § 1782."); *In re Ex Parte Application of SERETM*, No. C13–80261–MISC, 2013 WL 6141655, at *1 (N.D. Cal. Nov. 21, 2013) (holding that a victim of fraud is an interested person under Section 1782). Indeed, Petitioner will have the practical ability to introduce evidence concerning the identity of the Forged Report Distributors and/or Forger(s) regardless of which type of prosecution (private or public) is initiated. Macdonald Decl. ¶¶33-37.

when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264. Here, the Respondent will not be a party to the Contemplated English Proceedings. Further, there is presently no other avenue for Petitioner to uncover the identity of Forged Report Distributor 1.[88]

### 2. The Second *Intel* Factor Favors Granting Discovery.

Under the second *Intel* factor, this Court should look to whether the foreign tribunal would be receptive to evidence obtained through Section 1782. *See In re Application of OOO Promnesftstroy for an Order to Conduct Discovery for Use in a Foreign Proceeding*, No. M 19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct 15, 2009) (describing the second *Intel* factor as inquiring into whether the foreign proceeding would "*reject* evidence obtained with the aid of section 1782"). There is a strong presumption that the foreign tribunal will be receptive to evidence obtained in the United States, with the Second Circuit holding that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100 (emphasis added).

---

[88] Macdonald Decl., ¶¶38-39; Watson Decl., ¶49.

The English courts will be receptive to evidence obtained through this Application.[89] Petitioner will have the opportunity to use the information obtained in this Application in pleading his claims (i.e. in the complaint/claim form, and criminal complaint and/or criminal summons) as well as to prove its claims and enforce any remedies and/or sanctions.[90]

### 3.   The Third *Intel* Factor Favors Granting Discovery.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265.  The *Intel* Court expressly rejected the notion that Section 1782 requires that the evidence sought must be discoverable in the foreign proceeding itself, and the Second Circuit has added that the specific documents or testimony discovered need not be admissible abroad.  *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the admissibility of evidence in the foreign proceeding.  As in *Intel*, there is no statutory basis for any admissibility requirement."); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts.").  Nor is there any requirement that Petitioner must exhaust his remedies in the foreign court first.  *See In re Application for an Order Permitting Metallgesellschaft AG to take*

---

[89]   Macdonald Decl. ¶¶40-46 (also noting that English law privileges would not apply here); Watson Decl. ¶¶50-53.  At minimum, there is no authoritative proof that the English courts would reject the evidence obtained here.

[90]   Watson Decl. ¶¶45-49; Macdonald Decl. ¶¶38-39.

*Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes.").

Here, there is no reason to believe that any of the discovery sought violates any foreign laws and/or public policy. Petitioner does not seek customer account information, state secrets, or attorney-client communications—he merely seeks information relating to the individual(s) who forged and distributed a fake police report with the goal of disseminating false information to harm Petitioner's reputation. The English jurisdiction does not have any law or public policy against such discovery. To the contrary, as the Declaration of Lord Macdonald of River Glaven Kt QC (the UK's former Director of Public Prosecutions) notes, it would be in the public interest to prosecute the Forger(s) and Forged Report Distributors of such a document.[91]

### 4. The Fourth *Intel* Factor Favors Granting Discovery.

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. "The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998).

Here, the *single document* request is narrowly tailored, temporally limited, and directly relevant to the issues in the foreign proceedings. The request for testimonial evidence is limited to obtaining information about the identity and location of Forged Report Distributor 1. Whatever burden Respondent may incur by producing the requested discovery, it is both modest and proportionate given the circumstances. In any event, it is unclear what burden the Respondent

---

[91]   Macdonald Decl. ¶¶33-34.

would avoid by withholding the identity of an individual that has engaged in criminal and fraudulent conduct designed to perpetuate lies about the Petitioner.

The Respondent has refused to disclose the identity of Forged Report Distributor 1 on the purported ground of "reporter's privilege".[92]   However, no such privilege applies here for two reasons.

*First*, under controlling Supreme Court and Second Circuit precedent,[93] the reporter's privilege does not apply where the party seeking discovery can show that the information sought is (1) highly material and relevant, (2) necessary or critical to the maintenance of the claim, and (3) not obtainable from other available sources.   *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982); *see also Branzburg v. Hayes*, 408 U.S. 665, 692 (1972).   Here, Petitioner has

---

[92]   Bento Decl., Exs. 7, 9.

[93]   *See e.g.* 28 U.S.C. §1782(a) ("a person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any *legally applicable* privilege.") (emphasis added); *In re Application of Chevron Corp.*, 709 F. Supp. 2d 283, 294 (S.D.N.Y. 2010), *as corrected* (May 10, 2010), *aff'd sub nom. Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) (applying federal privilege law in a §1782 proceeding); *In re Christensen*, No. M19-138 (JFK), 2006 WL 278169, at *1 (S.D.N.Y. Feb. 3, 2006) (applying federal privilege law in a §1782 proceeding);   *In re Fed'n Internationale de Basketball, for a Subpoena Pursuant to 28 U.S.C. / 1782*, 117 F. Supp. 2d 403, 407 (S.D.N.Y. 2000) ("[I]t is federal rather than state privilege law that controls" in Section 1782 proceedings); *see also McKevitt v. Pallasch*, 339 F.3d 530, 533 (7th Cir. 2003) (stating in a §1782 case that state statute on reporter's privilege "has no application" to "federal-question cases like this one."); *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987) (federal rather than state law applies to journalist privilege analysis in federal question cases).   Even if *arguendo* New York state's "Shield Law" were to apply—and it does not—the statute's protections would not apply here because the information, in being knowingly false and forged, does not qualify as "news" under the statute, and disclosure, rather than secrecy, would serve the public interest of uncovering the identity of those involved in the forgery and fabrication of false information.   N.Y. Civ. Rights Law § 79-h(a)(8)("News" shall mean written, oral, pictorial, photographic, or electronically recorded information or communication concerning … *matters of public concern or public interest or affecting the public welfare*.") (emphasis added).

made a clear and specific showing that (1) the identity of Forged Report Distributor 1 is not only highly material and relevant to prosecuting criminal and civil actions against Forged Report Distributor 1, but also absolutely essential to uncovering the identity of the Forger(s); (2) the identity of Forged Report Distributor 1 is both necessary and critical to Petitioner's claims in the English Contemplated Proceedings; and (3) since only Mr. Baram knows the identity of Forged Report Distributor 1, that information is not available from any other source.

*Second*, disclosure is also appropriate when the information given by the "source" is itself tortious or a product of criminal conduct.  Here, as explained in the Declaration of Lord Macdonald of River Glaven Kt QC—the former Director of Public Prosecutions in England & Wales— Forged Report Distributor 1 has likely committed a crime under English law and as such should not benefit from confidentiality.[94]  Whatever interest exists in preserving the confidentiality of Forged Report Distributor 1 is clearly trumped by the public interest in holding forgers and disseminators of fake news accountable for their criminal, fraudulent, and tortious acts.[95]

## III.    CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court (a) grant the Application And Petition For An Order To Conduct Discovery; (b) enter the Proposed Order

---

[94]    *See United States v. Sterling*, 724 F.3d 482, 504 (4th Cir. 2013) (holding that reporter's privilege protections yield where source has engaged in criminal conduct); *see also Pankratz v Dist. Court*, 609 P.2d 1101, 1103 (Colo. 1980) (en banc) (holding that the Colorado privilege did not protect a reporter who was a "first-hand observer of criminal conduct"); *United States v. Libby*, 432 F. Supp. 2d 26, 44, 50 (D.D.C. 2006) (privilege does not protect a news reporter, or that reporter's news organization, from producing documents where the reporter was involved in criminal activity).

[95]    *See* Macdonald Decl. ¶¶26-37 (summarizing criminal liability of Forger and Forged Report Distributors); Watson Decl. ¶¶32-44 (summarizing tortious liability of Forger and Forged Report Distributors).

attached to the Bento Declaration as Exhibit 1, (c) authorize Petitioner, pursuant to 28 U.S.C. §

1782, to serve the Subpoenas; and (d) grant any and all other relief to Petitioner as deemed just

and proper.

Dated:  New York, NY                      Respectfully submitted,
            October 31, 2018

                                          /s/ Lucas V.M. Bento

                                          Lucas V.M. Bento
                                          Alexander Wentworth-Ping
                                          lucasbento@quinnemanuel.com
                                          alexwentworthping@quinneamnuel.com
                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
                                          51 MADISON AVENUE, FLOOR 22
                                          NEW YORK, NY 10010
                                          Telephone: (212) 849-7000
                                          Facsimile: (212) 849-7100

                                          *Attorneys for Petitioner*