**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE APPLICATION OF SHERVIN PISHEVAR
FOR AN ORDER TO TAKE DISCOVERY FOR
USE IN FOREIGN PROCEEDINGS PURSUANT
TO 28 U.S.C. § 1782

Case No. 19-mc-00503-RA

**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S APPLICATION AND
PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS PURSUANT TO 28 U.S.C. §1782**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .....................................................................................................4

    A.    Baram's Reporting..............................................................................................4

    B.    Pishevar's Arrest on Suspicion of Sexual Assault...................................................4

    C.    Coverage of Pishevar's Sexual Assault Arrest by *Fast Company* and Other
        U.S. Media Outlets ...........................................................................................5

    D.    Pishevar's First Section 1782 Application Seeking Information
        Concerning the Forged Police Report.....................................................................8

    E.    The Instant Section 1782 Application ...................................................................8

ARGUMENT.......................................................................................................................9

I.     THE APPLICATION SHOULD BE DENIED BECAUSE IT SEEKS
      PRIVILEGED INFORMATION THAT IS NOT SUBJECT TO DISCLOSURE
      UNDER SECTION 1782 .................................................................................9

    A.    The Application Should Be Denied Because Pishevar Has Not Overcome
        the High Burden to Disclosure Imposed by the Federal and New York
        Reporter's Privilege ..........................................................................................9

        1.    The Application Should Be Denied Because Pishevar Cannot
            Establish That The Identity of Baram's Source is "Necessary or
            Critical" to the Maintenance of the Contemplated Proceedings................10

        2.    The Application Should Be Denied Because Pishevar Cannot
            Establish That Information Concerning the Creation and
            Distribution of the Forged Police Report Is Unavailable from Other
            Sources...............................................................................................13

    B.    The Application Should Be Denied Because Pishevar Has Not Established
        That An Exception To The UK and European Reporter's Privilege
        Supports Discovery In This Action .....................................................................16

    C.    The Application Should Be Denied Because Baram's Privilege Against
        Self-Incrimination Exempts Him From Providing Evidence In Connection
        With The Contemplated Proceedings ...................................................................18

II.    THE APPLICATION SHOULD BE DENIED BECAUSE PISHEVAR HAS
       NOT ESTABLISHED THAT THE DISCOVERY SOUGHT IS "FOR USE" IN
       A FOREIGN PROCEEDING ............................................................................................. 19

       A.    No Libel Proceeding Can Be Brought Because Such Proceedings Are Now
             Barred By The United Kingdom's Limitation Action 1980 .................................. 21

       B.    Pishevar's Negligent Misstatement Cause of Action Is Insufficient As A
             Matter Of Law ........................................................................................................ 23

       C.    No Criminal Proceeding In The UK Is Reasonably Contemplated ...................... 23

III.   PISHEVAR'S APPLICATION SHOULD BE DENIED BASED ON THE
       DISCRETIONARY *INTEL* FACTORS ........................................................................... 24

CONCLUSION ............................................................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Am. Broad. Cos., Inc.*,
  735 N.Y.S.2d 919 (Sup. Ct. N.Y. Cty. 2001) .......................................................................... 11

In re Application of Shervin Pishevar for Order to Take Discovery for Use in
  Foreign Proceedings Pursuant to 28 U.S.C.
  §1782, No. 19-mc-00370-JGK-SDA, ECF No. 4-2 (S.D.N.Y. Aug. 6, 2019) .......................... 8

*In re Asia Mar. Pac. Ltd.*,
  253 F. Supp. 3d 701 (S.D.N.Y. 2015) ...................................................................................... 20

*Baker v. F&F Inv.*,
  470 F.2d 778 (2d Cir. 1972) ..................................................................................... 2, 10, 13

*Baker v. Goldman Sachs & Co.*,
  669 F.3d 105 (2d Cir. 2012) ...................................................................................................... 11

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) ................................................................................................ 19, 20

*Branzburg v. Hayes*,
  408 U.S. 665 (1972) ..................................................................................................................... 9

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, L.L.P.*,
  798 F.3d 113 (2d Cir. 2015) ................................................................................................ 20, 21

*Chevron Corp. v. Berlinger*,
  629 F.3d 297 (2d Cir. 2011) ...................................................................................................... 9

*In re del Valle Ruiz*,
  428 F. Supp. 2d 188 (2d Cir. 2019) ........................................................................................ 25

*Fin. Times Ltd. v. U.K.*,
  App. No. 821/03, 21 Eur. Ct. H.R. 533 (Nov. 24, 2009) .................................................... 17, 18

*Gonzales v. Nat'l Broad. Co., Inc.*,
  194 F.3d 29 (2d Cir. 1999) ................................................................................................... 2, 10

*Goodwin v. U.K.*,
  App. No. 17488/90, 22 Eur. Ct. H.R. 123 (Mar. 27, 1996) ................................................ 16, 17

*Guiffre v. Maxwell*,
    221 F. Supp. 3d 472 (S.D.N.Y. 2016) ......................................................................... 9

*Hedley Byrne & Co. Ltd. v. Heller & Partners Ltd.*
    [1964] A.C. 465 (Eng.).............................................................................................. 23

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) .............................................................................................24, 25

*In re King Baby Marine LLC*,
    No. 17-mc-488 (LAK), 2017 WL 6940563 (S.D.N.Y. Dec. 22, 2017)........................ 20

*Johnson v. City of N.Y.*,
    No. 16-CV-6426 (KAM) (VMS) (E.D.N.Y. Nov. 11, 2019) .................................... 10

*Krase v. Grace Children Prods., Inc. (In re Application to Quash Subpoena to*
    *Nat'l Broad. Co., Inc.)*,
    79 F.3d 346 (2d Cir. 1996) .................................................................................10, 11

*In re McCray, Richardson, Santana, Wise & Salaam Litig.*,
    928 F. Supp. 2d 748 (S.D.N.Y. 2013) ................................................................... 13

*In re Microsoft Corp.*,
    428 F. Supp. 3d 188 (S.D.N.Y. 2006) ................................................................... 25

*In re Petroleum Prods. Antitrust Litig.*,
    680 F.2d 5 (2d Cir. 1982) ................................................................2, 9, 10, 13, 15

*Norwich Pharmacal v Customs & Excise Comm'rs*
    [1974] AC 133 (Eng.)............................................................................................. 15

*Redfern v. Redfern*,
    [1891] App. Cas. 139 (Eng.).................................................................................. 19

*Reed Elsevier v. Bewry*
    [2014] EWCA Civ 1411 (Eng.).............................................................................. 22

*In re Roche*,
    448 U.S. 1312 (1980) ............................................................................................ 15

*U.S. v. Marcos*,
    87 CR 598, 1990 WL 74521 (S.D.N.Y. Jun 1, 1990)........................................10, 11

*von Bulow by Auersberg v. von Bulow*,
    811 F.2d 136 (2d Cir. 1987) .................................................................................. 10

*Voskuil v. Netherlands*,
    App. No. 64752/01, 14 Eur. Ct. H.R. 465 (Nov. 22, 2007)................................... 18

**Statutes**

28 U.S.C. §1782 ............................................................................................................*passim*

28 U.S.C. §1782(a) ...............................................................................................9, 20, 24

Civil Evidence Act of 1968 (UK) ....................................................................................18

Contempt of Court Act of 1981 (UK) ...................................................................16, 17, 18

Fraud Act 2006 (UK) ......................................................................................................19

Human Rights Act 1998 (UK) .........................................................................................16

Limitation Act 1980 (UK) .....................................................................................21, 22, 23

N.Y. Civ. Rights Law §79-h .............................................................................................10

N.Y. Civ. Rights Law §79-h(b) ........................................................................................10

**Other Authorities**

S. Rep. 88-1580 (Sept. 15, 1964). ....................................................................................9

Marcus Baram ("Baram") respectfully submits this Memorandum of Law in opposition to the Application and Petition (the "Application") of Shervin Pishevar ("Pishevar" or "Applicant") pursuant to 28 U.S.C. §1782 ("Section 1782"), for an order authorizing him to obtain discovery from Baram for use in uncommenced foreign proceedings. For the reasons stated below, the Application should be denied.

## PRELIMINARY STATEMENT

Under the guise of Section 1782, Pishevar seeks to compel Baram, an investigative journalist, to reveal a confidential source (the "Confidential Source") on whom he relied in truthfully reporting that, on May 27, 2017, Pishevar was arrested in London on suspicion of sexual assault (the "Sexual Assault Arrest"). Pishevar would have this Court believe that legal proceedings in the United Kingdom are imminent, more than two years after the Sexual Assault Arrest and long after public interest in it has waned, and that the disclosure of the identity of the Confidential Source (referred to in the Application as "Forged Report Distributor 1"), is essential to his ability to bring "Contemplated Proceedings"[1] against unknown individuals who allegedly created and/or distributed what Pishevar labels a forged police report (the "Forged Police Report") that correctly linked Pishevar to the Sexual Assault Arrest. Pishevar's Application implicates both First Amendment principles and Baram's privilege against compelled self-incrimination under the law of the United Kingdom. It is a blatantly inappropriate use of Section 1782, which on its face provides that a person may not be compelled to disclose information "in violation of any legally applicable privilege."

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Memorandum of Law in Support of Petitioner's Application and Petition for an Order to Conduct Discovery for Use In Foreign Proceedings Pursuant to 28 U.S.C. §1782 ("Applicant's Br.") [ECF No. 4].

"Compelled disclosure of confidential sources unquestionably threatens a journalist's ability to secure information that is made available to him only on a confidential basis." *Baker v. F&F Inv.*, 470 F.2d 778, 782 (2d Cir. 1972). *See also In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 8 (2d Cir. 1982) (recognizing that confidentiality is "essential to fulfillment of the pivotal function of reporters to collect information for public dissemination"). The Second Circuit has recognized that such disclosure is likely to have a "deterrent effect…upon future 'undercover' investigative reporting…[that] threatens freedom of the press…and thereby undermines values which traditionally have been protected by federal courts applying federal public policy." *Baker*, 470 F.2d at 782.

In light of these important values, the Second Circuit "has long recognized the existence of a qualified privilege for journalistic information." *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 32 (2d Cir. 1999). Under the law of this Circuit, a journalist may only be compelled to produce confidential information or sources upon a "clear and specific showing that the information is:  highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." *In re Petroleum Prods.*, 660 F.2d at 7 (citing *Baker*, 470 F.2d at 783-85). Although the foreign law experts cited in the Application barely mention it, the courts of the United Kingdom and the European Court of Human Rights (the "European Court"), which has the power to bind the United Kingdom courts, recognize a similar privilege. *See* Declaration of Teresa Rosen Peacocke ("Peacocke Decl."), ¶31.

The information sought by Pishevar in the Application, "including any information sufficient to identify the identity and location of [Baram's confidential source]," (*see* Declaration of Lucas Bento ("Bento Decl.") [ECF No. 5], Ex. 2) falls squarely within Baram's reporter's

privilege.  Yet Pishevar has not made the clear and specific showing required to overcome that privilege under federal, New York or United Kingdom law.

The Application also implicates Baram's privilege under United Kingdom law to be free from compelled self-incrimination, as the Application squarely takes aim at Baram's own conduct in reporting on the Sexual Assault Arrest, suggesting that Baram may be subject to prosecution for such conduct as part of Pishevar's broadly defined "Contemplated Criminal Proceedings."  The information sought by Pishevar is thus not discoverable pursuant to Section 1782, which protects against disclosure of information "in violation of any legally applicable privilege" including privileges arising under foreign law.

Further, even if the information sought were not privileged, Pishevar has not satisfied the statutory requirements of Section 1782 because, among other things, he cannot show that the discovery sought is "for use" in a reasonably contemplated foreign proceeding.  More than two years have passed since many of the events detailed in Pishevar's Application, and yet what Pishevar claims are "Contemplated Civil Proceedings" and "Contemplated Criminal Proceedings" have not even begun.  He does not explain when the "Contemplated Proceedings" will supposedly be commenced, or why none have been commenced after more than two years. The discovery sought by the Application is not even necessary for the Contemplated Proceedings, as explained below.

The Court should deny Pishevar's Application in its entirety because it implicates privileged information that is not discoverable pursuant to Section 1782, and otherwise comprehensively fails to meet the statutory requirements and discretionary factors under Section 1782.

3

## STATEMENT OF FACTS

### A.     Baram's Reporting

Baram is a journalist with 24 years of experience.  Affidavit of Marcus Baram ("Baram

Aff."), ¶3.  He is currently a Senior Editor at *Fast Company*,[2] and has previously served as the

managing editor of the *International Business Times* and a senior editor at *Huffington Post*.  *Id.*

Baram's investigative reporting has been featured in *The New Yorker*, *The New York Times*, *New*

*York Magazine*, *The Village Voice* and *Vibe*.  *Id.*

As part of his reporting, Baram often relies on confidential sources who speak to him on

the condition of anonymity.  Baram Aff., ¶4.  His ability to report on matters of public interest

depends on his ability to safeguard the identities of his sources and the confidentiality of the

information that they provide.  *Id.*  Baram prides himself on having never revealed a confidential

source.  *Id.*

### B.     Pishevar's Arrest on Suspicion of Sexual Assault

Pishevar is a wealthy, San Francisco-based venture capital investor.  He is the co-founder

of Sherpa Capital, a venture capital firm.  Applicant's Br., p. 2.  On or about May 27, 2017,

Pishevar was arrested in London on suspicion of sexual assault.  Pishevar has expended

considerable sums of money to prevent the details of his Sexual Assault Arrest, and the

allegations that led to it, from becoming public.  In June 2017, he obtained a gag order

preventing English newspaper *The Sun* from covering his arrest at a reported cost of £100,000.

*See* Baram Aff., ¶7 and Ex. 1.  Pishevar also commenced, and later dropped, a lawsuit against

Definers Public Affairs ("Definers"), a Washington, DC based strategic political

---

[2] *Fast Company*, launched in 1995 as a print magazine, now includes a digital iteration at www.fastcompany.com. A leading business media brand, its editorial focus is on innovation in technology, leadership, world changing ideas, creativity, and design. *Fast Company* has been owned by Mansueto Ventures LLC since 2005.  Baram Aff., ¶2.

communications firm, alleging that it had had organized a "smear campaign" against him that included an allegation (which he claimed was false) that he had paid off a woman complaining of a sexual assault in London. *Id.*, Ex. 2.

Pishevar is now pursuing those who disseminated the details of his arrest to the media. As discussed more fully below, this is Pishevar's second Section 1782 application aimed at compelling the disclosure of Baram's Confidential Source.

### C.    Coverage of Pishevar's Sexual Assault Arrest by *Fast Company* and Other U.S. Media Outlets

In or about July 2017, Baram received a tip from his Confidential Source that Pishevar had been arrested in London on suspicion of rape.  Baram Aff., ¶6.  Baram thereafter communicated with many other sources in an attempt to verify the tip, including two additional confidential sources who confirmed that Pishevar had been arrested at London's Ned Hotel. *Id.* However, none of these sources were willing to speak to Baram on the record. *Id.*

In September 2017, Baram's Confidential Source informed him that he had obtained a copy of a police report documenting Pishevar's Sexual Assault Arrest.  Baram Aff., ¶8.  Baram thereafter met with the Confidential Source and received a thumb drive which contained an image of a police report purporting to be from the City of London Police (the "COLP"). *Id.* Baram believed at that time, and continues to believe, that the Confidential Source was not aware that there were questions surrounding the authenticity of the police report when he gave it to Baram. *Id.*  Following his receipt of the police report, Baram made a concerted effort to verify its authenticity through communications with the COLP and others. *Id.*, ¶9.

Pishevar commenced his lawsuit against Definers in the San Francisco Superior Court on November 6, 2017.  That same day, *Fast Company* published an article written by Baram titled "Tech Investor Shervin Pishevar sues GOP oppo research firm, claiming that it conducted a

'smear campaign' against him." Baram Aff., Ex. 2. Therein Baram, among other things, summarized the allegations contained in Pishevar's lawsuit against Definers, including Pishevar's allegation that Definers spread a "false, defamatory, and highly damaging" story that Pishevar "paid money to settle a claim for sexual assault in London." *Id.*

Two days later, on November 8, 2017, Pishevar's spokesperson, Mark Fabiani, issued a statement acknowledging the Sexual Assault Arrest but seeking to dispel "several false rumors that had been spread about [Pishevar], including that he purportedly paid money to settle the claim." Baram Aff., ¶11 and Ex. 3. Thereafter, also on November 8, 2017, *Fast Company* published an article written by Baram under the headline "'Smear Campaign' Or Not, Tech Investor Shervin Pishevar Really Was Arrested Earlier This Year." *See* Declaration of Lord MacDonald of River Glaven Kt QC ("MacDonald Decl.") [ECF No. 6], Ex. 2. While the article referred to "a copy of a police report seen by *Fast Company*," it also acknowledged that "its authenticity ha[d] not been verified" and refrained from publishing any of the more unsavory contents of the report. *Id.* Neither Pishevar nor his Application has identified anything false about that article.

The next day, on November 9, 2017, entirely separate from *Fast Company*'s reporting, *Forbes* published an article titled "Shervin Pishevar, Arrested But Never Charged Over Alleged Rape, Says He's Victim of 'Smear Campaign," which cited "details of a police report obtained by Forbes." Baram Aff., Ex. 5. Also on November 9, *The New York Post* published an article titled "Billionaire ally of ex-Uber CEO busted on rape charge," which relied on "a police report obtained by The Post" and cited details allegedly contained in that report. *Id.*, Ex. 6.

On November 13, 2017, *Fast Company* received an email from Pishevar's publicist Mr. Fabiani, enclosing a letter from COLP's Paul Chadha disavowing COLP's involvement in what

Pishevar calls the "Forged Police Report." Just a few hours later that very same day, *Fast Company* updated its November 8 article to reflect the new information that the "police report" had been "proven false by the City of London Police." Baram Aff., Ex. 4. *Fast Company* also published a follow up article on November 13, also written by Baram, titled "London cops say that police report for Shervin Pishevar's arrest was fabricated," acknowledging that the COLP had confirmed that the report was a fabrication and was "undertak[ing] its own investigation into the alleged report." *Id.*, Ex. 7. *Forbes* and *The New York Post* also updated their reporting to indicate that the COLP had confirmed the falsity of the report. Baram Aff., Exs. 5 and 6.

Even after the fabricated police report had been disavowed by the COLP, other independent media coverage of Pishevar's Sexual Assault Arrest and other alleged instances of sexual misconduct continued, with explosive reporting by *Bloomberg* and others. Baram Aff., ¶16 and Exs. 8 and 9. Over three weeks later, on December 3, 2017, Pishevar took a professional leave of absence saying he needed to focus on his lawsuit against Definers. Baram Aff., Ex. 9. However, within two months, on February 2, 2018 (which is now 22 months ago), Pishevar discontinued that lawsuit and issued the following statement:

> I now intend to continue to focus my full attention on those who should ultimately be held responsible for the smear campaign that has been waged against me, including the falsification and distribution of the fraudulent London police report. The fraudulent police report is being investigated by law enforcement so we are hopeful the culprits will be found and justice will be served.

Baram Aff., Ex. 10. Pishevar's Application indicates that he thereafter, through counsel, sought information from the COLP regarding their investigation into the authenticity of the Forged Police Report and received some "helpful" information regarding the Forged Police Report from the COLP as a result of informal inquiries by his English counsel and a formal Subject Access Request, which was enforced by the English High Court. Applicant's Br., pp. 9-11.

**D.      Pishevar's First Section 1782 Application Seeking Information Concerning the Forged Police Report**

On or about August 6, 2019, Pishevar filed an *ex parte* Section 1782 application in the

United States District Court for the Southern District of New York seeking discovery from *Fast*

*Company* and Mansueto[3] relating to the Forged Police Report (the "First Section 1782

Application").  Magistrate Judge Stewart D. Aaron granted the First Section 1782 Application on

August 9, 2019.  Pishevar subsequently served subpoenas on *Fast Company* and Mansueto

seeking

> All Documents and Communications in your possession, custody or control
> relating to the Forged Police Report, including any information sufficient to
> identify the identity and location of the Report Author and any other
> distributor of the Forged Police Report.

*See* In re Application of Shervin Pishevar for Order to Take Discovery for Use in Foreign

Proceedings Pursuant to 28 U.S.C. §1782, No. 19-mc-00370-JGK-SDA, ECF No. 4-2 (S.D.N.Y.

Aug. 6, 2019).

Pishevar acknowledges that Mansueto produced documents and information about the

Forged Police Report between September 17, 2019 and October 21, 2019.  Applicant's Br., p. 12.

However, Mansueto declined to provide information concerning the identity and location of

Baram's Confidential Source because that information is protected from disclosure by Baram's

reporter's privilege.  Judge Aaron has not weighed in on the discoverability of this information.

**E.      The Instant Section 1782 Application**

On October 31, 2019, Pishevar filed the instant Application seeking the same information

from Baram that it previously sought from *Fast Company* and Mansueto; the document request

---

[3] Because *Fast Company* is a part of Mansueto, the subpoena was properly directed only to Mansueto and only
Mansueto has responded.

in Pishevar's proposed subpoena to Baram is identical to the request set forth above. *See* Bento

Aff., Ex. 2. Given the documents and information that have already been produced by Mansueto

in response to the First Section 1782 Application, the only additional information that could be

disclosed by Baram is privileged information that would tend to identify the Confidential Source.

## ARGUMENT

I.  **THE APPLICATION SHOULD BE DENIED BECAUSE IT SEEKS PRIVILEGED INFORMATION THAT IS NOT SUBJECT TO DISCLOSURE UNDER SECTION 1782**

Section 1782(a) unequivocally states that "[a] person may not be compelled to give his

testimony or statement or to produce a document or other thing in violation of any legally

applicable privilege. Section 1782(a) contemplates "the recognition of all privileges to which the

person may be entitled, including privileges recognized by foreign law." S. Rep. 88-1580, at

*3790 (Sept. 15, 1964). Here, the information sought from Baram is privileged under federal,

New York and United Kingdom law, and is thus far outside the scope of permissible disclosure

under Section 1782.

### A.  **The Application Should Be Denied Because Pishevar Has Not Overcome the High Burden to Disclosure Imposed by the Federal and New York Reporter's Privilege**

Under the law of this Circuit, reporters like Baram have a "qualified evidentiary privilege

for information gathered in a journalistic investigation." *Chevron Corp. v. Berlinger*, 629 F.3d

297, 306 (2d Cir. 2011). *See also, e.g., Branzburg v. Hayes*, 408 U.S. 665 (1972). A party

seeking the disclosure of confidential journalistic information thus faces "a very heavy burden"

(*Guiffre v. Maxwell*, 221 F. Supp. 3d 472, 476 (S.D.N.Y. 2016) (internal citation omitted)), and

must make a "clear and specific showing" that the information sought is: (1) "highly material

and relevant"; (2) "necessary or critical to the maintenance of the claim"; and (3) "not obtainable

from other available sources." *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d at 7 (citing

*Baker*, 470 F.2d at 783-85).

New York also recognizes a reporter's privilege. The New York Shield Law, codified at

N.Y. Civ. Rights Law §79-h, provides reporters with an *absolute* privilege against compelled

disclosure of "any news obtained or received in confidence or the identity of the source of any

such news coming into such person's possession in the course of gathering or obtaining news for

publication." N.Y. Civ. Rights Law §79-h(b). The Second Circuit has acknowledged that "the

contours of the privilege under federal law are 'identical' to those under the applicable New

York statute" (*Gonzales*, 194 F.3d at 34) (citation omitted), and are thus instructive for courts in

"examining the boundaries of the journalist's privilege" under federal law. *von Bulow by*

*Auersberg v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987).

Here, Pishevar cannot establish that the information sought from Baram is either

"necessary or critical" to the maintenance of the Contemplated Proceedings, or that it is

unavailable from any other source. His Application should therefore be denied. *See Johnson v.*

*City of N.Y.*, No. 16-CV-6426 (KAM) (VMS), slip. op. at 21 (E.D.N.Y. Nov. 11, 2019) ("Since

the standard for compelling disclosure of confidential newsgathering materials applies, plaintiff's

failure to show that the information sought is either 'necessary or critical' to his claims or

unobtainable from other available sources is fatal to the subpoena.").

    **1.**    **The Application Should Be Denied Because Pishevar Cannot**
             **Establish That The Identity of Baram's Source is "Necessary or**
             **Critical" to the Maintenance of the Contemplated Proceedings**

The Second Circuit has interpreted the phrase "necessary and critical" to the maintenance

of a proceeding to mean that the applicant's claim "virtually rises or falls with the admission or

exclusion of the proffered evidence." *Krase v. Grace Children Prods., Inc. (In re Application to*

*Quash Subpoena to Nat'l Broad. Co., Inc.)*, 79 F.3d 346, 351 (2d Cir. 1996) (quoting *U.S. v.*

*Marcos*, 87 CR 598, 1990 WL 74521, at *3 (S.D.N.Y. Jun 1, 1990)).  "The test is not merely that the material be helpful or probative, but whether or not…the action may be presented without it." *Baker v. Goldman Sachs & Co.*, 669 F.3d 105, 108 (2d Cir. 2012) (quoting *In re Am. Broad. Cos., Inc.*, 735 N.Y.S.2d 919, 922 (Sup. Ct. N.Y. Cty. 2001) (alteration in original)).  Pishevar plainly cannot establish that he cannot bring or maintain his "Contemplated Proceedings" without invading Baram's reporter's privilege.

First, Pishevar concedes that the Contemplated Civil Proceedings may "initially be brought against Persons Unknown (akin to John Doe Defendants in the US)."  Applicant's Br., p. 15. *See also* Declaration of Charlotte Watson ("Watson Decl.") [ECF No. 7], ¶34.  Pishevar's claim that "it would be **more efficient and economical** from the outset to initiate these proceedings against a named defendant(s)" (Applicant's Br., p. 15) (emphasis added), plainly does not satisfy the "necessary and critical" standard required to overcome Baram's reporter's privilege.  Moreover, the identity of Persons Unknown would be the subject of discovery after Contemplated Civil Proceedings that actually commenced.  *See* Section I(A)(2), *infra*.

Second, as explained in Section II(A), *infra*, Pishevar's contemplated Civil Proceeding claiming defamation is time-barred under English law.  His contemplated claim for negligent misstatement is insufficient as a matter of law because Pishevar does not allege that he detrimentally relied on any false statement made in connection with the Forged Police Report, or that any speakers owed him a duty of care.  Forcing Baram to disclose his Confidential Source will not cure these fatal deficiencies, and will not assist proceedings that cannot proceed.

Third, Pishevar similarly fails to establish that the identity of what Pishevar calls "Forged Report Distributor 1" is necessary or critical to Contemplated Criminal Proceedings.  Even if Lord MacDonald is correct that "no criminal proceedings may be brought in the United Kingdom

without [the identity of the party to be prosecuted]" (MacDonald Decl., ¶38), and that "English prosecutors…have no other means of obtaining this information" absent invasion of Baram's reporter's privilege (*id.*), the identity of the Confidential Source is plainly not sufficient to establish any of Pishevar's causes of action under United Kingdom law.  It is pure speculation that disclosure of the identity of Forged Report Distributor 1 would lead to the identification of his source, Forged Report Distributor 2, and ultimately to the creator of the Forged Police Report, or that any of them acted with the knowledge and specific intent necessary to establish a crime.  Pishevar presupposes a criminal conspiracy by third parties against him; ascribes motives and deliberate actions to persons unknown; and then proceeds to cite those suppositions as supposed reasons why the Court must expose Baram's Confidential Source.  Yet other than the Forged Police Report itself, there is only Pishevar's own allegation to suggest any such conspiracy against him exists.

Fourthly, as set forth in Section II(C), *infra*, Pishevar's Contemplated Criminal Proceedings suffer from other hurdles, not the least of which is that the COLP has no interest in pursuing such proceedings more than two years after the relevant events, and more than one year after it closed its own investigation into the Forged Police Report without bringing charges. Indeed, Baram learned from his correspondence with Paul Chadha, a representative of the City of London's Comptroller and City Solicitor, in October 2018 that COLP's internal investigation never even rose to the level of a criminal investigation at all.  Baram Aff., Ex. 11.

Given the strong likelihood that Pishevar's Contemplated Proceedings will be summarily dismissed, to the extent that they are brought at all, the identity of Baram's Confidential Source is not "necessary or critical" to the maintenance of any contemplated proceeding within the meaning of Second Circuit precedent.

2.    **The Application Should Be Denied Because Pishevar Cannot Establish That Information Concerning the Creation and Distribution of the Forged Police Report Is Unavailable from Other Sources**

Despite the passage of over two years, Pishevar has not commenced the Contemplated Proceedings, and thus has not availed himself of the discovery devices that are available to him as part of such proceedings.  Instead, he has determined for himself that it would be "more efficient and economical" to seek the information from Baram first.  *See* Applicant's Br., p. 15. The Second Circuit has made clear that disclosure of confidential information by a journalist is available "only as a last resort," when the party seeking discovery has exhausted all other avenues of discovery.  *Giuffre*, 221 F. Supp. 3d at 480.  Pishevar makes no such showing here.

In order to establish that the identity of "Forged Report Distributor 1" is unavailable from other sources, Pishevar would have to establish that he "attempt[ed] to obtain the information from another source, or cannot obtain the information from another source."  *In re McCray, Richardson, Santana, Wise & Salaam Litig.*, 928 F. Supp. 2d 748, 758 (S.D.N.Y. 2013).  *See also In re Petroleum Prods. Antitrust Litig.*, 680 F.2d at 8 (determining that "[d]isclosure was…improperly ordered because the States failed to carry their burden of first seeking the information elsewhere"); *Baker*, 470 F. Supp. at 783 (affirming district court decision refusing to compel a journalist to disclose a confidential news source where "there were other available sources of information that may have disclosed the real identity of [the confidential source], which appellants had not exhausted").

Here, Pishevar presupposes that "since only Baram knows the identity of Forged Report Distributor 1, that information is not available from any other source."  Applicant's Br., p. 27. Pishevar's argument to this effect does not withstand scrutiny.

Pishevar's Sexual Assault Arrest was covered by a number of media outlets in the United States, doubtless because of Pishevar's wealth and prominence in the Silicon Valley investor

community.  Pishevar cannot and does not contest the truth of the Sexual Assault Arrest.  *The New York Post* and *Forbes*, among others, published articles concerning Pishevar's Sexual Assault Arrest based on a "police report," and each publication later acknowledged that the police report received by it was a forgery—presumably the same forgery that Baram received. Applicant's Br., p. 9; Baram Aff., Exs. 5 and 6.  English media outlets, including *The Sun*, also received information concerning Pishevar's Sexual Assault Arrest, but were initially prohibited from publishing it as a result of the gag order that Pishevar obtained from the High Court in London.  In light of all of this reporting, Baram is clearly far from the only source from which Pishevar can obtain information concerning the Forged Police Report.

Pishevar may also be able to obtain additional information concerning the Forged Police Report from the COLP.  The COLP, as the entity that arrested Pishevar, undoubtedly possesses the true police report documenting Pishevar's Sexual Assault Arrest.  The COLP is therefore in the best position to provide evidence concerning the Forged Police Report, including its creation and distribution, based on a comparison of that document to the true police report.  Pishevar himself was present for the Sexual Assault Arrest, so he knows those details and could make that determination himself.  Yet he has not.

Pishevar's Application even acknowledges that he received some "helpful" information regarding the Forged Police Report from the COLP as a result of informal inquiries by his English counsel and a formal Subject Access Request.  Applicant's Br., pp. 9-11.  However, Pishevar suggests that disclosure of Baram's confidential source is somehow still necessary because the information provided by the COLP thus far has to date "failed to assist [Pishevar] in identifying the author(s) or distributor(s) of the Forged Police Report."  *Id.*, p. 11.

Pishevar plainly has not exhausted the COLP as a source of relevant information, as the Contemplated Proceedings, if commenced, would afford him many additional avenues of discovery.  For example, if Pishevar were to commence a civil proceeding against "Persons Unknown," he could bring an application pursuant to the U.K. precedent of *Norwich Pharmacal v Customs & Excise Comm'rs* [1974] AC 133 (Eng.), under which a court can issue an order to obtain information from anyone subject to its jurisdiction, other than the defendants in the proceedings, involved in or expected to have information about the creation and distribution of the Forged Police Report.  Peacocke Decl., ¶70(a).  Further, Pishevar could also obtain orders of disclosure including against the defendants which approximate discovery procedures in the United States courts.  *Id.*, ¶70(b).  Pishevar has not pursued any of these available options.

The requirement that a party seeking disclosure of confidential journalistic information exhaust other sources is a stringent one given "the strain on the First Amendment" which disclosure would impose.  *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d at 9.  In *Petroleum Prods.*, for instance, the court refused to compel disclosure of a journalist's notes even though "hundreds of depositions" had been taken and others would be necessary.  680 F.2d at 8-9.  In so holding, the court relied on authority holding that 'the harm caused by requiring the taking of 65 depositions did not 'outweigh the unpalatable choice that civil contempt would impose upon the' reporter ordered to disclose the name[] of his confidential source." *Id.* at n.11 (quoting *In re Roche*, 448 U.S. 1312, 1316 (1980)).

In light of this precedent and the clear availability of multiple channels of inquiry, including discovery in the United Kingdom following the commencement of the Contemplated Proceedings, Pishevar has not established that his efforts to obtain information concerning the

15

Forged Police Report were exhaustive.  Pishevar must continue his factual investigation using other, non-privileged sources, before seeking to invade Baram's reporter's privilege.

**B.      The Application Should Be Denied Because Pishevar Has Not Established That An Exception To The UK and European Reporter's Privilege Supports Discovery In This Action**

The courts of the United Kingdom recognize a reporter's privilege stemming from both the Contempt of Court Act 1981 (the "Contempt Act") and the European Convention on Human Rights (the "ECHR").[4]  *See* Peacocke Decl., ¶¶27-30.  Pursuant to the Contempt of Court Act, "[n]o court may require a person to disclose, nor is any person guilty of contempt of court for refusing to disclose, the source of information contained in a publication for which he is responsible…unless that disclosure is necessary in the interests of justice or national security, or for the prevention of disorder or crime."  Contempt Act, §10 [Peacocke Decl., ¶28 and Ex. 12].  Similarly, Article 10 of the ECHR recognizes that the "exercise of [freedom of expression]…may be subject to such formalities, conditions, restrictions or penalties as are prescribed by law and are necessary in a democratic society…for preventing the disclosure of information received in confidence."  Peacocke Decl., ¶30 and Ex. 13.  The European Court[5] has held that disclosure of journalistic sources "cannot be compatible with Article 10 (art. 10) of the Convention unless [disclosure] is justified by an *overriding requirement in the public interest.*"  *Goodwin v. U.K.*, App. No. 17488/90, 22 Eur. Ct. H.R. 123 [39] (Mar. 27, 1996) (emphasis added) [Peacocke Decl., ¶34 and Ex. 16].

---

[4] The ECHR was ratified by the United Kingdom in 1951 and is enforceable in the courts of the United Kingdom pursuant to the Human Rights Act of 1998.  Peacocke Decl., ¶29.

[5] The European Court exists to safeguard the ECHR by providing a forum for those who believe that their rights under the ECHR have been denied.  Parties may apply directly to the ECHR for an adjudication of their rights, or may seek appeal of decisions rendered by the courts of a signatory country.  The United Kingdom, as a signatory to the ECHR and pursuant to the Human Rights Act 1998, is legally bound by decisions of the European Court.

Pishevar contends that "justice may not be done" absent the disclosure of Baram's confidential source because, among other things, no criminal proceedings may be brought in the United Kingdom unless Pishevar is able to identity the creator(s) and distributor(s) of the Forged Police Report.  MacDonald Decl., ¶38.  Even assuming *arguendo* that only Baram possesses information concerning the identity and location of Forged Report Distributor 1, Pishevar has not established that such disclosure is necessary in the "interests of justice" or based on "an overriding requirement in the public interest," as is required for disclosure under the Contempt Act and the ECHR, respectively.

*Goodwin v. U.K.*, 22 Eur. Ct. H.R. 123, is instructive.  There, a trainee journalist received sensitive information from a confidential source regarding the financial condition of a company, which was derived from a confidential internal document that had gone missing.  The ECHR determined that disclosure of the confidential source was an impermissible violation of Article 10 of the ECHR in light of the "potentially chilling effect an order of source disclosure [would] ha[ve] on the exercise of [press] freedom" in a democratic society, and that it was not outweighed by the company's interesting in bringing legal proceedings against the source. Peacocke Dec., ¶34 and Ex. 16.

More recently, in *Fin. Times Ltd. v. U.K.*, App. No. 821/03, 21 Eur. Ct. H.R. 533 (Nov. 24, 2009), the European Court again determined that a party's interest in bringing proceedings against an anonymous source was insufficient to outweigh the public interest in protection of journalistic sources.  There, a journalist had received and reported on a purported internal corporate document that was later determined to include fabrications.  The European Court held that disclosure infringed the journalists' rights under Article 10 of the ECHR where, among other

17

things, the company had failed to establish that it had exhausted alternative means of discovering the source's identity.  Peacocke Decl., ¶¶41-49 and Ex. 19.

In light of these controlling U.K. law precedents, Pishevar plainly cannot establish that disclosure of the identity of the Confidential Source is necessary in the interests of justice.  The European Court has not accepted arguments that a party's need to bring legal proceedings against a confidential source outweighs the important of protecting journalistic sources.  Most importantly, the core allegation in the Forged Police Report – the Sexual Assault Arrest – is true.[6]

Pishevar has not established that disclosure is sufficiently in the public interest, within the meaning of the Contempt Act and the ECHR, to justify compromising the Confidential Source. The Application should be denied as a result.

### C.   The Application Should Be Denied Because Baram's Privilege Against Self-Incrimination Exempts Him From Providing Evidence In Connection With The Contemplated Proceedings

The Application should also be denied because it seeks information protected by the privilege against self-incrimination.  The privilege against self-incrimination in the United Kingdom, derived from common law and also codified in Section 14(1) of the Civil Evidence Act of 1968, prevents a person from being compelled to produce documents or provide information that might incriminate him in any potential or current criminal proceeding or expose

---

[6] Lord MacDonald contends that "in the circumstances of this case, where the passing of the relevant material in itself amounts to a criminal offence, the identity of Source 1 and Source 2 will not, under English law, be protected as a confidential source."  MacDonald Decl., ¶45. However, *Goodwin* and *Fin. Times* both involved sources who had violated United Kingdom law in disseminating internal corporate and/or forged documents, and the European Court nonetheless failed to order disclosure.  In fact, the exception to Section 10 of the Contempt Act, on which Lord MacDonald presumably relies, refers only to the *prevention* of crime, not its prosecution.  English courts have consistently limited the exception in this way.  *See, e.g., Voskuil v. Netherlands*, App. No. 64752/01, 14 Eur. Ct. H.R. 465 (Nov. 22, 2007) [Peacocke Decl., ¶54 and Ex. 21] (declining to order disclosure of research material compiled by journalist who went undercover with pedophilia ring where disclosure was not necessary to prevent future criminal activity).

him to a penalty in England and Wales.  *See, e.g.*, *Redfern v. Redfern*, [1891] App. Cas. 139 at

147 (Eng.) ("It is one of the inveterate principles of English law that a party cannot be compelled

to discover that which, if answered, would tend to subject him to any punishment, penalty [or]

forfeiture.")  Peacocke Dec., ¶16 and Ex. 5.

　　　Pishevar carefully tries to avoid suggesting that Baram is an intended subject of the

Contemplated Criminal Proceedings.  However, he also contends that Baram knew, or at least

had reason to suspect, that the Forged Police Report was a forgery when he published about

Pishevar's Sexual Assault Arrest.[7]  *See* Applicant's Br., pp. 7-8.  Given that Pishevar's proposed

causes of action are purportedly based on an alleged breach by the creator(s) and distributor(s) of

the Forged Police Report of "a duty of care not to publish private information about him which

they knew to be false" (Applicant's Br., p. 15), it is not difficult to see how Baram could be

implicated.  Given the potential extraterritorial reach of the Fraud Act 2006 (*see* Peacocke Decl.,

¶13), Baram would have little choice but to assert his privilege against self-incrimination if

deposed.  Discovery of Baram's Confidential Source and related information pursuant to Section

1782 is thus improper given his unassailable right to assert the privilege against self-

incrimination.

## II.　THE APPLICATION SHOULD BE DENIED BECAUSE PISHEVAR HAS NOT ESTABLISHED THAT THE DISCOVERY SOUGHT IS "FOR USE" IN A FOREIGN PROCEEDING

　　　In order to obtain an order of discovery pursuant to Section 1782, an applicant must

establish that:  "(1) the person from whom discovery is sought resides (or is found) in the district

of the district court to which the application is made, (2) the discovery is for use in a foreign

---

[7] Baram denies that was aware of the falsity of the Forged Police Report when published his November 8, 2017 article concerning Pishevar's Sexual Assault Arrest.  However, under English law, a party may assert the privilege against self-incrimination while maintaining his innocence.  Peacocke Decl., ¶22.

proceeding before a foreign tribunal, and (3) the application is made by…any interested person."

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76 (2d Cir. 2012). The applicant

bears the burden of proof as to each of these elements. *See Certain Funds, Accounts and/or Inv.*

*Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 n.11 (2d Cir. 2015); *In re Asia Mar. Pac. Ltd.*, 253

F. Supp. 3d 701, 707 (S.D.N.Y. 2015).

　　　Pishevar's Application should be denied because he has not established that the discovery

sought from Baram is "for use in a proceeding in a foreign or international tribunal." 28 U.S.C.

§1782(a). Here, there is no currently pending foreign proceeding, and no proceeding is

reasonably contemplated within the meaning of Section 1782, as the Contemplated Proceedings

have not begun, despite the passage of more than two years after Pishevar's Sexual Assault

Arrest and the publications and other acts complained of in his Application.

　　　To show "reasonable contemplation" of a future foreign proceeding, Pishevar must

demonstrate "more than a subjective intent to undertake some legal action"; simply retaining

legal counsel and "discussing the possibility of initiating litigation" are not enough to

demonstrate that a proceeding is reasonably contemplated at the time a Section 1782 application

is filed. *Certain Funds*, 798 F.3d at 123-24. *See also In re King Baby Marine LLC*, No. 17-mc-

488 (LAK), 2017 WL 6940563, at *2 (S.D.N.Y. Dec. 22, 2017) (determining that need for

discovery was speculative where applicant merely advised that it "ha[d] consulted with Hong

Kong attorneys and [was] evaluating its legal recourse" against a contractual counterparty). *See*

*also In re Asia Mar. Pac. Ltd.*, 253 F. Supp at 708 ("The fact that Petitioner is contemplating 'the

*possibility* of initiating litigation' falls far short of an 'objective showing' that the proceedings

are within 'reasonable contemplation.'").

Pishevar represents that he "contemplates initiating civil proceedings" against the creator(s) and distributor(s) of the Forged Police Report. Applicant's Br., p. 14. Pishevar similarly represents that he "seeks to initiate, either through public or private prosecutions, criminal proceedings in England and Wales" in connection with the creation and distribution of the Forged Police Report. *Id.*, p. 13. With respect to both his Contemplated Civil Proceedings and his Contemplated Criminal Proceedings (whether public or private), Mr. Pishevar represents that he has "retained counsel" and that counsel has "begun preparing pleadings." *Id.*, pp. 14-15. Pishevar's representations to this effect fall far short of satisfying Section 1782's "for use" requirement because he has not presented the Court with any "concrete basis from which it can determined that the [C]ontemplated [P]roceeding[s] [are] more than just a twinkle in counsel's eye." *Certain Funds*, 798 F.3d at 124.

Additionally, as set forth in detail below, the evidence sought from Baram will not ultimately be used in any Contemplated Proceeding because Pishevar (1) allowed the applicable statutes of limitation to lapse on his contemplated defamation causes of action; (2) cannot satisfy the legal elements of his proposed negligent misstatement cause of action; and (3) has not credibly alleged that any Contemplated Criminal Proceeding will ever be commenced.

### A. No Libel Proceeding Can Be Brought Because Such Proceedings Are Now Barred By The United Kingdom's Limitation Action 1980

Pishevar suggests that he intends to bring causes of action for libel and/or slander against the author(s) and disseminator(s) of the Forged Police Report. *See* Watson Decl., ¶32. However, any claim for libel and/or slander is barred by the one-year statute of limitations application to those claims.

In her Declaration, Ms. Watson acknowledges that "[u]nder the Limitation Act 1980 (the "Limitation Act"), the applicable limitation for defamation is one year from the date of accrual of

the claim, which would be from the time of publication of defamatory statements…, namely, September *2018*."  Watson Decl., ¶42 (emphasis added).  However, Baram received the Forged Police Report from his Confidential Source in September *2017*, and *Fast Company* published articles about it in November *2017*.  *See* Applicant's Br., pp. 5, 7-8; Baram Aff., Exs. 2, 4 and 7. Ms. Watson's statute of limitations argument is thus based upon a clear misstatement of fact.

Further, Ms. Watson has not provided any support for her argument that a court would permit Pishevar to bring a libel claim that is technically out of time on the grounds that Pishevar "has only very recently, in September and October 2019, become aware that there were additional Sources who published the Forged Police Report as well as made slanderous statements about him."  Watson Dec., ¶42.  In fact, the leading cases interpreting the Limitation Act as it relates to defamation claims make clear that "disapplication of the limitation period in libel actions is…exceptional" given that a claimant seeking to clear his name will generally want to do so as quickly as possible.  *Reed Elsevier v. Bewry* [2014] EWCA Civ 1411 [5] (Eng.) [Peacock Dec., ¶85 and Ex. 27].

Here, Pishevar was well aware that news of his Sexual Assault Arrest had spread to the media more than two years ago, in June 2017, when he obtained a gag order against the *The Sun*. Applicant's Br., p. 5.  Further, he was "contacted by various [American] media organizations requesting comment on the Forged Police Report" in or about November 2017, prompting him to release a statement on November 8, 2017 confirming his Sexual Assault Arrest.  *Id.*  Pishevar's argument that he was unaware of the November 2017 reporting and only recently learned that additional sources ran articles discussing the Forged Police Report is not credible.  The reporting about him was publicly accessible, and he has started multiple other proceedings about them. Pishevar falls far short of alleging the sort of exceptional circumstances that would justify taking

22

his Contemplated Civil Proceedings outside the one-year limitations period established in the Limitations Act. [Peacock Dec., ¶85]

### B.    Pishevar's Negligent Misstatement Cause of Action Is Insufficient As A Matter Of Law

Pishevar's contemplated negligent misstatement cause of action, if ever filed, will fail as a matter of law because Pishevar cannot establish that he himself relied on any false statement made by any creator or distributor of the Forged Police Report. Ms. Watson correctly states that "[n]egligent misstatement is a common law tort in which party A owes a duty of care to Party B and carelessly makes a false statement to Party B *on which Party B relies* and consequently, Party B suffers loss." *See* Watson Dec., ¶33 (emphasis added). However, Ms. Watson has not identified any statement on which Pishevar claims he relied. Instead, she conflates "Party B" in her example with members of "the media, in their professional capacity of reporting news," whom she claims detrimentally relied on the Forged Police Report. *Id.*, ¶38. Pishevar's contemplated negligent misstatement claim is fatally flawed as a result. *See Hedley Byrne & Co. Ltd. v. Heller & Partners Ltd.* [1964] A.C. 465 (Eng.) (holding that the essence of a claim for negligent misstatement is the assumption of responsibility by Party A specifically towards Party B in circumstances in which Party A knows or ought reasonably to know that Party B will rely upon a statement by Party A.) [Peacocke Dec., ¶¶80-81 and Ex. 27].

### C.    No Criminal Proceeding In The UK Is Reasonably Contemplated

Pishevar admits that the COLP conducted an investigation into the creation and distribution of the Forged Police Report in or about November 2017, and that the COLP had closed its investigation as of October 25, 2018, more than one year ago, apparently without bringing any charges. *See* Applicant's Br., pp. 9-10; Watson Decl., Ex. 6 (Mr. Paul Chadha, Chief Lawyer (Litigation) at the COLP, confirmed on October 25, 2018 that "there is no criminal

investigation in respect of the [Forged Police Report].").  This alone belies Lord MacDonald's blithe assertion that "an English prosecutor would consider the faking of an internal police report to be an especially egregious act" that merited public prosecution.  MacDonald Decl., ¶24.

Pishevar does not explain how the disclosure of Baram's Confidential Source would somehow revive the interest of the COLP and/or an English prosecutor in investigating and prosecuting a supposed offense that supposedly occurred more than two years ago.  Nor does Pishevar explain his suggestion that his private lawyers could somehow initiate a public prosecution.  Pishevar does not even provide any support for his contention that an English Court would grant a summons for a private prosecution this long after the relevant events, let alone that the Director of Public Prosecutions would have any interest in taking over such a prosecution, assuming any evidence disclosed by Baram discloses that anyone knowingly committed a crime. Pishevar has not even established what statements in the Forged Police Report are untrue.  He has failed to establish that any criminal proceeding is within reasonable contemplation.  He has failed to establish, as he must, that the evidence sought here is "for use" in that proceeding.

## III.   PISHEVAR'S APPLICATION SHOULD BE DENIED BASED ON THE DISCRETIONARY *INTEL* FACTORS

"[A] district court is not required to grant a §1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004).  Rather, if the applicant has satisfied the statutory requirements of Section 1782, the court must still determine, in the sound exercise of its discretion, "what, if any, assistance is appropriate." *Id.* at 266.  This inquiry is guided by the factors set forth in *Intel Corp.*, 542 U.S. at 266, including (1) whether "the person from whom discovery sought is a participant in the foreign proceeding," and is therefore subject to the foreign tribunal's jurisdiction; (2) the "character of the proceedings underway abroad," and the receptivity of the

foreign tribunal to the court's assistance; (3) whether the Section 1782 application would "circumvent foreign proof-gathering restrictions"; and (4) whether the discovery sought is "unduly intrusive or burdensome." *Id.* at 264-65.

Here, the third and fourth *Intel* factors weigh against granting the Application.  As set forth in detail in Section I, *supra*, Pishevar's Application seeks to circumvent foreign proof-gathering restrictions in two ways.  First, the Application seeks to compel discovery from Baram that would be shielded from disclosure in the United Kingdom based on Baram's reporter's privilege and privilege against compelled self-incrimination.  Second, the Application seeks to sidestep discovery mechanisms that are available to Pishevar in the United Kingdom in connection with his Contemplated Proceedings, including the robust discovery that would be afforded Pishevar as part of a *Norwich Pharmacal* application.  For these reasons, the third *Intel* facts merits against the grant of Pishevar's Application.

The fourth *Intel* factor similarly counsels in favor of denying the Application because Pishevar's proposed subpoenas seek to invade Baram's reporter's privilege.  *See, e.g.*, *In re Microsoft Corp.*, 428 F. Supp. 3d 188, 196 (S.D.N.Y. 2006) (determining that document request was "unduly intrusive and burdensome in that it seeks documents…that are privileged under U.S. law"), abrogated on other grounds, *In re del Valle Ruiz*, 428 F. Supp. 2d 188 (2d Cir. 2019).  The Court should exercise its discretion to deny the Application.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this Court deny the

Application in its entirety and grant such other and further relief as the Court deems just and

proper.

Dated:      December 4, 2019
            New York, New York

Respectfully submitted,

**MOSES & SINGER LLP**

By: _____
        Toby Butterfield
        Megan Daneshrad
405 Lexington Avenue, 12th Floor
New York, New York 10174
Tel:  (212) 554-7800
tbutterfield@mosessinger.com
mdaneshrad@mosessinger.com

*Attorneys for Respondent Marcus Baram*

26