

The Chrysler Building
405 Lexington Avenue, NY, NY 10174-1299
Tel: 212.554.7800     Fax: 212.554.7700
www.mosessinger.com

Toby Butterfield
Direct Dial: 212.554.7860
Fax: 212.377.6040
E-Mail: tbutterfield@mosessinger.com

February 14, 2020

**VIA ECF**

Honorable Stewart Aaron
United States Magistrate Judge
United States District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

    **Re:**    *In Re Application Of Shervin Pishevar For An Order to Take Discovery For Use In Foreign Proceedings Pursuant to 28 U.S.C. §1782* **(19-mc-00503-JGK-SDA)**

Dear Judge Aaron:

    We represent Respondent Marcus Baram ("Mr. Baram") in the above-referenced proceeding. In accordance with Your Honor's February 10, 2020 order [ECF No. 44], we write to explain why even the limited disclosure of the name and location of Mr. Baram's confidential source implicates Mr. Baram's right against compelled self-incrimination under the law of the United Kingdom.

    As explained in detail in the Declaration of Teresa Rosen Peacocke ("Peacocke Declaration") [ECF No. 16], the privilege against self-incrimination under U.K. law is very broad, and is available whenever a disclosure "might increase the risk of prosecution." *Id.*, ¶19 (citing *Den Norske Bank ASA v Antonatos* [1999] Q.B. 271). *See also Redfern v. Redfern*, [1891] App. Cas. 139 at 147 (Eng.) ("It is one of the inveterate principles of English law that a party cannot be compelled to discover that which, if answered, would tend to subject him to any punishment, penalty [or] forfeiture.").

    Here, the Applicant[1] contends that Mr. Baram knew or had reason to suspect that the Forged Police Report was a forgery when he published about the Applicant's arrest. *See* October 31, 2019 Declaration of Lord Macdonald of River Glaven Kt QC, ("Macdonald Declaration") [ECF No. 6], ¶¶13, 14. Whatever representations Applicant's counsel makes to this Court that Applicant does not presently intend to prosecute or pursue civil remedies against Mr. Baram, Mr. Baram is undoubtedly at risk of public prosecution in the United Kingdom under the Fraud Act of 2006, as

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Memorandum of Law in Support of Petitioner's Application and Petition for an Order to Conduct Discovery for Use In Foreign Proceedings Pursuant to 28 U.S.C. §1782 [ECF No. 4].

4459042v3 019198.0101



Honorable Stewart Aaron
February 14, 2020
Page 2

well as for the statutory and common law offenses of conspiracy, both of which indisputably have an extra-territorial reach.  *See* Peacocke Declaration, ¶¶13, 14.  Applicant took pains to argue how U.K. public authorities would be "very interested" in pursuing such prosecutions.  Lord Macdonald maintained in his Declaration that "an English prosecutor would consider the faking of an internal police report to be an especially egregious act," which merits a "robust prosecutorial response…capable of achieving…a…sentence commensurate with the reprehensible nature of the conduct."  Macdonald Declaration, ¶24.  The willful dissemination of such faked internal police reports is similarly subject to U.K. criminal sanction.  Given the purported seriousness of these offenses, an English prosecutor would be duty-bound to follow the evidence where it led and to bring all culpable parties to justice. Mr. Pishevar and his U.K attorneys have no control over the trajectory of a U.K. public prosecution, nor could they shield Mr. Baram from prosecution, should Applicant's incriminating allegations ever be proved.  Mr. Baram has no immunity from being caught up in the very prosecutions Applicant maintains may result (and are avowedly intended) from the very disclosure Applicant seeks to compel from Mr. Baram.

Mr. Pishevar and his U.K. and U.S. attorneys also have no control over the testimony of the eventual witnesses and defendants, including the Confidential Source 1 sought to be implicated by Mr. Baram.  If Confidential Source 1 is criminally prosecuted in the U.K. (whether publicly, or via the private prosecution that Applicant's counsel represented to this Court that Applicant would undoubtedly pursue), then that source would likely seek to implicate Mr. Baram, either in the hope of seeking favor with the English prosecutors or reducing his own exposure.  By revealing the name of Confidential Source 1, whom the English prosecutor is allegedly very interested in prosecuting, Mr. Baram may himself become a subject of interest.  The privilege against self-incrimination prohibits forcing Mr. Baram to implicate others, thereby jeopardizing himself criminally.

As discussed in detail in Mr. Baram's opposition papers and at oral argument, other factors also bar requiring Mr. Baram to subject himself to possibly criminal prosecution by revealing Confidential Source 1.  First, the Court is presently investigating other means of investigating the identity of other Forged Report Distributor(s), including by requiring the production of any documentation received by the Petitioner or his English criminal counsel at or around the time of his arrest.  *See* Dkt. No. 44.  Whether such documentation was provided to Applicant or his counsel at the time of Applicant's arrest, later, or not at all, such records will reveal true details of Applicant's arrest.  Those records provide another and much more direct avenue to learning who could have created the Forged Police Report.  Applicant could have compared his own records of what happened, his own memories of the arrest, the City of London Police's records, or Applicant's own solicitors' or other professionals' contemporaneous records of what actually happened, against the Forged Police Report.  From that inquiry, Applicant could identify which individuals were privy to the non-public details of the arrest –the date, time, hotel name, location, and whatever other details surrounding the arrest are corroborated by contemporaneous records – are also embedded in the Forged Police Report.  Applicant's counsel provided no explanation of why Applicant never pursued this line of inquiry. Given that failure, Applicant has no justification for invading Mr. Baram's privilege against compelled self-incrimination, nor destroying his reporters' privilege.

4459042v3 019198.0101



Honorable Stewart Aaron
February 14, 2020
Page 3

Nothing included in Mr. Baram's reporting is false, let alone proven to be false, let alone defamatory. But the identity and location of Mr. Baram's confidential source are protected from disclosure by Mr. Baram's self-incrimination and reporter's privileges, even if details provided by Confidential Source 1 are ultimately proven to be false. As Amici pointed out, there is no case law standing for the proposition that the protection of the reporter's privilege depends on the truthfulness of the information provided. Similarly, Mr. Baram's self-incrimination privilege is independent of whether anyone provided him with untruths.

In any event, the Forged Police Report and other information provided to Mr. Baram by Confidential Source 1 were not Mr. Baram's starting point for accurate investigative reporting about the fact of Applicant's arrest. Confidential Source 1 truthfully notified Mr. Baram in July 2017 that Applicant had been arrested, providing accurate details such as the night of the incident and the hotel. Mr. Baram engaged in investigating the arrest for several months before receiving a copy of the Forged Police Report in September 2017. *See* Affidavit of Marcus Baram ("Baram Aff."), ¶¶ 6, 8. Yet Mr. Baram did not publish his first article accurately reporting that fact of Applicant's arrest until November 6, 2017, after Applicant's representative had given Mr. Baram a statement confirming Applicant's arrest and after Applicant had publicly filed his lawsuit in the San Francisco Superior Court against Definer's Public Affairs, *id.*, Ex. 2. In that lawsuit, Applicant alleged he is the victim of Definer's "smear campaign" concerning Applicant's "incident with a prostitute" in a hotel in London. Mr. Baram's article quoted in full Applicant's own spokesman's statement regarding the arrest and that very lawsuit, and highlighted that the authenticity of the Forged Police Report had not been verified. *Id.*, Ex. 3. That accurate reporting cannot support invasion of the privilege against self-incrimination under U.K. law, just as it does not justify defeating the privilege afforded to reporters under New York, federal, U.K. and E.U. law.

Furthermore, defeating such privileges would serve no purpose: once identified by Mr. Baram, Confidential Source 1 would undoubtedly rely on his own privilege against self-incrimination, barring Applicant from any further inquiry of him. Applicant's counsel loudly asserted their desire to prosecute Confidential Source 1 in the U.K., leaving no doubt that he can assert his own privilege against self-incrimination. As a result, Applicant has no prospect of learning the identity of the "male lawyer based in the UK" from Confidential Source 1.

Applicant is abusing 28 U.S.C. 1782 in a vain search for information from Mr. Baram about the source of the Forged Police Report, when he could have gleaned much better information about that in many other ways. But Applicant turned away from that fact-finding exercise, instead asking to defeat Mr. Baram's legal privileges. The law does not permit such an "end run," and this Court should not permit it either. Based on the foregoing, Respondent's briefs and sworn declarations and oral arguments, Respondent respectfully requests the Court exercise its discretion to deny the Petitioner's application.

Respectfully,

Toby Butterfield

4459042v3 019198.0101