**quinn emanuel** trial lawyers | los angeles

865 South Figueroa Street, 10th Floor, Los Angeles, California 90017-2543 | TEL (213) 443-3000 FAX (213) 443-3100

WRITER'S DIRECT DIAL NO.
**(212) 849-7552**

January 14, 2020

WRITER'S EMAIL ADDRESS
lucasbento@quinnemanuel.com

**VIA ECF**

Hon. Stewart D. Aaron
United States Magistrate Judge
United States District Court for the Southern District of New York
500 Pearl Street, Courtroom 11C
New York, NY 10007

Re:   *In re Application of Shervin Pishevar for an Order to Take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, 1:19-mc-00503-JGK-SDA

Dear Judge Aaron:

We write to further confirm that Mr. Baram's privilege against self-incrimination under English law would not be implicated or violated by any disclosure of the name and location of Source 1 pursuant to this 1782 Application.  *See* H'rg Tr. 58:17-22; ECF. No. 44.[1]  As stated previously, "Mr. Baram's disclosure of the identity of Source 1 would not subject him to any criminal liability and …would not implicate his privilege against self-incrimination." Macdonald Reply Declaration, ECF 19 ¶ 18; *see also* Reply Br., ECF 18, at 5.  In his Supplemental Declaration attached hereto, Lord Macdonald QC further states, inter alia, that, since "the information [name and source of Source 1] is not being sought in anticipation of criminal proceedings against Mr. Baram and given that no incriminating evidence is sought, the [privilege against self-incrimination] does not apply and cannot be relied upon as a response to the 1782 Application." Exhibit 1 ¶ 7.  While Respondent may argue to the contrary, neither Petitioner nor any of his attorneys has suggested that Respondent committed a criminal offense, nor that they or any English official would contemplate opening a criminal inquiry into him.[2]

Further, at oral argument, Respondent argued for the first time that Petitioner should have pursued the discovery he now seeks from Respondent from Definers Corp. and Definers Public

---

[1]   Petitioner reiterates his consent to receive the name and information sufficient to locate Source 1 based on identifiable information, such as place of work and/or home address, in lieu of a subpoena for a deposition and documents.

[2]   And even if, arguendo, Respondent were subject to English criminal liability, his self-incrimination privilege would not bar discovery sought for the Contemplated Civil Proceedings. *See* Reply Br. at 5 (collecting cases).  Whatever liability Respondent could, hypothetically, have had would have attached to the publication of his article—a known fact—and not his communications or actions with Source 1.  Disclosing the name and location of an individual does not create any criminal liability and thus does not permit the invocation of the privilege against self-incrimination. Indeed, Mr. Baram was merely a witness to a crime.  *See Branzburg v. Hayes,* 408 U.S. 665, 692 (1972) (holding that journalist cannot use privilege to conceal crimes and noting that "[t]he crimes of news sources are no less reprehensible and threatening to the public interest when witnessed by a reporter than when they are not.").

quinn emanuel urquhart & sullivan, llp

LOS ANGELES | NEW YORK | SAN FRANCISCO | SILICON VALLEY | CHICAGO | WASHINGTON, DC | HOUSTON | SEATTLE | BOSTON | SALT LAKE CITY
LONDON | TOKYO | MANNHEIM | HAMBURG | PARIS | MUNICH | SYDNEY | HONG KONG | BRUSSELS | ZURICH | SHANGHAI | PERTH | STUTTGART

Affairs (together "Definers"), or from Petitioner's own legal counsel in England.  Though this Court need not consider an argument raised for the first time at oral argument, *Harris v. Wu-Tang Prods., Inc.*, 2006 WL 1677127, at *3 (S.D.N.Y. June 16, 2006), because Petitioner had not anticipated those baseless arguments, we write to explain how both purported sources are nevertheless not reasonable alternatives for Mr. Pishevar.

At oral argument, Respondent's counsel provided a copy of the complaint filed by Petitioner in the Superior Court of the State of California filed against Matthew Rhoades and Definers in November 2017 ("Definers Complaint").  Respondent's counsel argued that certain statements in the Definers Complaint supported Respondent's speculative theory that Definers may have information about the Forged Police Report and confidential source at issue in these proceedings. H'rg Tr. 50:25, 59:5-16.  What Respondent's counsel failed to share with the Court, however, was that Definers filed, on the public docket, at least 6 separate sworn declarations in which senior executives at Definers—including its Chief Executive Officer—stated that they "do not have and have never seen a police report or a purported police report involving Mr. Pishevar." Exhibit 2 (Rhoades Decl. ¶ 13; Pounder Decl. ¶ 13; Miller Decl. ¶ 9; Cotter Decl. ¶ 11; Rodgers Decl. ¶ 8; Reed Decl.¶ 8).[3]  Definers thus has denied, in sworn declarations, any knowledge of the Forged Police Report and would not be able to identify it, let alone identify any source that has leaked it to Respondent.  Definers is not an alternative source.

Respondent's counsel also made an unfounded and false accusation that Mr. Pishevar's own English solicitors may have been involved in creating and distributing the Forged Police Report.  *See* H'rg Tr. 40:18-23; 47:23-48:6.  Mr. Pishevar's English solicitors, who have and continue to diligently represent him since May 2017, have played no part in creating the Forged Police Report or its distribution to the press.  Respondent's suggestion that Mr. Pishevar's own counsel may be an "alternative source" is therefore baseless and needlessly disparaging to Mr. Pishevar's counsel.[4]  Given that Respondent's counsel acknowledged at oral argument that his accusation was baseless, H'rg Tr. 40:17-23, 47:11-48:6, Petitioner requests that those portions of the oral argument transcript falsely accusing Mr. Pishevar's English solicitors of any wrongdoing be stricken from the record.

Respectfully,

/s/ *Lucas V. M. Bento*

Lucas V.M. Bento

*Attorneys for Petitioner*

---

[3]  To be clear, Exhibit 2 to this letter, which attaches these Definers' declarations, do not count toward the 3-page limit set by the Court because these are publicly-available documents from the same lawsuit of the Definers Complaint introduced at oral argument by *Respondent*.  As a matter of basic fairness, the Court should have the benefit of all relevant documents related to that lawsuit.

[4]  Further, New York attorneys have an ethical duty not to engage in "undignified and discourteous conduct" nor make "unfair or derogatory" about opposing counsel.  *See* New York Rules of Professional Conduct, Rule 3.3(f)(2); *see also id.,* Rule 3.4(d)(1); *id.*, Rule 4.4(a).