**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF SHERVIN PISHEVAR FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:19-mc-00503-JGK-SDA |

**DECLARATION OF SHERVIN PISHEVAR**

I, Shervin Pishevar, hereby declare as follows:

1.      I submit this declaration in support of Petitioner's Motion for Reconsideration of the Court's February 18, 2020 Order.

2.      The statements in this declaration are based on my own personal knowledge, and if called as a witness, I would testify to the statements herein.

**Background**

3.      I am an entrepreneur, venture capital investor, and a philanthropist.

4.      I earned a Bachelor of Arts degree from University of California, Berkeley. As a senior at Berkeley, I founded and served as Editor-in-Chief of *Berkeley Scientific*, the first peer reviewed undergraduate science research journal in the United States.  While at Berkley, I also received a Presidential Fellowship which led to finding a new way to selectively lyse malaria infected red blood cells.  Berkeley filed a patent on the discovery and I was the sole inventor.

5.      In 1996, I coauthored an article in the *Journal of the American Medical Association* (JAMA) that helped lead to the Istanbul Protocol, the first set of international guidelines for documentation of torture, which became an official United Nations document in 1999.

6.      After I graduated I decided to become an entrepreneur.

1

7.     From 1997 to 2011, I co-founded and served as an executive and board member for a number of technology-enabled start-up companies, including WebOS, Ionside Interactive, HyperOffice, Webs, Inc., and Social Gaming Network.  From 2011 to 2013, I was a Managing Director at Menlo Ventures, a venture capital firm with over $4 billion under management, and led early investments in numerous companies, such as Uber, Machine Zone, Warby Parker and Tumblr.

8.     In 2012, I was chosen by the U.S. Government as an "Outstanding American by Choice," an award that recognizes "naturalized citizens who have made significant contributions to both their community and their adopted country."

9.     In 2013, I co-founded Sherpa Capital, a venture capital company which focuses on business incubators and early-stage investments in start-up companies.  Sherpa Capital has invested in numerous companies, such as Uber, Airbnb, and Munchery.  I also served as a Board Observer for Uber Technologies, Inc. from 2011 to 2015.  In 2014, I co-founded Hyperloop One (rebranded as Virgin Hyperloop One in 2017), a company that works to commercialize the "hyperloop" high-speed transportation technology, and served as its Executive Chairman until 2017.

10.     Apart from working as an investor and entrepreneur, I have also devoted substantial time and resources to both charities and other non-profit organizations, including Build.org, Invisible Children, Charity: Water, Malala Fund, 1% of Nothing, and Cyrus Prize, among others.  Between 2011 and 2013, I was selected as an inaugural class for the UN Foundation Global Entrepreneurs Council, a group of entrepreneurs who worked to bring innovative ideas to the work done by the UN and the UN Foundation.  In 2015, I was appointed to the J. William Fulbright Foreign Scholarship Board and in 2016, I was awarded the Ellis Island Medal of Honor, an award given to those "who have shown an outstanding

commitment to serving our nation either professionally, culturally or civically, among other criteria."

**Arrest in May 2017**

11.     On May 27, 2017, following a consensual sexual interaction at the Ned Hotel in London, to my utter surprise and distress, I was awoken and arrested on suspicion of rape by the City of London Police.  I did not commit the alleged crime and have always denied the allegation.  I was released on bail the following day.  Following my arrest, I cooperated fully with the City of London Police's investigation into the allegation.

12.     On July 28, 2017, I was informed that the City of London Police was not going to take further action against me.

13.     I did not make any offer to settle, settle, or make any payment to settle any allegation with the alleged accuser or anyone affiliated with the accuser.

**Reporting and Rumors after May 2017 and My Lawsuit Against Definers**

14.     In early November 2017, I was told by a confidential source that I will call the "Pishevar Source" that he had heard from Matthew Rhoades that my business opponents had purportedly hired Definers Corp. ("Definers") to "take me down."[1]  Specifically, the Pishevar Source had told me that Definers and its CEO, Mr. Matthew Rhoades, were making the following specific false and disparaging statements about me to third parties:

> (a)     An accusation that I am an agent of the Russian government and friend of Russian President, Vladimir Putin, and that Hyperloop One's Russian investors were due to me being an agent of the Russian government;

> (b)     An accusation that my call for California's secession from the United States was linked to my "Russian connections";

---

[1]   While I do not believe the name to be of relevance or importance here, I'm willing to produce the name of the Pishevar Source for *in camera* review.

(c)      An accusation that I had no money and was unable to raise additional funds;

(d)      An accusation that I raised money for direct investment in Uber but used it to put into my own pockets and that of my investment firm, Sherpa Capital.

15.      The Pishevar Source did not mention or share any information, however, about Definers making any false statements about me related to allegations of sexual assault or misconduct, nor did he have any information about a forged rape police report that had been circulated to members of the press in fall 2017, nor about any arrest.

16.      In or around early November 2017 (in any event prior to my filing of the Definers Lawsuit), a tech reporter ("Tech Reporter")[2] told me that she heard from a confidential source that I made a payment to settle a sexual assault claim in London and had "an incident with a prostitute in Europe" and that she was reaching out to me to get a comment.  I categorically denied the rumors and allegations as false and defamatory.  She made no mention of a rape allegation or a forged police report of any kind, nor about any arrest.

17.      When I asked her where she had heard that allegation, she refused to tell me on the basis that she had received the information from a confidential source.  I continue to believe that Tech Reporter would continue to refuse to provide any further information about her confidential source, just as Mr. Baram has.

18.      Based on what the Pishevar Source told me about Definers's purported involvement in "taking me down" by alleging false ties between me and Russia and my finances, and what the Tech Reporter told me about the alleged payment to settle a sexual assault claim, I made the reasonable inference, in early November 2017, that Definers was behind all of these allegations.  I therefore engaged counsel and filed a lawsuit against

---

[2]   While I do not believe the name to be of relevance or importance here, I'm willing to produce the name of the Tech Reporter for *in camera* review.

4

Definers, its CEO, Matthew Rhoades, and its President Joseph Pounder, in connection with those alleged false statements about me on November 6, 2017 in Superior Court of the State of California, County of San Francisco ("Definers Lawsuit"). A copy of the complaint filed in that case is attached as Exhibit 1.

19.     My information and belief on November 6, 2017 as to the provenance of the false statement that I paid money to settle a sexual assault claim in London was later rebutted by sworn Declarations from six Definers executives filed in that action on December 6, 2017. Matthew Rhoades (Definers's CEO), Joseph Pounder (Definers's President), Timothy Miller (a partner at Definers in charge of "media relations and campaigns and digital strategy"), Scott Cotter (Definers's COO and CFO), Brian Rogers (Definers's Senior Vice President in charge of corporate and public affairs), and Colin Reed (Definers's Vice President of client development and media relations) submitted affidavits denying the allegations I had filed against them. Copies of those declarations have previously been filed in this case. I have no reason to believe that the contents of those affidavits are untrue.

20.     Each of the Definers executives declared under the penalty of perjury under the laws of California that they have not been retained by any entity or person to do any work in connection with me or have not spoken to reporters about me or any aspect of my life, including my personal, business or political life, that they had not discussed any of the alleged defamatory statements or allegations regarding me before the filing of the Complaint in that lawsuit, and that I was not discussed at any of the daily or bi-weekly meetings at Definers which discuss the day-to-day work of the staff and new and existing client engagements respectively.   Joseph Pounder, Definers's President, also declared that he was aware of the identity of Definers's clients, and that Definers has not been retained to do (and has not done) any work in connection with me.  Matthew Rhoades, Definers' CEO, said something similar in his declaration.

21.     My lawsuit against Definers did not relate to the forged police report, which I discovered only after filing the Complaint against Definers.   It was only on November 8, 2017, two days after I filed my lawsuit against Definers that Mr. Baram, at Fast Company, published an article about my arrest in London, relying on a copy of a forged police report that he had seen.  Forbes and New York Post also published articles referencing a police report that has since been proven to be a forgery.

22.     My lawsuit against Definers did not refer to the forged police report in any of my Complaint, motion papers, or declaration.  This is because I did not and do not believe Definers to be behind the forged police report.

23.     I only came to learn that there was such a "report" after I filed the Definers Lawsuit and did not know it was fake until November 10, 2017 when my English solicitors received confirmation from the City of London Police that the alleged "report" was false.  In any event, later each of the Definers executives, in their declarations, also declared under the penalty of perjury that they had not seen a police report or a purported police report involving me.

24.     After Definers filed their sworn declarations in support of their Motion to Strike the Complaint filed on December 6, 2017, I asked the Pishevar Source about the false allegations regarding my purported ties to Russia and my finances, as well as whether the Pishevar Source had heard anything about the false allegation that I had paid money to settle a sexual assault claim or a fake police report.  I did not hear back from the Pishevar Source.

25.     On December 29, 2017, through my attorneys, I filed an opposition to Definers's motion to strike and I submitted a declaration in support of our opposition papers. In that declaration, I summarized what I had learned back in early November 2017, which formed the basis for my Complaint.  In my declaration, I did not dispute the truth of the Definers executives' declarations, and only offered a statement of what I had learned in early

November 2017 prior to filing the lawsuit.  More specifically, my December 29, 2017 declaration does not dispute statements that the Definers executives made in their declarations that they had not seen a police report or a purported police report relating to my arrest.  I attach a copy of the declaration I submitted in that case as Exhibit 2.

26.     In January 2018, the Pishevar Source responded to my enquiries, saying that he had only heard about the false allegations relating to Russia and my finances.  In light of Definers's affidavits denying any involvement in the allegations contained in the Complaint, I asked the Pishevar Source to corroborate his claim that Definers was involved in trying to "take me down" and in making the false allegations relating to Russia and my finances, but he was unable to corroborate them and communicated that if subpoenaed, would not support that claim.

27.     Based on the Definers executives' Declarations and the lack of independent corroborating evidence to support my claims, I decided to voluntarily dismiss the lawsuit against Definers in February 2018.  It is clear that Definers was not involved in creating or disseminating the Forged Police Report that is the focus of my contemplated foreign proceedings that underpin this 1782 Application.  I do not believe and have no reason to believe that the Definers executives have perjured themselves in their submissions in the California case.

### Information Sought in This 1782 Proceeding

28.     In this 1782 proceeding, I am only seeking evidence as to the identity and location of the source who had given Mr. Baram a copy of the forged police report in September 2017.  I am not seeking evidence as to persons involved in any "smear campaign" involving false statements about my supposed ties to Russia or my finances.

29.     I am seeking very specific information regarding those who created and distributed a fake rape police report and false information contained in it, and the false

statements that the "gold command" of the British police was involved, that the police station was "outraged" when the charge was dropped, and that I paid money to settle that charge.

30.     I do not believe that either the Pishevar Source or the Tech Reporter have any information at all about the creators or distributors of the forged police report, or of any false statements about that investigation.

31.     Based on the Tech Reporter's representations, I believe the Tech Reporter, as an established and well-known member of the press, would invoke the reporters' privilege to shield the name of her source who told her the false allegation that I paid money to settle a "sexual assault" claim in London.

32.     I have no other source than Mr. Baram, (who admits having received a copy of the forged police report as well as the other false allegations from his source) to obtain the information relating to the identity and location of his source, which will enable me to initiate and maintain foreign actions against that source and others (such as the male lawyer who gave Mr. Baram's source the fake report) who have distributed or created the forged police report and the other allegations related thereto.

**Impact of the Forged Police Report**

33.     The publication of articles referencing the fake police report has caused me and my family to suffer severe emotional distress and damages, both in reputation and in my business dealings.

34.     In order to pursue my contemplated criminal and civil claims in England against the forger and distributors of the forged police report, I now seek the identity and location of Mr. Baram's source as my last resort.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed on this 3rd day of March, 2020.

Shervin Pishevar

# EXHIBIT 1

COPY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

QUINN EMANUEL URQUHART & SULLIVAN, LLP
   Eric J. Emanuel (Bar No. 102187)
   ericemanuel@quinnemanuel.com
   Randa A.F. Osman (Bar No. 150798)
   randaosman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Plaintiff Shervin Pishevar

ENDORSED
**F I L E D**
*San Francisco County Superior Court*

NOV 0 6 2017

CLERK OF THE COURT
BY: _____
   NEYL WEBB
        **Deputy Clerk**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF SAN FRANCISCO

Shervin Pishevar, an individual,

            Plaintiff,

   vs.

Matthew Rhoades, an individual, Joseph
Pounder, an individual, Definers Corp., a
business entity, Definers Public Affairs, a
business entity, and DOES 1 - 10,

            Defendants.

CASE NO. **CGC - 17 - 5 6 2 3 0 5**
*Unlimited Jurisdiction*

**COMPLAINT FOR:**

   1. **DEFAMATION PER SE**
   2. **INTENTIONAL INTERFERENCE
      WITH PROSPECTIVE
      ECONOMIC ADVANTAGE**

**DEMAND FOR JURY TRIAL**

[Signed via Facsimile]

        Plaintiff Shervin Pishevar, by and through his undersigned counsel, brings this action

against defendants Matthew Rhoades, Joseph Pounder, Definers Corp. and Definers Public

Affairs, and DOES 1-10 (collectively "Defendants") as follows.

                    **PRELIMINARY STATEMENT**

        1.      Mr. Pishevar is a successful businessman, investor and entrepreneur.  He is the co-

founder of Sherpa Capital, which currently has approximately $650 million under management.

He also co-founded the transportation startup Hyperloop One, and currently serves as its executive

chairman.

1     2.     Mr. Pishevar is informed and believes that in recent months, Defendants have been

2 retained by competitors or other business adversaries of Mr. Pishevar to orchestrate and implement

3 a malicious smear campaign, apparently designed to incite false, defamatory, and highly damaging

4 chatter and gossip about Mr. Pishevar amongst reporters and strategically targeted individuals in

5 Mr. Pishevar's professional and personal networks, such as investors in Uber.  Defendants have

6 channeled their presidential campaign experience into offering corporate interests "opposition

7 research"—i.e., dirt for cash—on their competitors.  This time, Defendants have gone too far;

8 having found no "dirt" on Mr. Pishevar, Defendants have, upon information and belief,

9 manufactured their own dirt and shoveled it to numerous journalists under the guise of "research,"

10 in an effort to assassinate Mr. Pishevar's character and therefore destroy his career.

11     3.     Indeed, true to their name, Defendants have, upon information and belief, sought to

12 "define" Mr. Pishevar with their lies in order to alienate him from the business community in

13 which he enjoys success and a good reputation, and therefore damage his business interests to the

14 enrichment of the corporate interests Defendants represent.   Mr. Pishevar brings this action to end

15 Defendants' repugnant media campaign and hold Defendants accountable for the damage they've

16 caused.

17              **PARTIES**

18     4.     Mr. Pishevar is an individual residing in the State of California, County of San

19 Francisco.

20     5.     Defendant Matthew Rhoades is an individual who, on information and belief,

21 resides in the State of Virginia.

22     6.     Defendant Joseph Pounder is an individual who, on information and belief, resides

23 in the State of Virginia.

24     7.     Defendant Definers Corp. is a business entity.  Plaintiff is informed and believes

25 that Definers Corp. maintains offices in Oakland, California.  Mr. Rhoades is the Chief Executive

26 Officer of Definers Corp., and Mr. Pounder is its President and Secretary.

27

28

COMPLAINT FOR DAMAGES

8. Defendant Definers Public Affairs ("DPA") is a business entity with its principal place of business in Arlington, Virginia. DPA is a consulting firm that provides, among other things, campaign-style opposition research on opponents of its clients.

9. Mr. Pishevar is informed and believes that Mr. Rhoades and Mr. Pounder co-founded Defendant DPA in 2015, and Definers Corp. in 2017. (Definers Corp. and DPA will be referred to collectively as "Definers.")

10. Mr. Pishevar does not know the true names and capacities, whether individual, corporate, associate, or otherwise, of defendant DOES 1 – 10, inclusive. On information and belief, each of the DOES 1- 10 is a person or entity that has participated, contributed, conspired, aided and abetted, or ratified the conduct of Defendants, and has thereby materially contributed to their wrongful acts. Mr. Pishevar will amend his Complaint to identify the true names of these defendants when they are determined, until which time they are sued by their fictitious names.

11. On information and belief, each of the Defendants was acting as an agent and co-conspirator with each of the other Defendants in pursuit of the wrongful acts and objectives described in this Complaint.

## VENUE

12. Venue is proper in this county because Defendants do business in this county, and because a substantial part of the alleged events giving rise to Mr. Pishevar's claims occurred in this county. Mr. Pishevar has also suffered injury in substantial part in this county.

## FACTUAL ALLEGATIONS

***Mr. Pishevar's Success in Business and Public Service***

13. Mr. Pishevar is a successful entrepreneur, venture capitalist and angel investor. Mr. Pishevar co-founded the transportation startup, Hyperloop One, and serves as its executive chairman. In co-founding Hyperloop, Mr. Pishevar responded to Elon Musk's challenge to build a high speed transportation system that would be collision free, faster than a plane and consuming less energy. Mr. Pishevar also co-founded Sherpa Capital, a venture capital fund that has invested in companies including Airbnb, Uber, and Munchery. Sherpa Capital currently has some $650

-3-

1   million under management.  As an angel investor, Mr. Pishevar has seeded more than 100

2   companies.

3           14.    Mr. Pishevar served as a Board Observer at Uber from 2011-2015, and a strategic

4   advisor to Uber from 2013.  Mr. Pishevar led the Series B of Uber while he was at Menlo

5   Ventures, and later invested in Uber at Sherpa Capital.  He served as Managing Director at Menlo

6   Ventures from 2011, and helped lead investments like Uber, Machine Zone, Tumblr, and Warby

7   Parker.  Mr. Pishevar also launched Menlo Venture's seed program, called Menlo Talent Fund, a

8   $20 Million fund that invested in more than 35 early-stage companies.  Additionally, Mr. Pishevar

9   served on the board or worked closely with a number of companies, including Machine Zone and

10   Warby Parker.

11           15.    Mr. Pishevar was named for four consecutive years to Forbes Midas List of the top

12   100 venture capital investors (2014-2017).  Mr. Pishevar has generated 73x returns of

13   approximately $6 billion in venture capital investments since 2011.  Mr. Pishevar has also been a

14   seed investor in Warby Parker, Dollar Shave Club (acquired by Unilever in 2016) and Postmates,

15   and over 100 seed stage companies.

16           16.    Mr. Pishevar was honored by the United States Government in 2012 as an

17   "Outstanding American by Choice," an award which recognizes the achievements of naturalized

18   Americans.  This award has been bestowed on fewer than 150 naturalized Americans, including

19   Nobel Peace Prize winner and author, Elie Wiesel.  In 2015, President Obama appointed Mr.

20   Pishevar to the J. William Fulbright Scholarship Board.  Mr. Pishevar was awarded an Ellis Island

21   Medal of Honor in 2016.  Mr. Pishevar serves as one of 10 members of the United Nations

22   Foundation's Global Entrepreneurs Council, and he also served as Entrepreneurial Ambassador on

23   several US Department of State delegations to the Middle East and Russia.

24           17.    Mr. Pishevar was a keynote speaker at President Obama's Summit on

25   Entrepreneurship in Algeria.  He also was a member of the Technology, Media and

26   Telecommunications policy working group that helped create the Obama Technology and

27   Innovation Plan in 2008.  In 2013, Mr. Pishevar was one of the 15 leaders in technology who met

28

COMPLAINT FOR DAMAGES

1   with President Obama to address several technology related issues, including unauthorized

2   intelligence disclosures, healthcare.gov, and the government's information technology.

3        18.    Mr. Pishevar is an advocate of the Startup Visa Act, which would create a new type

4   of two-year visa available to immigrant entrepreneurs. He is one of the creators of

5   StartUpVisa.com, a website which provides information and builds grassroots support for the

6   legislation.  In 2011, Mr. Pishevar testified in favor of startup visas at a hearing held by a

7   subcommittee of the House Judiciary Committee.  Additionally, Mr. Pishevar is involved with the

8   philanthropies Invisible Children and charity:water, and has traveled to Africa to volunteer with

9   these organizations.

10  ***Defendants' Insidious Business Model***

11       19.    On information and belief, Defendants have channeled their founders' experiences

12  in running presidential campaigns into a business that seeks to take the bare-knuckle tactics of

13  political races to the business world, and specifically, Silicon Valley.  There is nothing illegal

14  about an aggressive research and communications campaign conducted by responsible corporate

15  consultants.  But, on information and belief, in their apparent zeal to storm Silicon Valley,

16  Defendants have created and executed a business plan to slander targets in the hope that false facts

17  find their way to reporters and ultimately to the public, including Mr. Pishevar's business

18  associates, clients and investors.

19       20.    On information and belief, Defendants Matthew Rhoades and Joseph Pounder co-

20  founded DPA in about 2015.  Mr. Rhoades and Mr. Pounder previously worked together in

21  various Republican campaigns.  Both Mr. Pounder and Mr. Rhoades worked in Mitt Romney's

22  presidential campaign.  Mr. Pounder also served as the director of rapid response for John

23  McCain's campaign, reporting to Jill Hazelbaker, the campaign's communications director.

24       21.    DPA describes itself as "the unique consulting firm that brings campaign tactics to

25  corporate America . . . ." [https://www.definersdc.com/single-post/2017/08/02/Definers-Public-

26  Affairs-Ramps-Up-With-Two-Senior-Additions]  Definers' website boasts that it "provides clients

27  with comprehensive research services, . . . and creates dossiers on opponents, competitors and

28

-5-

COMPLAINT FOR DAMAGES

1  agitators."  One of Definers' stated objectives in providing such opposition research is to "inform

2  and influence media narratives."  [https://www.definersdc.com/services]

3       22.  On about June 7, 2017, Definers announced on its website that it was expanding to

4  Silicon Valley by establishing offices in Oakland, explaining that:

5         In the face of outspoken activist groups, aggressive competitors and
       hostile regulators, Silicon Valley has uniquely pressing demands

6         that require aggressive research and communications campaigns.

7  [https://www.definersdc.com/single-post/2017/06/07/Next-Stop-Silicon-Valley]

8       23.  An article by Recode described Definers' mission as: "[t]o arm companies with

9  ammunition to attack their corporate rivals, sway their government overseers and shape the

10  public's opinion on controversial issues."

11  [https://www.recode.net/2017/6/7/15746928/republicans-political-opposition-tech-silicon-valley-

12  trump]  The article went on to say that, to Definers:

13         Silicon Valley is a natural target for their so-called "oppo" efforts.
       The tech industry is characteristically hyper-competitive, with

14         boardroom squabbles, takeover attempts, and legal wars over
       employees and patents and regulations. Definers hopes to supply

15         some of its future tech clients with the gossip, dirt and intel to win
       those fights.

16              *      *      *

17

18         Given the "spotlight that is on their industry," Miller told Recode in
       an interview, the Valley's biggest brands should invest more to
       ensure "you have positive content pushed out about your company

19         and negative content that's being pushed out about your competitor,
       or regulator, or activist groups or activist investors, that are

20         challenging you."

21         "There might be some companies that are more willing to engage in
       that," Miller said, but "increasingly, as [Silicon Valley] companies

22         mature, I think they may recognize the need to do that."

23  [https://www.recode.net/2017/6/7/15746928/republicans-political-opposition-tech-silicon-valley-

24  trump]

25  ***Defendants' Scheme To Take Down Mr. Pishevar***

26       24.  On information and belief, Defendants have employed a pernicious plan to

27  assassinate Mr. Pishevar's reputation and damage his career by providing news reporters with lies

28

-6-

COMPLAINT FOR DAMAGES

1  and false rumors, under the guise of "research" designed to entice the media to pursue the lies,

2  including questioning Mr. Pishevar's clients, associates and members of the business community.

3      25.    Mr. Pishevar is informed and believes that one or more of his business competitors

4  or opponents enlisted the services of Defendants to orchestrate and implement a smear campaign

5  against him and destroy his professional and personal reputation.

6      26.    Mr. Pishevar is informed and believes that Mr. Rhoades, Mr. Pounder and their

7  company, Definers, are central actors in the smear campaign against him.  On information and

8  belief, Mr. Rhoades communicated to a source that opponents of Mr. Pishevar had hired Mr.

9  Rhoades and Mr. Pounder's firm, Definers, to conduct a smear campaign against Mr. Pishevar and

10  to take him down.

11      27.    Mr. Pishevar is informed and believes that Mr. Rhoades also made numerous false

12  and disparaging statements about Mr. Pishevar to one or more third persons, including that:

13      a.    Mr. Pishevar is an agent of the Russian government and a friend of Russian

14  President, Vladimir Putin, and that Hyperloop One's Russian investors was due to Mr. Pishevar

15  being an agent of the Russian government.

16      b.    The call for California's secession from the United States was linked to Mr.

17  Pishevar's Russia connections.

18      c.    Mr. Pishevar had an incident with a prostitute in Europe.

19      d.    Mr. Pishevar had paid money to settle a claim for sexual assault in London.

20      e.    Mr. Pishevar had no money and/or that he was unable to raise additional

21  funds, and that he was in essence, a house of cards.

22      f.    Mr. Pishevar had raised money for direct investment in Uber but used it to

23  put into his own pockets and Sherpa Capital's pockets.

24      28.    Several associates of Mr. Pishevar informed him that they have in fact been

25  contacted by reporters, eager to break a story about Mr. Pishevar, and fishing for information on

26  alleged inappropriate conduct.  Mr. Pishevar was also informed by two associates that they were

27  contacted by reporters who told them that they heard that Mr. Pishevar "is the next to go down."

28  Mr. Pishevar is further informed and believes that some of his former employees are being

1   contacted and questioned about Mr. Pishevar in furtherance of Defendants' scheme to take him

2   down.  Mr. Pishevar is informed and believes that Defendants' efforts to smear him include

3   employing the services of an investigator, using a fake name and burner phones, to dig up dirt on

4   him.

5         29.     A reporter recently informed Mr. Pishevar that numerous reporters were aware of

6   rumors that were circulating about Mr. Pishevar, including salacious rumors about alleged sexual

7   misconduct, and a false claim that Mr. Pishevar entered into a settlement agreement concerning

8   the purported sexual misconduct.  A colleague of Mr. Pishevar informed him that she was

9   contacted by a reporter in late September of 2017.  The reporter informed Mr. Pishevar's

10   colleague that Mr. Pishevar was viewed among reporters as the next venture capitalist to go down,

11   and that the reporter was working on that.  Mr. Pishevar is informed and believes that Defendants

12   fed these and other untrue and disparaging rumors to reporters in furtherance of their smear

13   campaign against him.

14         30.     Mr. Pishevar is further informed and believes that as part of that smear campaign,

15   within the past year, Defendants have made several false and defamatory statements about him,

16   under circumstances in which it was reasonably foreseeable that those defamatory statements

17   would be republished to others, as described below.

18         a.     Mr. Pishevar is informed and believes that Defendants falsely stated to a

19   third party that Mr. Pishevar is an agent of the Russian government and a friend of Russian

20   President, Vladimir Putin.

21         b.     Mr. Pishevar is informed and believes that Defendants falsely stated to a

22   third party that Mr. Pishevar was involved with political corruption in Azerbaijan.

23         c.     Mr. Pishevar is informed and believes that Defendants falsely stated to one

24   or more third parties that Mr. Pishevar had no money and/or that he was unable to raise additional

25   funds, and that he was in essence, a house of cards.

26         d.     Mr. Pishevar is informed and believes that Defendants falsely stated to a

27   third party that Mr. Pishevar had an incident with a prostitute in Europe.

28

COMPLAINT FOR DAMAGES

e.      Mr. Pishevar is informed and believes that Defendants falsely stated to a third party that Mr. Pishevar had paid money to settle a claim for sexual assault in London.

f.      Mr. Pishevar is informed and believes that a reporter contacted a third party and inquired about an alleged incident between Mr. Pishevar and a prostitute in Europe. Mr. Pishevar is informed and believes that Defendants communicated this false rumor to one or more reporters knowing or reasonably foreseeing that the reporter(s) would republish that rumor to others, thereby creating the false impression that Mr. Pishevar had an incident with a prostitute in Europe.

g.      Mr. Pishevar is informed and believes that Defendants attempted to erode trust in Mr. Pishevar by falsely stating to one or more third parties that Mr. Pishevar had raised money for direct investment in Uber but used it to put into his own pockets and Sherpa Capital's pockets.

h.      Mr. Pishevar is informed and believes that Defendants falsely stated to a third party in sum and substance: "Hey, we hear Shervin is the next to go down." Mr. Pishevar is informed and believes that Defendants made the statement intending to and in fact creating the false impression that Plaintiff had engaged in illegal or improper activity that would, when revealed, destroy Mr. Pishevar's reputation in the business community, disrupt his business relationships, and cause injury to Mr. Pishevar.

i.      Mr. Pishevar is further informed and believes that Defendants planted a rumor that Mr. Pishevar had engaged in misconduct or other inappropriate behavior, as part of Defendants' scheme to smear Mr. Pishevar's reputation and disrupt his business relationships.

j.      Mr. Pishevar is informed and believes that Defendants, through intermediaries, made statements to one or more employees of Mr. Pishevar, claiming that the employee's own reputation would be tarnished and the employee's ability to find work would be diminished by continuing employment with Mr. Pishevar. Mr. Pishevar is informed and believes that Defendants made false and defamatory statements to disparage Mr. Pishevar's reputation, and Defendants did so knowing or intending them to be republished to others.

-9-

1    31.    The statements identified in paragraphs 27 (a)-(f) and 30 (a)-(j) (the "Defamatory

2    Statements") are false and, upon information and belief, wholly fabricated by Defendants.  On

3    information and belief, Defendants had no basis whatsoever for making the Defamatory

4    Statements and knew or should have known that the statements were false.  On information and

5    belief, Defendants conducted no diligence to verify the Defamatory Statements.  On information

6    and belief, Defendants made the Defamatory Statements with the intent to cause Mr. Pishevar

7    grave and substantial injury to his reputation and career.

8    32.    On information and belief, by disseminating (either directly or through

9    intermediaries) the Defamatory Statements to reporters and others about Mr. Pishevar, Defendants

10   have caused a feeding frenzy among reporters seeking to be the first to a sensational or scandalous

11   story about Mr. Pishevar.  On information and belief, this has resulted in upwards of 20 or 25

12   reporters contacting associates, investors, colleagues, clients and/or employees of Mr. Pishevar

13   and questioning them about the defamatory statements or otherwise attempting to dig up dirt about

14   his personal or professional life.

15   33.    Mr. Pishevar is informed and believes that Defendants knew the stories they were

16   spreading about him were not true, or they failed to take reasonable steps to ascertain their

17   truthfulness.  Rather, on information and belief, they sought to benefit their clients, Mr. Pishevar's

18   business opponents, by destroying his reputation and disrupting his ability pursue his business

19   ventures.

20   34.    Mr. Pishevar is informed and believes that one or more investors failed to invest in

21   Mr. Pishevar's business ventures and passed on opportunities that they otherwise would have

22   participated in, due to the smear campaign led by Mr. Rhoades, Mr. Pounder and Definers, all to

23   Mr. Pishevar's detriment.

24   **FIRST CAUSE OF ACTION**

25   **(Defamation – Against All Defendants)**

26   35.    Mr. Pishevar realleges and incorporates by reference each of the foregoing

27   allegations as if fully set forth herein.

28

-10-

36.     As set forth above, Defendants made to one or more third parties false and defamatory statements concerning Mr. Pishevar.  The defamatory statements include those described in paragraphs 27 (a)-(f) and 30 (a)-(j), above.

37.     The Defamatory Statements are defamatory *per se*.  The Defamatory Statements falsely impute that Mr. Pishevar engaged in criminal conduct, as well as other misconduct or character defects, such as alleged incident with a prostitute, association with corruption, and acting as an agent of Russia with ties to Vladimir Putin, which statements cause, by their natural consequence, actual damage.  The Defamatory Statements also directly injured Mr. Pishevar in respect of his office, profession, trade or business, either by imputing to him general disqualification in those respects which his office and occupation peculiarly requires, and/or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profits.  The Defamatory Statements subjected Mr. Pishevar to hatred, distrust, contempt, disgrace, scorn, and ridicule among considerable and respectable segments of the community.

38.     On information and belief, Defendants intentionally made the Defamatory Statements with actual malice, and with knowledge of, and/or reckless disregard for the falsity of those statements.

39.     The Defamatory Statements have proximately caused and continue to cause Mr. Pishevar to suffer substantial injuries and damages including, but not limited to, tarnishment of reputation, lost business opportunities, humiliation and embarrassment, shame, and damage to business, trade, profession, and occupation.

40.     As a further proximate cause of the Defamatory Statements, Mr. Pishevar has suffered special damages, including lost business opportunities and damage to his business, trade, profession and occupation, in an amount to be proven at trial.

41.     Upon information and belief, Defendants made the Defamatory Statements of and concerning Mr. Pishevar with the specific intent to cause harm to Mr. Pishevar, and did so willfully and with malice, fraud, wantonness, oppression, or that entire want of care which raises

1    the presumption of conscious indifference to consequences, justifying an award of punitive

2    damages.

3    **SECOND CLAIM FOR RELIEF**

4    **(Intentional Interference With Prospective Economic Relations – Against All Defendants)**

5    42.    Mr. Pishevar realleges and incorporates by reference each of the foregoing

6    allegations as if fully set forth herein.

7    43.    Mr. Pishevar has prospective economic relations with certain prospective clients,

8    including investors in one or more of his businesses.  Such relationships have or had substantial

9    likelihood of economic benefit for Mr. Pishevar.

10    44.    On information and belief, Defendants have knowledge of Mr. Pishevar's

11    prospective economic relations with these prospective clients.

12    45.    On information and belief, Defendants intentionally interfered with these

13    prospective economic relationships, including by making false, defamatory and disparaging

14    statements about Mr. Pishevar.  On information and belief, Defendants orchestrated and

15    implemented a scheme to "bring down" Mr. Pishevar by planting false rumors with reporters and

16    others that called into question Mr. Pishevar's integrity and business acumen.  These rumors

17    included the Defamatory Statements, including the false assertion that Mr. Pishevar lined his own

18    pockets and Sherpa Capital's with money that he had raised for direct investment in Uber, and the

19    false claim that he was unable to raise funds and that he was out of funds himself.  Mr. Pishevar is

20    informed and believes that, by planting these false and disparaging stories with reporters and

21    others, Defendants knew or reasonably believed that these individuals would contact business

22    associates, prospective clients and others in the business community concerning the false claims,

23    thereby damaging Mr. Pishevar's reputation, and disrupting his relationship with existing and

24    potential clients.  On information and belief, these acts by Defendants were designed to disrupt

25    Mr. Pishevar's prospective economic relationships.

26    46.    On information and belief, as a direct and proximate result of the intentional

27    interference described above, Mr. Pishevar's prospective economic relations with certain

28

-12-

1   prospective clients has been disrupted, interrupted completely, or made more difficult or costly to

2   achieve.

3        47.    As a direct and proximate result of the intentional interference with prospective

4   economic relations by Defendants, Mr. Pishevar has suffered loss, damage and injury in an

5   amount to be proven at trial.

6        48.    On information and belief, Defendants' intentional interference with prospective

7   economic relations as described above was willful, wanton, malicious and oppressive, and/or

8   conducted without regard to Mr. Pishevar's rights.  Accordingly, Defendants are liable for

9   punitive damages.

10

11   **PRAYER FOR RELIEF**

12       WHEREFORE, Mr. Pishevar respectfully prays for judgment and relief as follows:

13       1.    An award for presumed, actual, compensatory, special, and consequential damages

14   according to proof;

15       2.    An award for punitive damages to the maximum extent permitted by law;

16       3.    A permanent injunction enjoining Defendants from continuing to publish the

17   Defamatory Statements;

18       4.    An award of all costs and fees in this action, including attorneys' fees and pre- and

19   post-judgment interest; and

20       5.    All other such relief as this Court deems just and proper.

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

-13-

## **DEMAND FOR JURY TRIAL**

Mr. Pishevar hereby demands a jury trial of all issues which are triable to a jury.

DATED:  November 6, 2017

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By _____

Randa AF Osman
Attorneys for Plaintiff Shervin Pishevar

-14-

COMPLAINT FOR DAMAGES

# EXHIBIT 2

1 QUINN EMANUEL URQUHART & SULLIVAN, LLP
Eric J. Emanuel (Bar No. 102187)

2 ericemanuel@quinnemanuel.com
Randa A.F. Osman (Bar No. 150798)

3 randaosman@quinnemanuel.com
Noah Helpern (Bar No. 254023)

4 noahhelpern@quinnemanuel.com
865 South Figueroa Street, 10th Floor

5 Los Angeles, California 90017-2543
Telephone:     (213) 443-3000

6 Facsimile:     (213) 443-3100

7 Attorneys for Plaintiff Shervin Pishevar

ELECTRONICALLY
**F I L E D**
*Superior  Court of California,*
*County of San Francisco*
**12/29/2017**
**Clerk of the Court**
BY:DAVID YUEN
Deputy Clerk

8 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 COUNTY OF SAN FRANCISCO

10

| | |
|---|---|
| 11  Shervin Pishevar, an individual, | CASE NO. CGC-17-562305 |
| 12           Plaintiff, | Assigned for all purposes to Hon. Teri L. Jackson |
| 13      vs. | Dept. 206 |
| 14  Matthew Rhoades, an individual, Joseph Pounder, an individual, Definers Corp., a business entity, Definers Public Affairs, a business entity, and DOES 1 - 10, | **DECLARATION OF SHERVIN PISHEVAR IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' SPECIAL MOTION TO STRIKE** |
| 17           Defendants. | Hearing Date:  January 12, 2018 |
| 18 | Time:  9:30 a.m. |
| 19 | Place:  Department 302 Reservation: 12060105-02 |
| 20 | Complaint Filed:  November 6, 2017 |
| 21 | Trial Date:  None Set |

22

23

24

25

26

27

28

# DECLARATION OF SHERVIN PISHEVAR

I, Shervin Pishevar, hereby declare and state as follows:

1.       I submit this Declaration in support of Plaintiff's Opposition to Defendants' Special Motion to Strike. The statements in this Declaration are based on my personal knowledge and, if called as a witness, I would testify to the statements herein.

2.       I am an entrepreneur, venture capitalist, and investor in early-stage start-up companies, among others. I co-founded Hyperloop One, which is working to make new, high-speed transportation technology available to the market. I also co-founded Sherpa Capital, which is a venture capital fund that specializes in early stage start-up companies.

3.       As detailed in the Complaint, in early November 2017 I learned that Matthew Rhoades and Definers were circulating the following false statements about me, which are included at paragraph 27 of my Complaint in this action (herein, the "Defamatory Statements"):

- An accusation that I am an agent of the Russian government and friend of Russian President, Vladimir Putin, and that Hyperloop One's Russian investors was due to me being an agent of the Russian government;
- An accusation that my call for California's secession from the United States was linked to my "Russia connections;"
- An accusation that I had an incident with a prostitute in Europe;
- An accusation that I paid money to settle a claim for sexual assault in London;
- An accusation that I had no money and was unable to raise additional funds;

1
2
3
- An accusation that I raised money for direct investment in Uber but used it to put into my own pockets and that of my investment firm, Sherpa Capital.

4       **4.**     Each of the Defamatory Statements is false, disparaging and
5  unfounded.

6       Executed on December 29, 2017 at _____ MIAMI _____, Florida.

7       I declare under the penalty of perjury under the laws of the State of California
8  that the foregoing is true and correct.

9
10
11                                    Shervin Pishevar
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28