**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE APPLICATION OF SHERVIN
PISHEVAR FOR AN ORDER TO TAKE
DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS PURSUANT TO 28 U.S.C.
§ 1782

Case No. 1:19-MC-00503 (JGK) (SDA)

**PETITIONER SHERVIN PISHEVAR'S MOTION FOR RECONSIDERATION OF
THE COURT'S FEBRUARY 18, 2020 OPINION AND ORDER**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ............................................................... 1

II.   BACKGROUND .................................................................................. 4

  A.   The Forged Police Report ............................................................. 4

  B.   The Definers Lawsuit .................................................................... 4

  C.   Respondent Publishes his Article Based on the Forged Police Report ............................ 7

  D.   Definers Files Sworn Affidavits That It Has No Information Regarding the "Smear Campaign" or the Forged Police Report ......................... 8

  E.   This 1782 Application ................................................................... 10

  F.   The Dual Purpose of the Requested Discovery ............................. 11

  G.   February 18, 2020 Order ............................................................. 11

III.  STANDARD OF REVIEW ................................................................. 13

IV.   THE COURT SHOULD RECONSIDER ITS ORDER IN LIGHT OF NEWLY PRESENTED EVIDENCE FROM PETITIONER ......................... 13

V.    THIS COURT COMMITTED CLEAR ERROR IN CONCLUDING THAT THE CONFIDENTIAL SOURCE'S IDENTITY CAN BE OBTAINED BY ALTERNATIVE AVAILABLE SOURCES ................................... 15

  A.   The Court Incorrectly Took *Sua Sponte* Judicial Notice Without Giving the Parties a Full and Fair Opportunity to be Heard ....................... 15

  B.   The Court Applied an Unduly Restrictive Legal Standard for Determining Whether Non-Privileged Sources Are Available .......................... 18

  C.   Petitioner Does Not Have Alternative Non-Privileged Sources That Could Identify The Confidential Source .......................... 21

VI.   RECONSIDERATION IS NECESSARY TO PREVENT MANIFEST INJUSTICE ..... 24

      CONCLUSION ................................................................................. 25

# **TABLE OF AUTHORITIES**

**Page**

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.,*
  732 F. Supp. 2d 389 (S.D.N.Y. 2010) ...................................................................... 15

*B & R Supermarket, Inc. v. MasterCard Int'l Inc.,*
  2018 WL 4445150 (E.D.N.Y. Sept. 18, 2018) ........................................................ 16

*Basse Freres Alimentation Orientale (2013) Inc. v. Frunut Glob. Commodities L.L.C.,*
  2014 WL 6467001 (S.D.N.Y. Nov. 18, 2014) ......................................................... 17

*Blum v. Schlegel,*
  150 F.R.D. 42 (W.D.N.Y. 1993) .............................................................................. 18

*Bulova Watch Co. v. K. Hattori & Co.,*
  508 F. Supp. 1322 (E.D.N.Y. 1981) ........................................................................ 15

*Garland v. Torre,*
  259 F.2d 545 (2d Cir. 1958) .................................................................................... 18

*Glob. Network Commc'ns, Inc. v. City of New York,*
  458 F.3d 150 (2d Cir. 2006) .................................................................................... 15

*Harris v. Wu-Tang Prods., Inc.,*
  2006 WL 1677127 (S.D.N.Y. June 16, 2006) ......................................................... 16

*Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.,*
  146 F.3d 66 (2d Cir. 1998) ...................................................................................... 15

*Keefe v. Shalala,*
  71 F.3d 1060 (2d Cir. 1995) .................................................................................... 16

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,*
  729 F.3d 99 (2d Cir. 2013) ...................................................................................... 13

*LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC.,*
  287 F.3d 279 (3d Cir. 2002) .................................................................................... 16

*Lopez v. City of New York,*
  2012 WL 2250713 (E.D.N.Y. June 15, 2012) ......................................................... 17

*Naiman v. N.Y. Univ. Hosps. Ctr.,*
  2005 WL 926904 (S.D.N.Y. Apr. 21, 2005) ........................................................... 12

*In re Nat. Gas Commodity Litig.,*
  235 F.R.D. 199 (S.D.N.Y. 2005) ......................................................................... 3, 18

*Norex Petroleum Ltd. v. Access Indus., Inc.,*
  2003 WL 21872389 (S.D.N.Y. Aug. 7, 2003) .......................................................... 1

*Opinion, Rothman v. Gregor,*
  220 F.3d 81 (2d. Cir. 2000) ..................................................................................... 16

*In re OSG Sec. Litig.*,
    12 F. Supp. 3d 619 (S.D.N.Y. 2014)..................................................................... 16

*In re Petroleum Prod. Antitrust Litig.*,
    680 F.2d 5 (2d Cir. 1982) ........................................................................... 3, 19

*In re Petroleum Prod. Antitrust Litig.*,
    680 F.2d 5, 9 (2d Cir. 1982)............................................................................. 18

*Process Res. Corp. v. Delta Air Lines, Inc*.,
    2000 WL 145114 (S.D.N.Y. Feb. 3, 2000)...................................................... 16

*Schiller v. City of New York*,
    245 F.R.D. 112 (S.D.N.Y. 2007) ..................................................................... 18

*S.E.C. v. Seahawk Deep Ocean Tech., Inc*.,
    166 F.R.D. 268 (D. Conn. 1996)............................................................... 19, 22

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995).............................................................................. 13

*Trevino v. Merscorp, Inc.*,
    583 F. Supp. 2d 521 (D. Del. 2008) ............................................................... 16

*United States v. Cutler*,
    6 F.3d 67 (2d Cir. 1993)................................................................................. 19

*United States v. Garcia*,
    672 F.2d 1349 (11th Cir. 1982) ...................................................................... 15

*United States v. Markiewicz*,
    732 F. Supp. 316 (N.D.N.Y. 1990) ................................................................ 19

*United States v. Samia*,
    2017 WL 980333 (S.D.N.Y. Mar. 13, 2017) .................................................. 24

*Zerilli v. Smith*,
    656 F.2d 705 (D.C. Cir. 1981) ....................................................................... 18

## Statutory Authorities

28 U.S.C. § 1782................................................................................................ 1, 19

## Rules

Fed. R. Civ. P. 11 .................................................................................................. 15

Fed. R. Civ. P. 59 .............................................................................................. 1, 12

Fed. R. Civ. P. 60 .................................................................................................... 1

Fed. R. Civ. P. 72 .................................................................................................... 1

Fed. R. Evid. 201 ................................................................................................... 15

Local Civil Rule 6.3 ............................................................................................... 14

Petitioner, through his counsel, respectfully submits this Motion for Reconsideration, pursuant to Federal Rules of Civil Procedure 59(e) and 60, and Local Civil Rule 6.3, of the Court's February 18, 2020 Opinion and Order (the "Order"), ECF 52, denying, on a limited but curable ground, Petitioner's application for discovery under 28 U.S.C. § 1782 ("Application"), ECF 1.[1]

## I.   PRELIMINARY STATEMENT

Petitioner seeks to compel Respondent to identify his Confidential Source, who supplied him with a USB drive that contained a document purporting to be a police report created by the City of London Police but has since been definitively proven to be a forgery.  Petitioner seeks this information to initiate and maintain criminal and civil proceedings in England against the distributors (which includes the Confidential Source) and creators of that forged document.

In considering Petitioner's Application, the Court correctly found that Petitioner had (1) satisfied the statutory factors under Section 1782, (2) the first two *Intel* factors weigh in Petitioner's favor, (3) Petitioner had not circumvented foreign proof-gathering restrictions, and (4) the Application was not unduly burdensome.  The Court then considered the Respondent's assertion of reporter's privilege and concluded that Petitioner had satisfied two of the three elements—the identity of the Confidential Source was found to be highly material, relevant, and critical to the maintenance of Petitioner's contemplated criminal and civil proceedings against the Confidential Source and others abroad.  The Court's **only** finding against Petitioner was that he failed to make a clear and specific showing that the identity of the Confidential Source was not obtainable elsewhere.  This was based on the Court's own review of filings in an unrelated lawsuit against

---

[1] Petitioner reserves all rights to file an objection under Federal Rule of Civil Procedure 72 to the February 18, 2020 order, which is tolled during the pendency of this motion.  *See, e.g., Norex Petroleum Ltd. v. Access Indus., Inc.*, 2003 WL 21872389, at *1 (S.D.N.Y. Aug. 7, 2003) ("courts in this District have found that, during the pendency of a motion for reconsideration before a magistrate judge, the time for filing an objection to the District Court is tolled.").  If this Court denies this motion, Petitioner respectfully requests 14 days from the Court's decision on this Motion to file objections to the Order, or any modified ruling, with the District Court.

Definers Corp. and two of its senior executives filed, and subsequently voluntarily dismissed, by Petitioner in California ("Definers Lawsuit").  Specifically, the Court found that Petitioner had not satisfied the third element of the test due to the following "circumstances": (1) unclear whether any of Petitioner's sources in the Definers Lawsuit could identify Respondent's Confidential Source, and unclear who those sources were; (2) unclear whether the source who told Petitioner about an alleged payment to settle a sexual assault claim in London (which formed the basis of an allegation in the Definers Lawsuit) would also be able to identify Confidential Source; and (3) unclear why Petitioner dismissed the Definers lawsuit. Order at 23.

Petitioner seeks reconsideration because the Court overlooked information related to the Definers Lawsuit that would reasonably be expected to alter the Court's conclusion.  Indeed, the Court placed undue weight on a declaration filed by Petitioner in the Definers Lawsuit—a declaration that was not submitted nor referenced by any party here—in which he merely summarized, but did not explain, the basis for his "information and belief" allegations in the Definers Complaint.  Petitioner's Declaration submitted with this Motion clarifies the bases of those allegations.

Having denied the Application without giving Petitioner an opportunity to be heard on these issues, the Court made three clear errors that should be reconsidered and corrected here.

*First*, as the result of the Court improperly taking judicial notice of documents outside of the record without giving the parties a full and fair opportunity to be heard, it misconstrued those documents.  Petitioner submits that this deficiency can easily be cured by considering Petitioner's Declaration submitted here, which explains the bases for Petitioner's allegations in the Definers Lawsuit, none of which are alternatives for obtaining the discovery sought in this proceeding.

*Second*, the Court misapplied the legal standard in determining whether a source is available elsewhere for purposes of overcoming the reporter's privilege.  The exhaustion requirement does not extend to "every theoretical source," let alone unrelated and hypothetical sources.  Petitioner is not required to pursue sources of unrelated allegations or, as the Court noted in the Order, other press sources that would similarly invoke the reporter's privilege.

*Finally*, even assuming the Court properly took judicial notice and correctly applied the legal standard for exhausting alternative available sources for purposes of overcoming the reporter's privilege, the Court erred in concluding that the sources of the "smear campaign" or false sexual misconduct allegations in the unrelated Definers Lawsuit would reveal information to identify the forgers or distributors of the Forged Police Report, including Respondent's Confidential Source.  As is clear from the record in that case and in this case, those sources do not constitute alternative sources here because they did not (a) share information that was "similar," Order at 23, to the information provided to Respondent by his Confidential Source, and (b) to the extent, arguendo, that any such information was "similar," that information was provided to Petitioner by a reporter who is unwilling to share her own confidential source.

Consequently, Respondent—who knows the identity of his Confidential Source, who gave him the Forged Police Report and supplied him with other false statements about the alleged rape incident—remains the only identifiable person who can provide that information to Petitioner. Because the Order incorrectly found that Petitioner had not exhausted available sources, and given that was the sole basis for finding that reporter's privilege could not be pierced, and denied the Application on that ground alone, Petitioner respectfully requests that those findings be reconsidered and altered, and that his Application instead be granted.[2]

---

[2]  While Petitioner could re-file the Application addressing the Court's exhaustion concerns, Petitioner seeks to have these issues addressed now in the interests of efficiency and judicial economy.  *See In re Nat. Gas Commodity Litig.*

## II.    BACKGROUND[3]

### A.    The Forged Police Report

Well after the City of London Police ("COLP") announced the investigation into Petitioner

had ended, in September 2017, Baram met with the Confidential Source at a café in Washington

DC at which time he received a USB drive containing a copy of a police report supposedly issued

by COLP at or around the time of the arrest ("Forged Police Report"). Baram Aff., ECF 15 at ¶ 6.

Between October 13 and October 20, 2017, Baram emailed COLP, which confirmed that it did not

use "documents such as [the Forged Police Report] and [did] not believe it to be authentic." Watson

Decl. ¶ 17 & Ex. 3, ECF 7-3.  Baram also received confirmation from the COLP on October 23,

2017 that there is no officer in the COLP named "DC Brook," and that the reference to that name

in the Forged Police Report "leads [the COLP] to believe [the report] is false." Watson Decl. ¶ 18

& Ex. 4. Despite these statements, Baram claimed that "he did not receive a definitive statement

that the police report was a fabrication until November 13, 2017." Baram Aff. ¶ 9.

### B.    The Definers Lawsuit[4]

In early November 2017, Petitioner received information from a source ("Pishevar

Source") that Definers Corp. and one of their executives were spreading the following false

allegations (the "Political and Financial Allegations"):

- That Mr. Pishevar was an agent of the Russian government and friend of Russian President, Vladimir Putin,
- That Hyperloop One's Russian investors were due to Mr. Pishevar being an agent of the Russian government;

---

235 F.R.D. 199, 204 (S.D.N.Y. 2005) (party seeking disclosure can re-file discovery request once exhaustion showing is satisfied); *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 9, n.13 (2d Cir. 1982) (noting that the plaintiffs could "of course, develop the necessary factual record and then reapply … for a new disclosure order.").

[3]  Petitioner refers the Court to prior briefing and cites only the most pertinent facts here. *See* ECF 4; ECF 14.

[4]  None of the substantive allegations about the Definers Lawsuit was submitted in prior briefing by the parties on the Application. Respondent raised Definers as a potential alternative source at oral argument for the first time and the Magistrate Judge *sua sponte* reviewed the Definers Lawsuit docket. Order at 7 n.7.

- That Mr. Pishevar's call for California's secession from the United States was linked to Mr. Pishevar's "Russian connections";

- That Mr. Pishevar had no money and was unable to raise additional funds;

- That Mr. Pishevar raised money for direct investment in Uber but used it for himself and his investment firm, Sherpa Capital.

Pishevar Decl. ¶ 14.

The Pishevar Source told Mr. Pishevar that Definers had been hired by certain persons to "take [him] down". *Id.* The Pishevar Source did not, however, have or provide any information related to any allegation about any alleged sexual assault, an alleged rape, or an arrest, let alone any allegation involving a Forged Police Report, or that Mr. Pishevar had allegedly paid money to settle a claim for sexual assault in London. Pishevar Decl. ¶ 15.

Indeed, consistent with the allegations in the Definers Complaint, in early November 2017, Petitioner received a phone call from a reporter in the technology industry and start-up space ("Tech Reporter"),[5] who told him that she had received information that Petitioner allegedly (1) had made a payment to settle an allegation of sexual assault in London, and (2) had an "incident with a prostitute in Europe" ("Sexual Misconduct Allegations"), and asked for a comment. Pishevar Decl. ¶ 16 & Ex. 1 ("Definers Compl.") at ¶29. She made no mention of an alleged rape or arrest, nor did she mention a police report of any kind, forged or otherwise. Pishevar Decl. ¶ 16. When Petitioner asked her where she had heard that allegation, she refused to tell him on the basis that she had received the information from a confidential source. Pishevar Decl. ¶ 17.[6] If subpoenaed, Petitioner believes that the Tech Reporter would invoke reporters' privilege, just as Mr. Baram has. Pishevar Decl. ¶ 17; *see* Order at 22. Given the information he had received from the Pishevar Source, Mr. Pishevar reasonably inferred, at the time of filing the Definers Lawsuit,

---

[5] Petitioner is willing to share the Tech Source and the Pishevar Source's identities *in camera*, but does not name them to minimize any burden on third-parties that do not have the information he seeks. Pishevar Decl. ¶¶ 14, 16.

[6] Petitioner denied, and continues to deny, the allegations against him. Pishevar Decl. ¶ 11.

that Definers was behind not only the Political and Financial Allegations, but also behind the spread of the Sexual Misconduct Allegations.  Pishevar Decl. ¶ 18.

Based on the Pishevar Source and the Tech Reporter's information, Mr. Pishevar filed the Definers Lawsuit in California against Definers Corp., Definers Public Affairs, and two senior Definers executives, Matthew Rhoades, and Joseph Pounder (collectively, "Definers Defendants"), for defamation per se, and intentional interference with prospective economic advantage.[7]  The Complaint alleged, upon information and belief, that "Mr. Pishevar is informed and believes that in recent months, Defendants have been retained by competitors or other business adversaries of Mr. Pishevar to orchestrate and implement a malicious smear campaign." Definers Compl. ¶ 2.[8]  Mr. Pishevar cited the information he received from the Tech Reporter when he alleged that, "***A reporter recently informed Mr. Pishevar*** that numerous reporters were aware of rumors that were circulating about Mr. Pishevar, ***including salacious rumors about alleged sexual misconduct, and a false claim that Mr. Pishevar entered into a settlement agreement concerning the purported sexual misconduct***." *Id.* at ¶ 29 (emphasis added).

Mr. Pishevar also alleged, upon information and belief, that Defendants had circulated the Sexual Misconduct Allegations.  Definers Compl. ¶ 27.  That allegation was based on reasonable inferences Mr. Pishevar drew *at the time of filing* the Definers Complaint that Definers Defendants were behind not only the Political and Financial Allegations and efforts to "take [him] down"

---

[7]  *See* Pishevar Decl., Ex. 1. Respondent Baram published about Petitioner's Definers Complaint two days before he published the Article at issue here, Marcus Baram, *Tech investor Shervin Pishevar sues GOP oppo research firm, claiming that it conduct a "smear campaign" against him*, Fast Company, Nov. 6, 2017, https://www.fastcompany.com/40492630/tech-investor-shervin-pishevar-sues-gop-oppo-research-firm-claiming-that-it-conducted-a-smear-campaign-against-him, yet still failed to argue that Definers was "an alternative source" in his briefs. ECF 14 at 13-16 (arguing only that *Forbes*, the *New York Post*, and the COLP were "alternative sources"). Instead he raised *only at oral argument* that *Definers* could be an alternative source. H'rg Tr. 50:3-25.  The sworn affidavits filed by the Definers Executives in that action categorically foreclose that argument.
[8]  Mr. Pishevar also named DOES 1-10 as unknown potential conspirators that may have been involved in spreading the Political and Financial Allegations and Sexual Misconduct Allegations. Complaint ¶ 2.

(information provided by the Pishevar Source), but also behind the spread of the Sexual Misconduct Allegations (information provided by the Tech Reporter).   Pishevar Decl. ¶ 18; Definers Compl. ¶ 27.  The Definers Complaint does not contain any allegations about the Forged Police Report, an alleged rape, or any other allegations related thereto, and was filed on November 6, 2017, before Respondent published about the Forged Police Report. Pishevar Decl. ¶¶ 21-22.

### C.  Respondent Publishes his Article Based on the Forged Police Report

On November 8, 2017, two days after filing the Definers Lawsuit, after being contacted by various media organizations seeking Petitioner's comment on the Forged Police Report, the Petitioner had no choice but to release a statement confirming that in May 2017 he was detained briefly in London in connection with an alleged sexual assault, an allegation he categorically denied, and that no further action would be taken against him.  Watson Decl., ECF 7, at ¶ 20; Baram Aff. ¶ 11 & Ex. 3.  That same day, Respondent published the Article about Mr. Pishevar, which referred to a "police report obtained by Fast Company" and referred to many of the false and salacious details contained in the Forged Police Report, including false information about the circumstances surrounding the arrest.[9]  The next day, on November 9, 2017, the *New York Post* and *Forbes* published articles about Petitioner that also included details from a forged police report.  Baram Aff., Exs. 5 & 6.[10]

After Respondent published the Article referencing a "police report" on November 8, 2017, Petitioner's English counsel contacted COLP to enquire whether any private information relating to the Petitioner had been disclosed to the media following the arrest, and on November

---

[9]  *See* ECF 51, Ex. 3 (filed under seal).  The Article was later updated on November 13, 2017 to state that "we learned that a police report described in this story has been proven false by the City of London police" but did not remove any of the false details from the Article. Baram Aff., Ex. 4.

[10]  *Forbes* stated in its November 9, 2017 article that it "had no contact with Definers before Pishevar filed the defamation case, [and] began inquiring about the incident after learning that it might involve a Silicon Valley personality." Baram Aff., Ex. 5.

10, 2017, COLP confirmed that no such disclosure had been made and informed the Petitioner's English counsel that the alleged "report" mentioned by the Article had been provided to it and was false; counsel promptly requested a copy of the report referenced in Respondent's Article. Watson Decl. ¶ 23. COLP declined to provide a copy of the forged report at that time due to ongoing enquiries into the matter. *Id.*

### D. Definers Files Sworn Affidavits That It Has No Information Regarding the "Smear Campaign" or the Forged Police Report

On December 6, 2017, the Definers Defendants filed a motion to strike the Definers Complaint on the basis of California's Strategic Lawsuit Against Public Participation statute ("SLAPP") and six senior executives at Definers, including its Chief Executive Officer, filed affidavits in support of that motion. ECF 50-2. Each of those declarations disclaimed any knowledge about or involvement in the allegations in the Complaint, including the Political and Financial Allegations and the Sexual Misconduct Allegations. *Id.* And even though the Definers Complaint related only to the Political and Financial Allegations and Sexual Misconduct Allegations, and, importantly, contained no allegation related to the Forged Police Report or a rape allegation,[11] well aware of the press surrounding Mr. Pishevar and the police report that had since been deemed a fake (as confirmed by Respondent and others who referenced it in their articles), Definers submitted sworn affidavits that it did "not have and have never seen a police report or a purported police report involving Mr. Pishevar." ECF 50-2.

On December 29, 2017, Mr. Pishevar, through his counsel, filed an opposition to the Definers Defendants' motion to strike in which he defended his allegations on the basis that the SLAPP statute did not apply to commercial speech or non-public figures. Mr. Pishevar also filed

---

[11]   Besides the fact that the Definers Lawsuit had nothing to do with the Forged Police Report, it was only on November 10, 2017—two days after filing the Definers Complaint—that Petitioner (and his counsel) found out that the "police report" referenced in the Article was a fake when COLP officially discredited it. Pishevar Decl. ¶23.

an affidavit in which he *summarized* what he had learned *in early November 2017* (and before he filed the Definers Complaint) about the Political and Financial Allegations and the Sexual Misconduct Allegations.  He stated, "*As detailed in the Complaint, in early November 2017* I learned that Matthew Rhoades and Definers were circulating the following false statements about me, which are included in paragraph 27 of my Complaint in this action." Pishevar Decl., Ex. 2 (emphasis added).  Petitioner then listed the Political and Financial Allegations communicated to him by the Pishevar Source.  *Id.*  Petitioner also included the false allegation from his Complaint that he had been falsely accused of paying "money to settle a claim for sexual assault in London," *id.*, an allegation which was communicated to Mr. Pishevar by the Tech Reporter who did not reveal the provenance or source of that information. Definers Compl. ¶29. Mr. Pishevar did not, and still does not, challenge the contents of the sworn affidavits that the Definers Defendants submitted in support of their motion to strike. Pishevar Decl. ¶ 25.  While the basis for his inference was later proven incorrect, Petitioner's affidavit merely *summarized* what he had learned in early November 2017, and what he believed to be true when he filed the lawsuit. *Id.*

By January 2018, the Pishevar Source could not corroborate nor provide any support for any of the Political and Financial Allegations, which led Mr. Pishevar to voluntarily dismiss the Definers Lawsuit on February 2, 2018 as he lacked the evidence to support key aspects of his claims, particularly in light of the sworn affidavits filed by Definers Defendants denying the allegations in the Definers Complaint.  Pishevar Decl. ¶ 27.  Mr. Pishevar released a statement that same day about the voluntary dismissal of the Definers Lawsuit in which he noted that he was now going to focus on holding those responsible for the "falsification and distribution of the fraudulent London police report." Baram Aff., Ex. 10, ECF 15-10.

### E.      This 1782 Application

Following a prior Section 1782 application against Fast Company and Mansueto Ventures LLC, Petitioner brought this Application on October 31, 2019 to seek information from Respondent sufficient to identify Respondent's Confidential Source.   Petitioner's 1782 Application does not seek documents regarding an alleged "smear campaign" against him involving the Political and Financial Allegations or Sexual Misconduct Allegations alleged in the Definers Lawsuit; rather he only sought information specifically "relating to the Forged Police Report." ECF 5-2 (draft subpoenas).[12]  Respondent argued in his Opposition that COLP, *Forbes*, and the *New York Post* were alternative sources but *never* suggested that Definers (or any other party) were a potential alternative source. Resp't. Opp., ECF 14, at 13-16.

The Court held oral argument on February 10, 2020, at which time Respondent did not argue that COLP, *Forbes*, or the *New York Post* were available sources for purposes of reporter's privilege; instead they raised, *for the very first time at oral argument*, that *Definers*—and *not* any other source, such the Pishevar Source or the Tech Reporter—could be an alternative source and submitted a copy of the Definers Complaint to the Court.  *See* H'rg Tr. 50:22-25 ("I don't understand why he would come to my client saying that we need to make a reporter divulge their confidential source of truthful reporting *rather than going after Definers under 1782.*" (emphasis added)).   At oral argument, Respondent's counsel also made the following unsupported and incorrect assertion, which the Court later relied on: "In paragraph 30F of the complaint, in that lawsuit, Quinn Emanuel on behalf of Mr. Pishevar [alleged that] 'Mr. Pishevar is informed and believes that a reporter contacted a third party and inquired about an alleged incident with Mr. Pishevar and a prostitute in Europe. Mr. Pishevar is informed and believed that defendant

---

[12]  Petitioner at oral argument narrowed his request to only seek the name and location of Respondent's Confidential Source.

**communicated this false report** to one or more reporters knowing, or reasonably foreseeing, that the reporter would republish that rumor to others thereby creating the false impression that Mr. Pishevar had an incident with a prostitute in Europe." H'rg Tr. 50:10-20 (emphasis added).[13]

Following oral argument, the Court requested further information regarding whether U.K. self-incrimination privilege prevented Respondent's disclosure of the name and identity of the Confidential Source, an issue which had already been briefed by the parties, but did not raise or seek any briefing from the parties on the Definers Lawsuit—an issue which had *not* been briefed by any of the parties. ECF 44. Petitioner submitted a letter to the Court on February 14, 2020 to address the self-incrimination issue, at which time he also conclusively rebutted Respondent's argument at oral argument that Definers was an alternative source by attaching copies of the six above-mentioned sworn affidavits submitted in the Definers Lawsuit. ECF 50.

### F.      The Dual Purpose of the Requested Discovery

As explained at oral argument, Petitioner seeks the identity of the Confidential Source to (1) initiate and maintain proceedings against *that specific Confidential Source* for the wrongs that source committed during its meeting with Respondent at a café in Washington D.C., and (2) identify other disseminators or the forger(s) of the Fake Police Report, through the Confidential Source, for purposes of initiating and maintaining proceedings against those disseminators and forgers. *See, e.g.,* ECF 4, at 13-15; H'rg Tr. 28:8-25.

### G.      February 18, 2020 Order

On February 18, 2020, the Court issued an Opinion and Order denying Petitioner's Application and found that Petitioner had satisfied the statutory factors under Section 1782—

---

[13]    As the Court can tell from a review of the record in the Definers Lawsuit, there is no reference to a "false report" anywhere in Petitioner's filings in the Definers Lawsuit, and certainly not in the Definers Lawsuit Complaint, to which Respondent's counsel appeared to be quoting from. Respondent's counsel either misspoke or was misleading. The Court's reliance on that fact was clearly erroneous. *See* Order at 21.

namely that Respondent resides in this district, that Petitioner seeks discovery "for use" in foreign proceedings based on his retention of legal counsel and sworn affidavits attesting to the concrete basis for the contemplated civil and criminal proceedings in England, and that Petitioner is an interested person in those proceedings. Order at 13-16.  The Court further found that the first two *Intel* factors weigh in Petitioner's favor. *Id.* at 16-17.  While the Court found that Petitioner had not circumvented foreign proof-gathering restrictions or that the Application was not unduly burdensome because it only sought to identify the name and location of the Confidential Source, the Court denied the application on the basis of reporter's privilege.

When analyzing the reporter's privilege, the Court found that the identity of the Confidential Source was highly material, relevant, and critical to the maintenance of the contemplated foreign proceedings, but concluded that Petitioner had "failed to make a clear and specific showing that the identity of the Confidential Source is not obtainable from other available sources." Order at 22.  The Court meanwhile found that the record was "far from clear what other non-press sources have information regarding what Petitioner referred to as the 'smear campaign' against him (of which the Subject Police Report was a part)." *Id.*.  The Court suggested that Petitioner's sources in the Definers Lawsuit could be alternative sources and faulted Petitioner for failing to identify those sources as well as the reason for voluntarily dismissing the Definers Lawsuit. Order at 23.[14]  Petitioner now brings this Motion for reconsideration to clarify and correct the Court's legal and factual findings it relied on to conclude that the reporter's privilege was not overcome—namely that Petitioner has alternative sources to seek the requested discovery here.

---

[14]   As clarified by Petitioner above, the Pishevar Source had no information about any sexual assault allegations or a fake police report, and the Tech Reporter, who mentioned the Sexual Misconduct Allegations, and who also had no information about the fake police report or a rape allegation, refused to provide her source.

## III.    STANDARD OF REVIEW

Motions for reconsideration pursuant to Federal Rule of Civil Procedure Rule 59(e) are governed by the same standards as those governing motions under Local Civil Rule 6.3 for the U.S. District Courts for the Southern and Eastern Districts of New York. *See Naiman v. New York Univ. Hosps. Ctr.*, 2005 WL 926904, at *1 (S.D.N.Y. Apr. 21, 2005).  Reconsideration may be granted where "the moving party can point to controlling decisions or [factual matters] that the court overlooked … that might reasonably be expected to alter the court's decision." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  A motion for reconsideration should be granted when the moving party identifies "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). This Court should alter, amend, and reconsider its Order based on new evidence, the need to correct clear error, and to prevent manifest injustice.

## IV.    THE COURT SHOULD RECONSIDER ITS ORDER IN LIGHT OF NEWLY PRESENTED EVIDENCE FROM PETITIONER

The Court based its Order on the interpretation of materials filed in the Definers Lawsuit almost two and a half years ago—including materials that were *not* filed nor discussed by any party in their voluminous briefs here—and without giving Petitioner any notice that it would be considering those materials, including Petitioner's own declaration in that lawsuit, nor an opportunity for him to be heard in order to clarify any of the allegations made therein.  Indeed, in the Order, the Court faulted Petitioner for not providing specific information related to the Definers Lawsuit, even though Respondent never argued in its briefs that Definers could have been an alternative source.  Further, at no point at the hearing did Respondent suggest that *Petitioner's sources* in the Definers Lawsuit could be an alternative source—Respondent, *for the first time at*

*oral argument*, only suggested that *Definers* could be an alternative source, Hr'g Tr. 50:9-25, a suggestion that was conclusively rebutted by Petitioner's submissions of the sworn affidavits filed by Definers in that lawsuit.  Rather than request clarification on these issues, which the Court ultimately based its Order on, the Court instead requested further post-hearing briefing on whether Respondent's disclosure of the identity and location of his source would implicate or violate the self-incrimination privilege under English law—thus giving Respondent a further opportunity to introduce new arguments and expert evidence on an issue that *Respondent* had raised and already briefed in his Opposition brief.[15]  Petitioner now simply seeks the opportunity to clarify the record and the issues raised by the Court for the first time in its Order.  Importantly, Petitioner submits concurrently with this motion a request for leave to file a declaration that clarifies where he learned about the Political and Financial Allegations and Sexual Misconduct Allegations underpinning the Definers Lawsuit.  Pishevar Decl. ¶¶ 14-18; *see also* Order at 23.  Petitioner's declaration also explains why he dropped the Definers Lawsuit, Pishevar Decl. ¶ 27, about which the Court specifically enquired when denying the Application, Order at 23.  Finally, Petitioner's declaration explains that his source for the Sexual Misconduct Allegations—which the Court suggested were "similar" to the allegations made by the Confidential Source to Respondent—is a reporter who relied on a confidential source.  Pishevar Decl. ¶¶ 16-17.[16]

---

[15]   Respondent's Opp., ECF 14 at 18-19 (raising the self-incrimination privilege with respect to disclosure of the identity of the source); Peacocke Decl., ECF 16 at ¶¶ 15-25 (same); Petitioner's Reply, ECF 18 at 5-6 (responding to *Respondent*'s argument); Macdonald Reply Decl. ECF 19 at ¶¶ 18-19 (same).

[16]   Concurrently with this filing, Petitioner seeks leave under Local Rule 6.3 to file Petitioner's Declaration in support of this motion. Even if the Court disregards Petitioner's Declaration, Petitioner would still be able to make a clear and specific showing that the information about the Sexual Misconduct Allegations—which ultimately formed the basis of the Court's denial of the Application, Order at 23—originated from a reporter who would not be an alternative source.  Order at 22 (holding that press sources are not alternative sources); Definers Compl. ¶ 29.

## V.   THIS COURT COMMITTED CLEAR ERROR IN CONCLUDING THAT THE CONFIDENTIAL SOURCE'S IDENTITY CAN BE OBTAINED BY ALTERNATIVE AVAILABLE SOURCES

While the Order correctly concluded that Petitioner's Application had met the statutory factors and two discretionary factors for discovery pursuant to Section 1782, Petitioner moves for reconsideration of the Order's conclusion that the reporter's privilege was not overcome here because the Court (1) improperly took discretionary judicial notice of documents outside of the record without giving the parties a full and fair opportunity to be heard and considered them for their truth; (2) did not apply the correct legal standard for determining whether non-privileged sources are available; and (3) improperly concluded that Petitioner had alternative non-privileged sources that could provide the discovery requested here—the Confidential Source's identity.

### A.   The Court Incorrectly Took *Sua Sponte* Judicial Notice Without Giving the Parties a Full and Fair Opportunity to be Heard

The Court inappropriately took judicial notice without giving the parties an opportunity to be heard by *sua sponte* considering the merits of filings filed in the Definers Lawsuit without giving either party an opportunity to object or explain the noticed records.  *See* Order at 7-9, 20-23.  Under Federal Rule of Evidence 201, "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard." Fed. R. Evid. 201; *see also United States v. Garcia*, 672 F.2d 1349, 1356, n.9 (11th Cir. 1982) ("Ordinarily, when a judge takes judicial notice of a fact other than at the request of a party (i.e. 'discretionary judicial notice'), he should notify the parties that he is doing so and afford them an opportunity to be heard.").  "Inviting parties to participate in such ongoing colloquy has the advantage of reducing the possibility of egregious errors by the court and increases the probability that the parties may believe they were fairly treated, even if some of them are dissatisfied with the result." *Bulova*

*Watch Co. v. K. Hattori & Co*., 508 F. Supp. 1322, 1328–29 (E.D.N.Y. 1981).  Indeed, "[a] court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc*., 146 F.3d 66, 70 (2d Cir. 1998)).  This is especially true where the facts contained within that record were disputed or subject to information and belief.  *See Anderson News, L.L.C. v. Am. Media, Inc.*, 732 F. Supp. 2d 389, 404 (S.D.N.Y. 2010), *vacated and remanded on other grounds,* 680 F.3d 162 (2d Cir. 2012); Fed. R. Civ. P. 11 (a pleading submitted on information and belief need only be formed after an "inquiry reasonable under the circumstances" that will "likely have evidentiary support after a reasonable opportunity for further investigation or discovery").[17]

Here, the Court, *in its Order*, took judicial notice of the Definers Lawsuit when it had not been raised until oral argument and even then, Respondent only submitted a copy of the *Complaint* in the Definers Lawsuit to the Court for the *proposition that Definers could be an alternative source*.  The Court did not mark the Complaint as an exhibit or note that it would be taking judicial notice of it. *See* H'rg Tr. 59:9-23. In any event, the Court "need not consider an argument raised for the first time at oral argument." *Harris v. Wu-Tang Prods., Inc.*, 2006 WL 1677127, at *3 (S.D.N.Y. June 16, 2006); *Process Res. Corp. v. Delta Air Lines, Inc.*, 2000 WL 145114, at *7 (S.D.N.Y. Feb. 3, 2000) (same and discounting the "similar" allegations made by plaintiff in another lawsuit); *Keefe on Behalf of Keefe v. Shalala*, 71 F.3d 1060, 1066, n.2 (2d Cir. 1995)

---

[17]  *See also Trevino v. Merscorp, Inc*., 583 F. Supp. 2d 521, 526 (D. Del. 2008) ("The Court may properly take notice of facts not reasonably subject to dispute."); *LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC*., 287 F.3d 279, 290 (3d Cir. 2002) ("For all practical purposes, judicially noticing a fact is tantamount to directing a verdict against a party as to the noticed fact."); *In re OSG Sec. Litig*., 12 F. Supp. 3d 619, 622 (S.D.N.Y. 2014) ("*allegations* from another lawsuit are not evidence and cannot be 'introduced in a later trial for collateral estoppel purposes'") (emphasis added); *B & R Supermarket, Inc. v. MasterCard Int'l Inc.,* 2018 WL 4445150, at *8 (E.D.N.Y. Sept. 18, 2018) (declining to take judicial notice of the allegations in a complaint for their truth).

("Normally, we will not consider arguments raised for the first time in a reply brief, let alone after oral argument.").

Instead, the Court not only considered the Definers Complaint submitted at oral argument, but also considered Petitioner's declaration in the Definers Lawsuit,[18] which had not been submitted or raised by either party, and did not give either party an opportunity to be heard on that document.[19]  Furthermore, the Court appears to have considered the truth of the matters asserted in those pleadings, which had been plead on "information and belief" and were disputed by the parties at the time.  *See* Order at 7-9, 20-23 (considering the truth of the allegations in the Definers Lawsuit).  The Court even noted that the record was "far from clear what other non-press sources have information" and then relied on the Definers Lawsuit even though the parties had never submitted any briefing on the issue. Order at 22.  Petitioner requests that the Court reconsider its decision to take judicial notice of the filings in the Definers Lawsuit, including the declaration submitted by Petitioner in that case which neither party submitted to this Court, and request that the Court give the parties a full and fair opportunity to be heard on those documents, either through the present Motion or future submissions to be determined by the Court.  *See Bassé Frères Alimentation Orientale (2013) Inc. v. Frunut Global Commodities L.L.C.*, 2014 WL 6467001, at *2 (S.D.N.Y. Nov. 18, 2014) (granting reconsideration where plaintiff "contend[ed] that it did not 'have a full and fair opportunity to make a comprehensive submission on the discovery issues which were addressed in the Order'"); *Lopez v. City of New York*, 2012 WL 2250713, at *1

---

[18]   While the Court also considered the affidavits filed by Definers in that lawsuit, that consideration was only necessary to address the argument Respondent raised for the very first time at oral argument.

[19]   The case cited by the Court in its Order, *Rothman v. Gregor*, 220 F.3d 81, 92 (2d. Cir. 2000), only took notice of a pleading in another case *submitted by the parties* in their motion papers, but does not support a Court *sua sponte* taking judicial notice of a filing in another case not submitted, or even discussed, by the parties prior to the Court's decision, such as the declaration Petitioner filed in the Definers Lawsuit.

(E.D.N.Y. June 15, 2012) (granting reconsideration where "defendants initially did not have the opportunity to submit written opposition to the Plaintiffs' motion").

### B.   The Court Applied an Unduly Restrictive Legal Standard for Determining Whether Non-Privileged Sources Are Available

The Court misapplied the legal standard for determining whether a source is "obtainable from other available sources."  Order at 22-23.  The Order cites two cases in this Circuit for the undisputed proposition that a party seeking to pierce the reporter's privilege must "carry their burden of first seeking the information elsewhere" and "exhaust….alternative sources." Order at 23-24.  But this Circuit's and applicable federal law recognizes that such attempts must be "reasonable" and "there are some limits to the obligation to pursue alternative sources." *See In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 8, 9 (2d Cir. 1982) (exhaustion requirement must be "reasonable"); *Zerilli v. Smith*, 656 F.2d 705, 713–14 (D.C. Cir. 1981) (the alternative must be a "*reasonable*" one (emphasis added)); *Garland v. Torre*, 259 F.2d 545, 551 (2d Cir. 1958) (ordering disclosure where plaintiff's "*reasonable* efforts" to identify an informant were unsuccessful even though she could potentially have learned the informant's identity by further discovery proceedings directed to CBS) (emphasis added); *Schiller v. City of New York*, 245 F.R.D. 112, 120 (S.D.N.Y. 2007) (no alternative sources where "[e]quivalent information could be obtained only by subpoenaing and deposing the hundreds of nonparty witnesses who filled out the questionnaires").  Indeed, "litigants [need not] be made to carry wide-ranging and onerous discovery burdens where the path is … ill-lighted." *Lee v. Department of Justice*, 413 F.3d 53, 61 (D.C. Cir. 2005) (plaintiff need not depose every individual who "conceivably could have leaked the information" at issue);  *In re Nat. Gas Commodity Litig.* 235 F.R.D. 199, 204 (S.D.N.Y. 2005)

("The third prong of the Second Circuit test refers to information being obtainable from 'available' sources; *it does not require that every theoretical source be exhausted.*" (emphasis added)).[20]

Here, the Court appears to have faulted Petitioner for not having identified the Pishevar Source and Tech Reporter, which it now has. Pishevar Decl. ¶¶ 14, 16. But none of those sources are alternatives because neither source had any knowledge of the Forged Police Report or identity of the Confidential Source, the object of discovery here. Pishevar Decl. ¶¶ 15, 17. Thus, Petitioner has no alternative sources to obtain the identity of the Confidential Source given that he has exhausted efforts with COLP and cannot obtain it via other press sources, such as *Forbes* and the *New York Post*. And assuming, *arguendo*, that the information sought here is "similar" to the Sexual Misconduct Allegations in the Definers Lawsuit—or even that the Tech Reporter may, hypothetically, be able to identify the Confidential Source—those allegations originated from the Tech Reporter who, like Respondent (and *Forbes* and the *New York Post*), is also likely to invoke the reporters' privilege. *See* Order at 22 (other press sources do not constitute alternative sources).

Additionally, where the evidence sought is unique and there is only one known source, it cannot be considered "available" elsewhere. *See United States v. Cutler*, 6 F.3d 67, 73 (2d Cir. 1993) ("the evidence that [defendant] seeks from the Reporters and the TV Stations is probably the only significant proof regarding his assertedly criminal behavior"); *S.E.C. v. Seahawk Deep Ocean Tech., Inc*., 166 F.R.D. 268, 272 n.9 (D. Conn. 1996) (finding no available alternative source where subpoena target was "the only identified source for the verification testimony sought"); *United States v. Markiewicz*, 732 F. Supp. 316, 322 (N.D.N.Y. 1990) (finding information not available elsewhere when Government had interviewed others about the overt acts

---

[20]   The availability of an alternate source must be pursued only where it is "known." *Blum v. Schlegel*, 150 F.R.D. 42, 46 (W.D.N.Y. 1993) (stating that exhausting additional depositions as an alternative means must be pursued "[w]here the source is known and can be deposed").

but were unsuccessful *because the co-conspirators were unidentified*) (emphasis added).  In fact, in cases in which the privilege was upheld, the alternative sources were typically either a member of an identifiable class of individuals potentially with knowledge of the *same* discovery sought (such as a defendant in the same action) or were identified in plaintiff's allegations.  *See, e.g.*, *In re Petroleum Prods. Antitrust Litig.*, 680 F.2d at 8-9 (deposition witnesses who plaintiffs had identified and failed to question were alternate available sources); *Application of Behar*, 779 F. Supp. 273, 275-76 (S.D.N.Y. 1991) (reporter's privilege upheld where defendants in underlying action and referred to in the article in question had not been exhausted).[21]

Here, the identity of the Confidential Source is within the unique possession of Respondent.  No one other than Respondent can confirm the person with whom he met at the café in D.C.[22]  **Respondent is the <u>only</u> witness of <u>that</u> crime**.[23]  Petitioner requires the identity of that person— the Confidential Source—to bring proceedings against *that person* for acts they committed during *that* meeting.  Further, and as an independent ground for seeking the discovery here, Petitioner will request information *from the Confidential Source* about the individual who gave him the Forged Police Report and shared the other false allegations related thereto (i.e. that the incident was handled by the "gold command" of COLP, that Petitioner paid off the alleged victim of the rape allegation, and that the police station was "outraged" when charges were dropped) and *not* about any purported Political and Financial Allegations, or even the Sexual Misconduct

---

[21]  In fact, in *In re Petroleum Prods.*, the Court denied the motion to compel because, unlike Petitioner here, plaintiffs had failed to "explore <u>any</u> alternative means" to discover the information sought in their subpoenas.  680 F.2d at 8.

[22]  During his correspondence with Fast Company in the First 1782 Application, Petitioner's counsel asked Fast Company to produce the name of the café as well as the date and time of the meeting between Respondent and the Confidential Source to allow Petitioner to make direct enquiries to the café about the meeting.  But Respondent declined to provide that information so Petitioner has exhausted that avenue too.  Bento Decl. Ex. 10, ECF 5-10.

[23]  *See* Macdonald Decl., ECF 6; Macdonald Reply Decl., ECF 19; ECF 50 at n.2 (summarizing the Confidential Source's criminal liability and noting that Respondent was a witness to that crime).

Allegations, contained in the now dismissed Definers Lawsuit.  Had the proper standard been applied, the Court should have found that no available sources for the requested discovery exist.

### C. Petitioner Does Not Have Alternative Non-Privileged Sources That Could Identify The Confidential Source

Even assuming the Court properly took judicial notice of the documents filed in the Definers Lawsuit and applied the correct standard, its factual findings were clearly erroneous because (1) they conflated discovery sought here related to the identity of the Confidential Source and Forged Police Report (and the allegations related thereto) with the allegations regarding a "smear campaign" referenced in the Definers Lawsuit, (2) suggested that Definers potentially had information about the Forged Police Report despite Definers' sworn, unchallenged affidavits to the contrary, and (3) discounted Petitioner's Application based on his alleged failure to identify unrelated or inaccessible sources of information underpinning the Definers Complaint.

#### 1. Definers Is Not an Alternate Available Source

*First*, the Order mistakenly suggested that Petitioner had failed to show that Definers was not an alternative source with information about the requested discovery here—the identity and location of Respondent's Confidential Source. Order at 22-23.  In doing so the Court conflated the "smear campaign" that Mr. Pishevar alleged was waged against him in the Definers Lawsuit with his targeted discovery request about the identity of the Confidential Source.  *Id*.  The "smear campaign" alleged in the Definers Lawsuit, i.e. the Political and Financial Allegations and Sexual Misconduct Allegations, was based on sources of information that said nothing about a rape allegation, Fake Police Report, or any allegations relating thereto.  *See* Pishevar Decl. ¶ 30 & Ex. 1.  This misunderstanding was compounded by Respondent's counsel's mistaken reference at oral argument to a "false report" in the Definers Complaint even though no such allegation was made in that Complaint. *Compare* Order at 21, *and* H'rg Tr. 50:12-20, *with* Definers Compl. ¶30(f).  The

Definers Lawsuit had nothing to do with the Forged Police Report at issue here; Mr. Pishevar never alleged or even referenced a fake police report or rape allegation in any of his filings in that Action. Thus, *ab initio*, the Court's conclusion that the allegations in the Definers Lawsuit overlapped with the discovery sought here is a basis for reconsideration alone.

The only allegation from the Definers Lawsuit that even remotely overlaps with "similar," (but not the same) information related to this Application is that, at the time of the filing of the Definers Lawsuit on November 6, 2017, Mr. Pishevar had been informed by a press source (the Tech Reporter) that there were false rumors that he had paid money to settle a claim for sexual assault in London. Pishevar Decl. ¶ 16. Those allegations did not relate to a specific person or date, nor do they relate to an alleged rape allegation (which is the basis of the Fake Police Report). Thus, the information shared by the Tech Reporter's source and the information sought here have no equivalence. And even if it did, there would be no way to find out who the Tech Reporter's source is as she has already refused to provide that information on confidentiality grounds and would likely invoke reporter's privilege if subpoenaed. Pishevar Dec. ¶ 17.

Even if the Court believed Definers could be an alternative source, Definers have already categorically denied the Political and Financial Allegations, the Sexual Misconduct Allegations, and went even further by stating that they "do not have and have never seen a police report or a purported police report involving Mr. Pishevar." ECF 50-2 (six Definers executives' affidavits); Order at 23 (noting Definers Defendants' "complete denials"). Definers therefore definitively stated, under penalty of perjury, that they did not possess and could not provide any information about the Forged Police Report or the Sexual Misconduct Allegations. Contrary to the suggestion that Definers' knowledge about the Forged Police Report is "far from clear," those six sworn affidavits provide clear, specific, and convincing evidence that Definers has no information about

the Forged Police Report and the Sexual Misconduct Allegations and therefore is not an alternative available source for the identity and location of Mr. Baram's Confidential Source.[24] *See S.E.C. v. Seahawk Deep Ocean Tech., Inc.*, 166 F.R.D. 268, 272 (D. Conn. 1996) (finding no alternative available source when "the SEC has stated that the defendants have, under oath, denied making the statements attributed to them.").  Mr. Pishevar's sole declaration submitted in the Definers Lawsuit did not challenge the veracity of Definers' denials; he only confirmed what he believed to be true ***at the time he filed his complaint***. *See* Pishevar Decl. ¶ 25 & Ex. 2 (stating "As detailed in the Complaint, *in early November 2017 I learned that*…" and referring explicitly to "paragraph 27 of my Complaint in that Action," which is averred on information and belief).[25]  Neither Petitioner's declaration, nor any other filing by the Petitioner in the Definers Lawsuit refers to a Forged Police Report or to any rape allegation.

### 2. The Sources Referenced In Mr. Pishevar's Previous Filings Are Irrelevant And Also Not Available Sources

In the Definers Lawsuit, the Petitioner solely relied on information supplied by two sources: the Tech Reporter and the Pishevar Source.  The Tech Reporter provided information to Petitioner about the Sexual Misconduct Allegations, but not about a Fake Police Report, let alone of an alleged rape. Pishevar Decl. ¶ 16.  The Tech Reporter, as an established member of the press, like *Forbes* or the *New York Post*, is not an alternative available source because she too would invoke reporter's privilege. Order at 22; Pishevar Decl. ¶ 31.

---

[24]  Other reporters, such as *Forbes*, publicly confirmed that they had "no contact with Definers" before the lawsuit, thereby confirming that the source who gave *Forbes* a copy of the fake report was *not* Definers. *See* Baram Aff., Ex. 5 ("*Forbes*, which had no contact with Definers before Pishevar filed the defamation case, began inquiring about the incident after learning that it might involve a Silicon Valley personality.").

[25]  The information Petitioner seeks here does not reside with any available sources related to the Definers Lawsuit, no matter how the Court interprets Petitioner's beliefs about his allegations in November 2017.  To hold Petitioner hostage to what he may or may not have believed about *unrelated* allegations would deny Petitioner his right to pursue bring claims against those responsible for the creation and dissemination of the Forged Police Report.

Mr. Pishevar's second source, the Pishevar Source, did not have any information about the Forged Police Report, an alleged rape allegation, or the Sexual Misconduct Allegations. In fact, the Pishevar Source had no information related to Mr. Pishevar's alleged sexual conduct at all. Pishevar Decl. ¶ 15. Thus, the Pishevar Source in the Definers Lawsuit is not an alternative source either. In any event, the Pishevar Source was unable to corroborate and provide evidentiary support for the Political Allegations and Financial Allegations. Pishevar Decl. ¶ 26. Consequently, in light of Definers' sworn denials and his realization that Definers was not behind the Political and Financial Allegations, nor the Sexual Misconduct Allegations, Mr. Pishevar exercised his legal right to voluntarily dismiss the Definers Lawsuit in early February 2018. Pishevar Decl. ¶ 27. His dismissal of those claims has no bearing on the claims he seeks to bring in the Contemplated Foreign Proceedings, or the discovery sought here.

## VI.    RECONSIDERATION IS NECESSARY TO PREVENT MANIFEST INJUSTICE

Petitioner respectfully requests that the Court reconsider its Order taking into account the *full* record, including Petitioner's Declaration submitted for consideration in support of this motion. To deny Petitioner his right to be heard on a factual issue that was not properly before the Court but was nonetheless relied upon by the Court in denying his Application would not only be contrary to basic procedural fairness but would foreclose Petitioner's ability to seek justice in the Foreign Proceedings. Indeed, and as the Court has correctly found, Order at 22, without the identity of the Confidential Source, Petitioner is unable to initiate and maintain the Foreign Proceedings, including the prosecution of the Confidential Source, the forger and other criminals, which has been found to be legitimate grounds for granting new consideration in other similar cases. *See United States v. Samia*, 2017 WL 980333, at *3 (S.D.N.Y. Mar. 13, 2017) (granting reconsideration because of "substantive public interest" in prosecuting crime); Macdonald Decl., ¶ 38. The prejudice Petitioner will suffer if it is not permitted to address the Court's outstanding

queries outweighs any burden that this Court or Respondent may experience in allowing Petitioner

to be heard on an important issue in this case.

## <u>CONCLUSION</u>

Based on the foregoing, Petitioner respectfully requests that the Court reconsider and alter

the Order and, accordingly, grant Petitioner's Application.

Dated:  New York, NY       Respectfully submitted,
   March 3, 2020

                */s/ Lucas V. M. Bento*

                Lucas V.M. Bento
                Alexander Wentworth-Ping
                lucasbento@quinnemanuel.com
                alexwentworthping@quinnemanuel.com
                QUINN EMANUEL URQUHART &
                SULLIVAN, LLP
                51 MADISON AVENUE, FLOOR 22
                NEW YORK, NY 10010
                Telephone: (212) 849-7000
                Facsimile: (212) 849-7001

                *Attorneys for Petitioner*