```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  4/14/2020
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE APPLICATION OF SHERVIN
PISHEVAR FOR AN ORDER TO TAKE
DISCOVERY FOR USE IN FOREIGN
PROCEEDINGS PURSUANT TO 28 U.S.C. §
1782

**1:19-MC-00503 (JGK) (SDA)**

**OPINION AND ORDER**

**STEWART D. AARON, United States Magistrate Judge:**

Pending before the Court are four motions: (1) the motion of Petitioner Shervin Pishevar

("Petitioner" or "Pishevar") for reconsideration of this Court's prior Opinion and Order, denying

his application to obtain discovery from Marcus Baram ("Respondent" or "Baram") for use in

foreign proceedings, pursuant to 28 U.S.C § 1782[1] (Mot. for Reconsid., ECF No. 59);

(2) Petitioner's related motion for leave to file a March 3, 2020 Declaration ("Pishevar 3/3/2020

Decl.") in support of his motion for reconsideration (Mot. for Leave, ECF No. 58); (3) Respondent's

motion to unseal certain documents that had been filed under seal (Mot. to Unseal, ECF No. 65);

and (4) Petitioner's motion to seal redacted portions of his Reply Memorandum of Law in Further

Support of Motion for Reconsideration. (Mot. to Seal, ECF No. 71.)

For the reasons set forth below, (1) Petitioner's motion for reconsideration is GRANTED;

however, upon reconsideration, the Court adheres to its decision in the Prior Opinion to deny

Petitioner's application; (2) Pishevar's motion for leave to file his March 3, 2020 Declaration is

---

[1] The Opinion and Order denying Petitioner's application was issued on February 18, 2020. *See In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, No. 19-MC-00503 (JGK) (SDA), 2020 WL 769445 (S.D.N.Y. Feb. 18, 2020) ("Prior Opinion").

GRANTED; (3) Respondent's motion to unseal is DENIED; and (4) Petitioner's motion to seal is

GRANTED.

<u>**BACKGROUND**</u>

Familiarity with the Prior Opinion is presumed. Only those facts necessary to understand

the arguments presented in the pending motions are repeated here. The Prior Opinion addressed

the second § 1782 application filed by Petitioner in relation to the dissemination by an unknown

source (the "Confidential Source") to the press in September 2017 of a police report purporting

to be from the City of London Police ("COLP"), but later learned to be a forgery (the "Subject

Police Report").[2] In his second § 1782 application, Petitioner sought to obtain from Respondent

information sufficient to identify the Confidential Source.

In its Prior Opinion, this Court denied Petitioner's second application, finding that

although he had met the mandatory criteria of § 1782, two of the *Intel* discretionary factors,[3]

namely, whether the application circumvents U.S. policies and whether the application is unduly

burdensome, weighed against Petitioner. *In re Application of Shervin Pishevar*, 2020 WL 769445,

at **8-9. The Court found that these factors weighed against Petitioner because the Confidential

Source was shielded by the reporter's privilege and because Petitioner "failed to make a clear

and specific showing that the identity of the Confidential Source [was] not obtainable from other

---

[2] The first § 1782 Application was filed on August 6, 2019 under Case Number 19-MC-00370, and was granted by me on August 9, 2019, authorizing the service of subpoenas upon Fast Company and Mansueto Ventures LLC ("Mansueto"). In response to the subpoenas, Fast Company and Mansueto produced certain information about the Subject Police Report. However, Fast Company and Mansueto refused on the basis of the reporter's privilege to disclose to Petitioner the identity of the Confidential Source who provided the Subject Police Report to their reporter, Baram. *See In re Pishevar*, 2020 WL 769445, at **1, 3.

[3] *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

available sources." *Id*. at *10.[4] Specifically, the Court found that Petitioner, in a California Superior Court lawsuit against Definers Corp. and Definers Public Affairs (collectively, "Definers"),[5] asserted allegations related to the Subject Police Report and that Petitioner filed a Declaration in the Definers Lawsuit on December 29, 2017 (the "Pishevar 12/29/17 Decl."),[6] which raised questions as to whether any of the Definers Defendants (and/or DOES 1-10 listed in the Definers Lawsuit) were alternative sources of the identity of the Confidential Source. *See id*. at **10-11.

On March 3, 2020, Petitioner filed his motion for reconsideration of the Prior Opinion and motion for leave to file his March 3, 2020 Declaration. (*See* Mot. for Reconsid.; Mot. for Leave; *see also* Pet.'s Mem. Reconsid., ECF No. 60.) Respondent opposed both motions on March 18, 2020 (Resp.'s Opp. Reconsid., ECF No. 62[7]) and Petitioner filed his reply on March 24, 2020. (Reconsid. Reply, ECF No. 68.[8])

On March 18, 2020, Respondent filed a motion to unseal the following documents: (1) the Witness Statement of Jonathan Witt ("Witt Witness Statement") that was filed under seal at ECF No. 45; (2) the Subject Police Report that was filed under seal at ECF No. 46; (3) the letter from Lucas Bento, dated February 14, 2020, and its accompanying Exhibits 1, 2 and 3, that were filed

---

[4] The Court also noted that, "if a privilege protects the information that is sought in a Section 1782 application, then such application may be denied." *In re Pishevar*, 2020 WL 769445, at *9 (citation omitted).

[5] The lawsuit also named as defendants Matthew Rhoades and Joseph Pounder, two individuals affiliated with Definers. Definers, Rhoades and Pounder collectively are referred to as the "Definers Defendants." The California lawsuit against Definers is referred to as the "Definers Lawsuit."

[6] A copy of Petitioner's December 29, 2017 Declaration ("Pishevar 12/29/17 Decl.") is annexed as Exhibit 2 to Pishevar's March 3, 2020 Declaration. (*See* Pishevar 3/3/20 Decl. Ex. 2, ECF No. 58-1, at 25-27.)

[7] Respondent's unredacted opposition memorandum was filed under seal at ECF No. 63.

[8] Petitioner's unredacted reply memorandum was filed under seal at ECF No. 69.

under seal at ECF No. 51; (4) Respondent's Memorandum of Law in Opposition to Petitioner's Motion for Reconsideration and its unredacted attachment, that were filed under seal at ECF No. 63; and (5) the attachment to the letter from Toby Butterfield, dated February 18, 2020, that was filed under seal at ECF No. 64-1. (*See* Mot. to Unseal at 1 n.1.) On March 23, 2020, Amici filed a letter in support of Respondent's motion to unseal. (Amici Ltr., ECF No. 67.) On March 27, 2020, Petitioner opposed Respondent's motion to unseal. (Pet.'s Unseal Opp., ECF No. 70.) On March 27, 2020, Petitioner also moved to seal redacted portions of his March 24, 2020 Reply Memorandum of Law in Further Support of Motion for Reconsideration. (*See* Mot. to Seal.)

## DISCUSSION

### I.   Petitioner's Motion For Reconsideration And Motion For Leave

#### A.   Legal Standards

"Motions for reconsideration may be brought pursuant to Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure and Local Rule 6.3." *U.S. v. Real Prop. & Premises Located at 249-20 Cambria Ave., Little Neck, N.Y. 11362*, 21 F. Supp. 3d 254, 259 (E.D.N.Y. 2014).[9] District courts "ha[ve] broad discretion in determining whether to grant a motion [for reconsideration]." *Baker v. Dorfman*, 239 F.3d 415, 427 (2d Cir. 2000). "The major grounds for justifying reconsideration are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp. 2d 558, 560 (S.D.N.Y. 2011) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

---

[9] Local Civil Rule 6.3 governs motions for reconsideration in this Court and in the Eastern District of New York. *See* S. & E.D.N.Y.R. 6.3.

On a motion for reconsideration, "[n]o affidavits shall be filed by any party unless directed by the Court." S. & E.D.N.Y.R. 6.3. However, if affidavits (or declarations) are filed with a motion for reconsideration, a court may grant a party's request to file them *nunc pro tunc*. *See We Shall Overcome Found. v. The Richmond Org., Inc.*, No. 16-CV-02725 (DLC), 2018 WL 5307095, at *3 (S.D.N.Y. Oct. 26, 2018).

**B. Application**

**1. Petitioner's Motion For Reconsideration And Motion For Leave Are Granted**

Petitioner argues that reconsideration is appropriate here in light of "newly presented evidence," namely, the March 3, 2020 Declaration submitted by Petitioner, since the Court committed clear error when it took judicial notice of documents filed in the Definers Lawsuit without giving Petitioner an opportunity to be heard, pursuant to Fed. R. Evid. 201. (*See* Pet.'s Mem. Reconsid. at 13-15.) Respondent urges the Court to reject Petitioner's additional evidence, since it was previously available. (Resp.'s Opp. Reconsid. at 11-12.)

The Federal Rules of Evidence permit a court to take judicial notice of documents publicly filed in another lawsuit. *See Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000) ("Pursuant to Fed.R.Evid. 201(b), we take judicial notice of the Midway complaint as a public record."). Petitioner does not contend otherwise. (*See* Pet.'s Mem. Reconsid. at 17.) Moreover, a court "may take judicial notice on its own," without a party requesting it. *See* Fed. R. Evid. 201(c)(1). However, Petitioner is correct that the Court erred in not giving Petitioner an opportunity to be heard with respect to the December 29, 2017 Declaration he filed in the Definers Lawsuit before the Court considered such Declaration. (*See* Pet.'s Mem. Reconsid. at 17.)

Under Rule 501 of the Federal Rules of Evidence, "[o]n timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed. If the court takes judicial notice before notifying a party, the party, on request, is still entitled to be heard." Fed. R. Evid. 501(e). Because Petitioner did not have an opportunity to be heard regarding the December 29, 2017 Declaration he filed in the Definers Lawsuit, before the Court issued its Prior Opinion, the Court in its discretion grants Petitioner's motion for reconsideration and grants Petitioner's motion for leave to file his March 3, 2020 Declaration in this case *nunc pro tunc*. Accordingly, the Court considers below the March 3, 2020 Declaration that Petitioner filed in this case in support of his motion for reconsideration, which sets forth Petitioner's explanation regarding his submission of the December 29, 2017 Declaration in the Definers Lawsuit.[10] (*See* Pishevar 3/3/20 Decl., ECF No. 58-1.)

**2.    The Court Adheres To Its Decision To Deny Petitioner's Application**

As set forth below, after considering Pishevar's March 3, 2020 Declaration, the Court adheres to its decision to deny Petitioner's application. In the Prior Opinion, the Court found that Petitioner "failed to make a clear and specific showing that the identity of the Confidential Source [was] not obtainable from other available sources[.]" *In re Pishevar*, 2020 WL 769445, at *10. The Court found that Petitioner had failed to show that the information was not obtainable from the Definers Defendants. In reaching this conclusion, the Court relied, in part, on Petitioner's December 29, 2017 Declaration that was filed in the Definers Lawsuit, weeks after the Definers

---

[10] Because the Court is granting Petitioner leave to file his March 3, 2020 Declaration to correct legal error, the Court need not address Respondent's argument that the Court should not consider the newly presented evidence contained in the March 3, 2020 Declaration since such evidence previously was available to Petitioner. (*See* Resp.'s Opp. Reconsid. at 11-12.)

Defendants denied wrongdoing in sworn statements, that "in early November 2017 [Petitioner] learned that Matthew Rhoades and Definers were circulating . . . false statements about me . . . [including] . . . [a]n accusation that I had paid money to settle a claim for sexual assault in London[.]" *Id.* at *10 (quoting Pishevar 12/29/17 Decl.). Based on the record before the Court, Petitioner's December 29, 2017 Declaration appeared to indicate that Petitioner had evidence regarding the Definer Defendants' conduct that called into question their denials. Thus, the Court determined that Petitioner's sworn statements, in face of the Definer Defendants' denials, raised a question as to whether the Definers Defendants (and/or DOES 1-10 in the Definers Lawsuit) were alternative sources of the identity of the Confidential Source. *See id.* at **10-11.

In his March 3, 2020 Declaration, Petitioner states that his December 29, 2017 Declaration was meant to "summarize[] what [he] had learned back in early November 2017, which formed the basis for his Complaint [in the Definers Lawsuit]." (Pishevar 3/3/20 Decl. ¶ 25.) Petitioner explains that, in November 2017, he was told by someone he refers to as the "Pishevar Source"[11] that the Pishevar Source "had heard from Matthew Rhoades that [Petitioner's] business opponents had purportedly hired [Definers ] to 'take [him] down'" by way of spreading a series of false statements and accusations. (*Id.* ¶ 14.) Also in or around November 2017, Petitioner heard from the "Tech Reporter"[12] that a confidential source told her that Petitioner "made a

---

[11] In a subsequent filing ordered by the Court, Petitioner states that the Pishevar Source is "a former senior political official and has significant political ties in Washington D.C." (Pet. 4/3/20 Ltr., ECF No. 75, at 3.) In response to an Order from the Court (3/29/20 Order, ECF No. 74), Petitioner argued that the identity of the Pishevar Source should not be made part of the public record. (Pet. 4/3/20 Ltr. at 1.) Because the Court adheres to its prior decision to deny Petitioner's application, it does not require Petitioner to disclose the identity of the Pishevar Source at this time.

[12] In the subsequent filing ordered by the Court, Petitioner states that the Tech Reporter is Kara Swisher, a journalist and editor-at-large of Recode. (Pet. 4/3/20 Ltr. at 2.)

payment to settle a sexual assault claim in London and had 'an incident with a prostitute in

Europe.'" (*Id*. ¶ 16.) Petitioner then "made the reasonable inference, in early November 2017,

that Definers was behind all of these allegations" and he filed the Definers Lawsuit on November

6, 2017. (*Id*. ¶ 18.) Petitioner also states that he only learned about the Subject Police Report two

days later, on November 8, 2017, when Baram published a press article about it. (*Id*. ¶ 21.) On

November 10, 2017, Petitioner learned that the Subject Police Report was fake. (*Id*. ¶ 23.)

Moreover, Petitioner contends that his December 29, 2017 Declaration "did not dispute

the truth of the Definers executives' declarations," including the statements by the Definers'

executives that "they had not seen a police report or a purported police report relating to [his]

arrest." (Pishevar 3/3/20 Decl. ¶ 25.) Upon receipt of the Definers Declarations, Petitioner states

that he "asked" the Pishevar Source about the "false allegations" made about Petitioner, but the

source did not respond. (*See id*. ¶ 24.) Nevertheless, on December 29, 2017, Petitioner submitted

to the California court the Declaration that was considered by this Court in the Prior Opinion.

According to Petitioner, after hearing in January 2018 that the Pishevar Source was unable to

corroborate the allegations made against the Definers Defendants, Petitioner voluntarily

dismissed the Definers Lawsuit.[13] (*See id*. ¶¶ 26-27; *see also* Pet. 4/3/20 Ltr. at 3.) Notably,

Petitioner fails to disclose precisely what the Pishevar Source told him in January 2018 about the

---

[13] The Court is skeptical about Petitioner's explanation regarding his December 29, 2017 Declaration. He
suggests it was filed essentially to restate what he had been told in November 2017 by the Pishevar Source
because, by December 29, 2017, Petitioner had been unable to obtain corroboration from the Pishevar
Source. (*See* Pishevar 3/3/20 Decl. ¶¶ 24-26.) Yet, his December 29, 2017 Declaration does not state that
Petitioner was awaiting corroboration of the information contained therein, nor does that Declaration
have any qualifiers or caveats. Moreover, it is puzzling what Petitioner was expecting to hear from the
Pishevar Source about Rhoades' sworn denials in Rhoades' December 6, 2017 Declaration (*see* Rhoades
Decl., ECF No. 50-2, at 2-5), since Petitioner purportedly was told that it was Rhoades himself who
provided the relevant information to the Pishevar Source. (*See* Pishevar 3/3/20 Decl. ¶ 14.)

detailed allegations the Pishevar Source previously had provided to him in November 2017. (*See* Pishevar 3/3/20 Decl. ¶ 26.)

Petitioner's March 3, 2020 Declaration does not alter the Court's conclusion that "Petitioner has failed to make a clear and specific showing that the identity of the Confidential Source is not obtainable from other available sources." *In re Pishevar*, 2020 WL 769445, at *11. In an effort to explain away his December 29, 2017 Declaration, Petitioner seeks to draw a distinction between sexual misconduct-related allegations and other parts of the "smear campaign" against him that Petitioner alleged in the Definers Lawsuit. For example, in his reply, Petitioner argues that the Definers Lawsuit "made no reference to the [Subject Police Report], a rape allegation, or the arrest." (Reconsid. Reply at 1.) However, no such distinction was drawn by defendants in that lawsuit.[14] All six of the declarations filed by the Definers Defendants in the Definers Lawsuit contained the following statement: "I do not have and have never seen a police report or a purported police report involving Mr. Pishevar." (*See* Definers Defs.' Decls., ECF No. 50-2, at 5, 9, 12, 16, 19, 22.) Significantly, none of the Definers Defendants denies knowledge about who may have seen or been involved with distribution of a police report or a purported police report involving Petitioner.

The Court in the Prior Opinion applied the appropriate standard in denying Petitioner's application. As stated by the Court in the Prior Opinion, it is the movant's responsibility to make a "clear and specific showing" that the information is not obtainable from other available

---

[14] No such distinction previously was drawn by Petitioner either. Petitioner's February 2, 2018 press statement announcing his dismissal of the Definers Lawsuit stated that he "intend[s] to continue to focus [his] full attention on those who should ultimately be held responsible for the smear campaign that has been waged against me, including the falsification and distribution of the fraudulent London police report." (Baram Aff. Ex. 10, ECF No. 15-10.)

sources. *In re Pishevar*, 2020 WL 769445, at *9 (citing *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982)). The Court in its discretion finds on reconsideration that Petitioner still has not made such a clear and specific showing. *See Application of Behar*, 779 F. Supp. 273, 276 (S.D.N.Y. 1991) (finding that alternative sources, including depositions, must be exhausted before any deposition seeking information potentially covered by the reporter's privilege would be warranted).

Petitioner states that he does "not believe that either the Pishevar Source or the Tech Reporter have any information at all about the creators or distributors of the forged police report, or of any false statements about that investigation," and that he "believe[s]" that the Tech Reporter "would invoke the reporters' privilege to shield the name of her source who told her the false allegation that [he] paid money to settle a 'sexual assault' claim in London."[15] (Pishevar 3/3/20 Decl. ¶¶ 30-31.) However, Petitioner does not state that he asked his own sources (*i.e.*, the Pishevar Source and the Tech Reporter) if they were aware of the identity of the Confidential Source, or if they knew anyone who was so aware. He also does not state that he asked the Definers Defendants such questions.

Petitioner has tools available to him to obtain discovery from the Definers Defendants, the Pishevar Source and the Tech Reporter regarding the identity of the Confidential Source, including document discovery and sworn depositions (and to follow any leads that such discovery provides). As he has done on two occasions in this Court, Petitioner can file applications under 28 U.S.C. § 1782 to obtain such discovery. However, he has failed to do so. Accordingly, the Court

---

[15] Similarly, Petitioner states in his April 3, 2020 letter to the Court that the Tech Reporter, Kara Swisher, would "likely invoke the reporter's privilege." (Pet. 4/3/20 Ltr. at 2.)

adheres to its prior decision that Petitioner has failed to make a clear and specific showing that the identity of the Confidential Source is not obtainable from other available sources, and his application once again is denied.[16]

## II.   Respondent's Motion To Unseal And Petitioner's Motion To Seal Reply

### A.   Legal Standards

The Second Circuit recently set forth the legal standards regarding public access to judicial documents, as follows:

> Judicial documents are subject at common law to a potent and fundamental presumptive right of public access that predates even the U.S. Constitution. *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*"); *see also Lugosch v. Pyramid Co.*, 435 F.3d 110, 119 (2d Cir. 2006) (describing right of public access as "firmly rooted in our nation's history"). That right includes "a general right to inspect and copy" such judicial documents. [*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).] To determine whether the presumption attaches to a particular record, our Court engages in a three-step inquiry. *See Lugosch*, 435 F.3d at 119-20.
>
> First, the court determines whether the record at issue is a "judicial document"— a document to which the presumption of public access attaches. *Id*. at 119. Not all documents filed with the court are "judicial" documents. Rather, a judicial document is one that has been placed before the court by the parties and that is "relevant to the performance of the judicial function and useful in the judicial process." *Amodeo I*, 44 F.3d at 145.
>
> Next, if the record sought is determined to be a judicial document, the court proceeds to "determine the weight of the presumption of access" to that document. *United States v. Erie Cty.*, 763 F.3d 235, 239, 241 (2d Cir. 2014). The weight to be accorded is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to

---

[16] In his reconsideration motion, Petitioner seems to take issue with the burden imposed upon him to take discovery from other available sources. (*See* Pet.'s Mem. Reconsid. at 18 (referring to "wide-ranging and onerous discovery burdens")). However, Petitioner has not taken a single deposition to seek to ascertain the identity of the Confidential Source. Petitioner "cannot escape [his] obligation to exhaust alternative sources simply because [he] fear[s] that deposing" certain witnesses "would be time-consuming, costly, and unproductive." *See Zerilli v. Smith*, 656 F.2d 705, 715 (D.C. Cir. 1981). Indeed, it is quite possible that deposing the Definers Defendants, the Pishevar Source and the Tech Reporter (if she does not assert the reporter's privilege) could "shed further light on" the identity of the Confidential Source. *See id*.

those monitoring the federal courts." [*United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*").]

Finally, the court must identify all of the factors that legitimately counsel against disclosure of the judicial document, and balance those factors against the weight properly accorded the presumption of access. *Id*. at 1050. Although the public's right is strong, it is "not absolute." *Nixon*, 435 U.S. at 598, 98 S.Ct. 1306. Countervailing considerations that courts may consider include "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Amodeo II*, 71 F.3d at 1050. If, at the end of this process, the balance of the factors tips against permitting public access, then the court may deny disclosure.

*Mirlis v. Greer*, 952 F.3d 51, 58-59 (2d Cir. 2020) (footnotes omitted).

B. **Application**

The Court now considers the various documents that Respondent seeks to unseal and the document that Petitioner seeks to seal. Although the documents are judicial documents, the Court finds that they should be kept under seal, for the reasons set forth below.

### 1. The Subject Police Report And Witt Witness Statement

The Court, in its discretion, finds that the Subject Police Report and the redacted portions of the Witt Witness Statement shall be kept under seal. (See Rose Decl., ECF No. 72.) The Subject Police Report and the Witt Witness Statement[17] were sent to the Court, at the Court's request, for *in camera* review. (*See* 2/10/20 Tr., ECF No. 47, at 6-7.) The Court thereafter required Petitioner to share both documents with Respondent under an attorneys' eyes-only designation. (Mot. to Unseal at 2.) Ultimately, the Court did not rely on these documents in reaching its decision, which weakens the presumption of public access. *See Amodeo II*, 71 F.3d at 1052 ("although the Report, as a judicial document, carries a presumption of public access, . . . the

---

[17] The Witt Witness Statement is a statement filed on behalf of the COLP in the High Court of Justice regarding the Subject Police Report.

presumption is weak because the Report bears only a marginal relationship to the performance of Article III functions"); *see also In re Accent Delight Int'l Ltd.*, No. 16-MC-00125 (JMF), 2018 WL 2849724, at *6 (S.D.N.Y. June 11, 2018), *aff'd*, 791 F. App'x 247 (2d Cir. 2019) ("Although there is a presumption in favor of public access to judicial documents, in reaching its decisions above the Court did not need to reference or otherwise rely on the sealed exhibits or the redacted portions of Petitioners' application and memorandum of law. At best, therefore, the weight of any presumption is limited.").

Moreover, the Court notes that these documents contain false details from an arrest and investigation that later was dropped. These materials fall into the category of documents worth protecting, namely, "records used to gratify spite or promote scandal and files that might serve as reservoirs of libelous statements for press consumption." *Amodeo I*, 44 F.3d at 146 (internal quotations omitted). For this reason, and because the sensitive nature of these documents outweighs the presumption of public access, Respondent's motion to unseal as to the Subject Police Report and the Witt Witness Statement is denied.

Petitioner filed with the Court under seal at ECF No. 73 a version of the Witt Witness Statement that redacts the information he challenges. The Court approves the redactions, and the Court will unseal the redacted version of the Witt Witness Statement so that it is available on the public record.

### 2.   **COLP-Related Documents**

Respondent also seeks to unseal the letter from Lucas Bento, dated February 14, 2020, and its accompanying Exhibits 1, 2 and 3, that were filed under seal at ECF No. 51. The Court, in its discretion, finds that these COLP-related documents shall remain sealed.

These documents reflect what was received by Petitioner and his English criminal counsel from the COLP at or around the time of his arrest setting forth the details of his arrest. These documents were filed with the Court under seal and with an attorneys' eyes-only designation, pursuant to the Court's Order during oral argument. (*See* 2/10/20 Tr. at 48.) At oral argument, Respondent did not object to this designation. (*Id*.) Accordingly, the Court agrees with Petitioner that the Court should not amend its prior sealing Order after Petitioner reasonably relied upon it. *See S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001) ("Where there has been reasonable reliance by a party or deponent, a District Court should not modify a protective order granted under Rule 26(c).").

Moreover, these documents were not relied upon by the Court in making its decision on the application, which weakens the presumption of public access. *See Amodeo II*, 71 F.3d at 1052. Furthermore, there are countervailing privacy interests that weigh against public disclosure. The Court notes that Petitioner never was charged with any crime, and he has privacy interests in keeping these documents under seal.[18] *See, e.g. United States v. Basciano*, No. 03-CR-00929 (NGG), 2008 WL 123952, at *1 (E.D.N.Y. Jan. 11, 2008) ("I find that the presumption of public access usually accorded to judicial documents is diminished in this case by the countervailing law enforcement privileges and innocent-third-party privacy interests of the MCC staff that are implicated by the affidavits.").

---

[18] The Court credits the Declaration of Ben Rose regarding Petitioner's privacy rights. (*See* Rose Decl., ECF No. 72, ¶¶ 4-5.)

### 3.   **Respondent's Comparison Document And Respondent's Opposition**

Respondent also seeks to unseal an attachment to Respondent's February 18, 2020 letter (filed under seal at ECF No. 64-1), which is a document that compares the Subject Police Report and the COLP-related documents (the "Comparison Document"), as well as portions of Respondent's opposition to the motion for reconsideration that discuss the Comparison Document. (*See* Resp.'s Opp. Reconsid.) The Comparison Document was filed after the Court issued the Prior Opinion, and it was done so without invitation or permission by the Court. The Court did not consider the Comparison Document in reaching its decision, which weakens the presumption of public access. *See Amodeo II*, 71 F.3d at 1052. Furthermore, since the Comparison Document reflects contents of the Subject Police Report and the COLP-related documents, it shall be kept under seal for the same reasons as those documents are being kept under seal. Thus, the motion to unseal the Comparison Document (and portions of Respondent's opposition that discuss it) is denied.

### 4.   **Petitioner's Reply Memorandum**

Petitioner seeks to file under seal portions of his reply memorandum on the motion for reconsideration. The material that Petitioner seeks to redact from his reply memorandum is derived from and cites to documents discussed above, which the Court has found should remain under seal. (*See* Mot. to Seal at 1.) The Court has reviewed Petitioner's redactions (contained in ECF No. 68) and hereby approves them.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court rules on the pending motions, as follows:

1.  Petitioner's motion for leave to file his March 3, 2020 Declaration (ECF No. 58) is

    GRANTED *nunc pro tunc*;

2.  Petitioner's motion for reconsideration (ECF No. 59) is GRANTED; however, upon

    reconsideration, the Court adheres to its decision in the Prior Opinion to deny

    Petitioner's application;

3.  Respondent's motion to unseal (ECF No. 65) is DENIED; and

4.  Petitioner's motion to seal redacted portions of his reply memorandum (ECF No.

    71) is GRANTED.

**SO ORDERED.**

DATED:      New York, New York
            April 14, 2020

_____
STEWART D. AARON
United States Magistrate Judge