**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF SHERVIN PISHEVAR FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 1:19-MC-00503 (JGK) (SDA) |

**MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S MOTION TO SUPPLEMENT, AMEND AND/OR RENEW APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782**

Dated:  New York, NY
        September 8, 2020

Lucas V.M. Bento
lucasbento@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, Fl. 22
NEW YORK, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorney for Petitioner Shervin Pishevar*

## **TABLE OF CONTENTS**

**Page**

I.    PRELIMINARY STATEMENT ............................................................................. 1

II.    BACKGROUND ................................................................................................... 3

    A.   The Forged Police Report ......................................................................... 3

    B.   The Definers Lawsuit................................................................................ 4

    C.   This 1782 Application.............................................................................. 5

    D.   Exhaustion of Alternative Sources........................................................... 6

III.   ARGUMENT ........................................................................................................ 7

    A.   Petitioner Should Be Given Leave To Supplement, Amend And/or Renew His 1782 Application................................................................................................ 7

    B.   As This Court Has Found, Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782................................................................................................... 10

    C.   All the Discretionary Factors Under 28 U.S.C. § 1782 Favor Granting the Renewed Application................................................................................................ 11

    D.   Reporter's Privilege Has Been Overcome. ................................................ 12

CONCLUSION ............................................................................................................... 22

# TABLE OF AUTHORITIES

**Page**

<u>Cases</u>

*Aekyung Co. v. Intra & Co.*,
  2005 WL 1845088 (S.D.N.Y. Aug. 3, 2005) ........................................................... 8

*Matter of Application of Leret*,
  51 F. Supp. 3d 66 (D.D.C. 2014) ........................................................................... 9

*Matter of Application of O2CNI Co., Ltd.*,
  2014 WL 689082 (N.D. Cal. Feb. 21, 2014) .......................................................... 9

*In re Aso*,
  2019 WL 3244151 (S.D.N.Y. July 19, 2019) ....................................................... 10

*Ayyash v. Crowe Horwath LLP*,
  2018 WL 2976017 (S.D.N.Y. June 13, 2018) ...................................................... 10

*Baker v. F & F Inv.*,
  339 F. Supp. 942 (S.D.N.Y.), *aff'd*, 470 F.2d 778 (2d Cir. 1972) ..................... 19

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
  673 F.3d 76 (2d Cir. 2012) .................................................................................. 10

*Branzburg v. Hayes*,
  408 U.S. 665 (1972) ................................................................................. 20, 21, 22

*Cal Dive Offshore Contractors, Inc. v. M/V SAMPSON*,
  245 F. Supp. 3d 473 (S.D.N.Y. 2017) ................................................................ 10

*Carey v. Hume*,
  492 F.2d 631 (D.C. Cir. 1974) ............................................................................ 17

*United States v. Cutler*,
  6 F.3d 67 (2d Cir. 1993) ................................................................................ 18, 20

*Dangerfield v. Star Editorial, Inc.*,
  817 F. Supp. 833 (C.D. Cal. 1993) ......................................................... 13, 14, 19

*In re Departments of Antioquia, Caldas, Cundinamarca, & Valle del Cauca for Judicial
  Assistance in Obtaining Evidence in this Dist. under 28 U.S.C. §1782*,
  2017 WL 6557417 (S.D. Fla. Oct. 27, 2017) ........................................................ 9

*Dep't of Caldas v. Diageo PLC*,
  925 F.3d 1218 (11th Cir. 2019) ............................................................................. 9

*F. Marc Schaffel Prods., LLC v. TMZ Prods., Inc.*,
  2010 WL 11549388 (C.D. Cal. Dec. 16, 2010) .................................................... 13

*Garland v. Torre*,
  259 F.2d 545 (2d Cir. 1958) ................................................................................ 18

*In re Grand Jury Subpoena, Judith Miller*,
  438 F.3d 1141 (D.C. Cir. 2006) ..................................................................... 19, 21

*In Re Grand Jury Subpoenas*,
    438 F. Supp. 2d 1111 (N.D. Cal. 2006) ................................................... 13

*Hamlen v. Gateway Energy Servs. Corp.*,
    2018 WL 1568761 (S.D.N.Y. Mar. 29, 2018) ........................................ 10

*In re Hoteles City Express, Sociedad Anonima Bursatil De*,
    2018 WL 3753865 (N.D. Cal. Aug. 8, 2018) ........................................ 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ............................................................................ 11, 12

*Isaac v. City of New York*,
    2018 WL 1322196 (S.D.N.Y. Mar. 13, 2018) .......................................... 8

*Johnson v. Holder*,
    564 F.3d 95 (2d Cir. 2009) ...................................................................... 10

*Kara Holding Corp. v. Getty Petroleum Mktg., Inc.*,
    2002 WL 475125 (S.D.N.Y. Mar. 28, 2002) .......................................... 19

*Lee v. Dep't of Justice*,
    413 F.3d 53 (D.C. Cir. 2005) ............................................................ 17, 19

*Manolis v. Brecher*,
    634 F. App'x 337 (2d Cir. 2016) ............................................................. 10

*Masotto v. United States*,
    205 F.3d 1323, 2000 WL 19096 (2d Cir. 2000) ....................................... 8

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*,
    232 F. Supp. 3d 558 (S.D.N.Y. 2017) .................................................... 10

*Milione v. City Univ. of New York*,
    950 F. Supp. 2d 704 (S.D.N.Y. 2013), *aff'd*, 567 F. App'x 38 (2d Cir. 2014) ...................... 19

*In re Nat. Gas Commodity Litig.*,
    235 F.R.D. 199 (S.D.N.Y. 2005) ......................................................... 9, 18

*New York Times v. Gonzales*,
    459 F.3d 160 (2d Cir. 2006) .................................................................... 18

*Pasternack v. Shrader*,
    863 F.3d 162 (2d Cir. 2017) ...................................................................... 8

*Perron v. Dep't of Corrections*,
    2018 WL 3869878 (S.D.N.Y. July 11, 2018) ............................................ 7

*Persky v. Yeshiva Univ.*,
    No. 01 CIV. 5278, Dkt. No. 20 (S.D.N.Y. Feb. 24, 2004) ........................ 9

*In re Petroleum Prod. Antitrust Litig.*,
    680 F.2d 5 (2d Cir. 1982)............................................................. 12, 18, 19

*Quinio v. Aala*,
    344 F. Supp. 3d 464 (E.D.N.Y. 2018) .................................................... 21

*In re Ramaekers*,
   33 F. Supp. 2d 312 (S.D.N.Y. 1999)..................................................................... 18, 20

*People v. Rand*,
   136 Misc. 2d 1034, 519 N.Y.S.2d 606 (N.Y. Sup. Ct. 1987) ................................... 21

*In re Roche*,
   448 U.S. 1312 (1980).............................................................................................. 19

*Matter of Roche*,
   381 Mass. 624, 411 N.E.2d 466 (Mass. 1980)......................................................... 19

*S.E.C. v. Seahawk Deep Ocean Tech., Inc.*,
   166 F.R.D. 268 (D. Conn. 1996).............................................................................. 18

*United States v. Sanusi*,
   813 F. Supp. 149 (E.D.N.Y. 1992) .......................................................................... 18

*Schiller v. City of New York*,
   245 F.R.D. 112 (S.D.N.Y. 2007) ................................................................... 17, 18, 20

*United States v. Sterling*,
   724 F.3d 482 (4th Cir. 2013) ................................................................................... 21

*United States v. Treacy*,
   603 F. Supp. 2d 670 (S.D.N.Y. 2009)................................................................. 18, 20

*United States v. Treacy*,
   639 F.3d 32 (2d Cir. 2011)................................................................................. 18, 20

*Application of Waldholz*,
   1996 WL 389261 (S.D.N.Y. July 11, 1996) ............................................................. 20

*Zerilli v. Smith*,
   656 F.2d 705 (D.C. Cir. 1981) ........................................................................... 18, 19

## <u>Statutory Authorities</u>

28 U.S.C. § 1782............................................................................ 1, 3, 10, 11, 21
28 U.S.C. § 1782(a) ............................................................................................. 22
28 U.S.C. § 1782(b) ............................................................................................. 12

## <u>Rules and Regulations</u>

Fed. R. Civ. P. 15........................................................................................... 1, 3
Fed. R. Civ. P. 15(a) ........................................................................................... 8
Fed. R. Civ. P. 15(d) ........................................................................................... 7

Petitioner Shervin Pishevar respectfully submits this Memorandum of Law in support of his Motion to Supplement, Amend and/or Renew Application and Petition pursuant to 28 U.S.C. § 1782 ("Section 1782") and Federal Rule of Civil Rule 15 for an order authorizing him to obtain limited discovery from Respondent Mr. Marcus Baram, namely the identity and the location of the Confidential Source[1] (the "Renewed Application").

## I.    PRELIMINARY STATEMENT

Petitioner seeks to compel Respondent to identify his Confidential Source, who supplied Respondent with false information and a USB drive that contained a document purporting to be a police report created by the City of London Police but has since been definitively proven to be fake.  Petitioner seeks this information to initiate and maintain criminal and civil proceedings in England against the distributors (which includes the Confidential Source, whose identity is only known by Respondent) and creators of that forged document and other false information.

Not only has Respondent Mr. Baram (who is no longer listed on Fast Company's masthead)[2] continued to shield the Confidential Source from accountability for distributing a forgery, which harmed Petitioner's business relationships and reputation, Respondent has recently brazenly declared that he will potentially defy a court order requiring him to disclose his sources, as evidenced by the top publication on Respondent's Twitter profile:

"Have a tip? Get in touch. I always protect my sources (***even when threatened with jail time, served with a subpoena, etc.***)"[3]

---

[1] Capitalized terms not defined herein shall be defined as per Petitioner's Mem. of Law in Supp. of the Initial Application, ECF 4 ("Br.").
[2] Declaration of Lucas Bento dated September 8, 2020 ("Sept. 2020 Bento Decl.") Ex. A; *compare with* ECF 5-6 (listing Mr. Baram as a "Senior Editor").
[3] Sept. 2020 Bento Decl., Ex. B ("Pinned Tweet" published on July 30, 2020) (emphasis added).

1

In its February 18, 2020 Opinion and Order, ECF 52 ("Order"), the Court found that (1) Petitioner satisfied the statutory factors under Section 1782, (2) the first two *Intel* factors weigh in Petitioner's favor, (3) Petitioner had not circumvented foreign proof-gathering restrictions, and (4) the Application was not unduly burdensome. Order at 16-20. The Court then considered the Respondent's assertion of reporter's privilege and concluded that Petitioner had satisfied two of the three elements—the identity of the Confidential Source was found to be highly material, relevant, and critical to the maintenance of Petitioner's contemplated criminal and civil proceedings against the Confidential Source and others abroad. *Id.* at 22. The Court, however, found, and adhered to that decision upon reconsideration, that Petitioner failed to make a "clear and specific showing" that the identity of the Confidential Source was not obtainable from other available alternatives sources—namely Definers Corp., and two of its executives[4] (together "Definers Defendants") against whom Petitioner had filed, and subsequently dismissed, a lawsuit in California in which Petitioner alleged, upon information and belief, that the Definers Defendants were spreading certain false rumors about him; and two sources—a "Tech Reporter" and the "Pishevar Source"—that had provided information that led Petitioner to file the Definers Lawsuit. *Id.* at 22-24; April 14, 2020 Opinion and Order, ECF 77 ("Recons. Order" or "Reconsideration Order") at 9-11. On that basis alone, the Court found that Petitioner had not met his burden to pierce the reporter's privilege and denied his 1782 Application and directed Petitioner to seek appropriate discovery from those sources and any leads such discovery provides.

Petitioner has now done so. As confirmed by the sworn affidavits filed concurrently with this motion, none of those sources can shed any light on the provenance of the Forged Police

---

[4] While Petitioner's complaint initially identified "Definers Public Affairs" as a defendant as well, it is "not a separate legal entity from Definers Corp." Defs.' December 6, 2017 Mem. of Points & Authorities in Support of Their Special Mot. to Strike, *Pishevar v. Rhoades*, Case No. CGC-17-562305 (Cal. Super. Ct.).

Report, the identity of the Confidential Source, and the other false allegations the Confidential

Source communicated to Respondent.  As a result, Petitioner—now having thoroughly exhausted

those potential alternative sources and addressed the concerns raised by the Court in its April 14,

2020 Reconsideration Order—has no recourse but to renew his prior Application to request that

Respondent Baram disclose the name and location of the Confidential Source.  Respondent

remains the only identifiable person who can provide the identity of his Confidential Source, who

supplied him with the Forged Police Report and other false allegations, to Petitioner.  Pursuant to

Federal Rules of Civil Procedure 15, 28 U.S.C. §1782, and this Court's August 25, 2020 Order,

ECF 85, Petitioners supplements, amend, and renews his Application and submits this

Memorandum of Law focused on the narrow remaining issue of reporter's privilege.  Because

Petitioner has now exhausted the available sources, Petitioner respectfully requests that his

Renewed Application be granted.

## II.     BACKGROUND[5]

### A.     The Forged Police Report

As noted in prior briefing, after the City of London Police announced its investigation had

ended, in September 2017, Mr. Baram met with the Confidential Source at a café in Washington

DC at which time he received a USB drive containing a copy of a purported police report

supposedly issued by COLP at or around the time of the arrest ("Forged Police Report").  Br., ECF

4 at 5.  At the meeting, Mr. Baram also received further false information from the Confidential

Source, namely that Mr. Pishevar had been arrested by COLP's "Gold Command", that Mr.

Pishevar allegedly paid the alleged victim, and that the police at COLP were allegedly "outraged

over the situation" ("Other False Allegations").  Bento Decl. Ex. 11, ECF 5-11.  Despite

---

[5]   Petitioner refers the Court to prior briefing and cites only the most pertinent facts here. *See* Br., ECF 4; ECF 14; ECF 60.

confirmation from COLP between October 20 and October 23, 2017 that it did not use "documents such as [the Forged Police Report] and [did] not believe it to be authentic," and that there is no officer in COLP named "DC Brook," Watson Decl. ¶¶  17, 18 & Exs. 3-4, ECF 7-3 to 7-4,  Mr. Baram published an article referring to the Forged Police Report on November 8, 2017.  Watson Decl. ¶¶  17, 18 & Ex. 5, ECF 7-5.[6]

### B.      The Definers Lawsuit

Two days before Mr. Baram published about the Forged Police Report, on November 6, 2017, Petitioner filed a lawsuit in the Superior Court of the State of California, County of San Francisco, against Definers Corp., Definers Public Affairs, and two senior Definers executives, Matthew Rhoades, and Joseph Pounder ("Defendants"), with claims for defamation per se, and intentional interference with prospective economic relations ("Definers Lawsuit").[7]  In early November 2017, Petitioner received information from "Pishevar Source"[8] that Definers Corp. and one of their executives were spreading false allegations about Petitioner.  Pishevar Decl., ECF 58-1, ¶ 14.  None of those allegations dealt with an alleged rape or sexual assault, police report (real or fabricated), or the arrest.  Pishevar Decl. ¶¶ 15, 21, 22.

---

[6]   *See also* Goldstein Decl., ECF 27 ¶40 ("Based on my extensive experience in journalism, I would not have interpreted the October 20 letter from CoLP as Baram did. To me, the statement that the report did "not appear to be authentic" would immediately suggest that there was an issue with the authenticity of the report and that it should not be cited or included in any publication, simply as a matter of best practices of reporting. Indeed, Baram had approached CoLP to verify the forged document because he must have doubted its authenticity. Despite CoLP's statement, Baram wrote his story even though he himself and CoLP were at least suspicious of and at worst knew the document to be a forgery.").

[7]   *See* Pishevar Decl., Ex. 1. Respondent Baram published about Petitioner's Definers Complaint two days before he published the Article at issue here,  Baram Aff. Ex. 2, ECF 15-2 (Marcus Baram, *Tech investor Shervin Pishevar sues GOP oppo research firm, claiming that it conduct a "smear campaign" against him*, Fast Company, Nov. 6, 2017), yet still failed to argue that Definers was "an alternative source" in his briefs. Resp's Opp., ECF 14 at 13-16 (arguing only that Forbes, New York Post, and the COLP were "alternative sources"). Instead he raised *only at oral argument* that *Definers* could be an alternative source.  February 10, 2020 Hearing Transcript, ECF 47 ("H'rg Tr.") at 50:3-25.

[8]   Petitioner is filing a motion to redact portions of the Affdavit of Pishevar Source concurrently with this Renewed Application because the disclosure of Pishevar Source's identity may expose Pishevar Source to harm in his reputation. Petitioner has agreed to share the unredacted Affidavit of Pishevar Source with Respondent subject to a proposed confidentiality order being jointly filed this motion.

In early November 2017, Petitioner also received a phone call from Kara Swisher (previously identified as the "Tech Reporter") in which she asked him to comment on information she had received that he had allegedly made a payment to settle an alleged sexual assault claim in London and allegedly been involved with a prostitute in Europe.  Pishevar Decl. ¶ 16.

Based on the information from the Pishevar Source and the Tech Reporter, Mr. Pishevar filed the Definers Lawsuit.  The Definers Lawsuit Complaint does not contain any allegations about the Forged Police Report, an alleged rape, or any other false allegations related thereto, and was filed on November 6, 2017, before Respondent ever published about the Forged Police Report. If Petitioner believed that the Definers Defendants were also involved in these fabrications, it would have amended its complaint to include these allegations.  The fact that he did not is ample evidence—which has now been exhaustively confirmed—that the Definers Defendants, and that that lawsuit, had no relation with the allegations underlying his 1782 Application.

### C.    This 1782 Application

Following a prior Section 1782 application against Fast Company and Mansueto Ventures LLC, Petitioner brought this Application on October 31, 2019 to seek information from Respondent sufficient to identify Respondent's Confidential Source.  Petitioner's 1782 Application did not seek documents regarding an alleged "smear campaign" against him alleged in the Definers Lawsuit; rather he sought information specifically "relating to the Forged Police Report."  ECF No. 5-2 (draft subpoenas).[9]

Following oral argument, and post-argument submissions, on February 18, 2020, the Court issued an Opinion and Order denying Petitioner's Application.  The Court found that Petitioner

---

[9]  Specifically, Petitioner at oral argument narrowed his request to merely seek the name and location of Respondent's Confidential Source.  Hearing Tr. at 81:3-6.  Petitioner only requests the same information here in his Renewed Application.

had satisfied the statutory factors under Section 1782—namely that Respondent resides in this district, that Petitioner seeks discovery "for use" in foreign proceedings, and that Petitioner is an interested person in those proceedings.  Order, ECF 52 at 13-16.  The Court further found that the first two *Intel* factors weigh in Petitioner's favor.  *Id.* at 16-17.  While the Court found that Petitioner had not circumvented foreign proof-gathering restrictions or that the Application was unduly burdensome because it only sought to identify the name and location of the Confidential Source, the Court denied the application on the basis of reporter's privilege.  *Id.* at 18-24.

When analyzing the reporter's privilege, the Court found that the identity of the Confidential Source was highly material, relevant, and critical to the maintenance of the contemplated foreign proceedings, but concluded that Petitioner had "failed to make a clear and specific showing that the identity of the Confidential Source is not obtainable from other available sources."  Order at 22.

After Petitioner moved for reconsideration on various grounds, the Court granted reconsideration and considered a declaration submitted by Petitioner in support of his application nunc pro tunc, but otherwise adhered to its prior decision to deny the 1782 Application for failing to exhaust available alternative sources—namely the Definers Defendants, the Tech Reporter, and the Pishevar Source.  Recons. Order at 5-6, 9-11.

### D.    Exhaustion of Alternative Sources

Following the Court's denial of its application based on a failure to exhaust available sources, Petitioner has obtained sworn affidavits from each of the Definers Defendants, as well as the Pishevar Source and Tech Reporter—the purported alternative sources specifically identified by this Court in its April 14, 2020 Reconsideration Order.  None of those potential alternative sources had any information or knowledge about the identity of the Confidential Source, nor know anyone who may have such information or knowledge, or the provenance of the Forged Police

Report and the Other False Allegations. Having further exhausted the available alternatives, Petitioner now brings this motion to supplement, amend and/or renew his Application in light of evidence which clearly and convincingly shows that Petitioner has no available alternatives to obtain the information he seeks here.[10]

## III.   ARGUMENT

### A.   Petitioner Should Be Given Leave To Supplement, Amend And/or Renew His 1782 Application.

As stated in Petitioner's August 18, 2020 Letter Motion, this Court has authority on three separate grounds to consider Petitioner's Renewed Application.

#### 1.   Petitioner Should Be Given Leave To Supplement the 1782 Application Under Federal Rules of Civil Procedure 15(d).

Under Federal Rules of Civil Procedure 15(d), Petitioner may supplement his pleading by "setting out any … occurrence, or event that happened after the date of the [original] pleading," even if the original pleading may be defective. Fed. R. Civ. P. 15(d). In this Renewed Application, Petitioner has now set forth additional exhaustion efforts that took place after his initial 1782 Application and this Court's Reconsideration Order. *See infra* at 13-17; Affidavit of Joseph Pounder dated July 16, 2020 ("Pounder Aff."); Affidavit of Matthew Rhoades dated July 15, 2020 ("Rhoades Aff."); Affidavit of Kara Swisher dated June 18, 2020 ("Swisher Aff."); Affidavit of Pishevar Source dated July 24, 2020 ("Pishevar Source Aff."); *see also e.g.*, *Perron v. Dep't of Corrs.*, 2018 WL 3869878, at *1 (S.D.N.Y. July 11, 2018) (Rule 15(d) is proper "when a party

---

[10]   On August 18, 2020, Petitioner sought leave to reopen the case and supplement, amend and/or renew his prior 1782 Application with this new information on an expedited basis and limited briefing to conserve the court's and the parties' resources. Pet.'s August 18, 2020 Ltr., ECF 79. On August 20, 2020 Respondent opposed Petitioner's letter motion and on August 21, 2020 Petitioner filed a reply. Resp.'s August 20, 2020 Ltr. Response, ECF 81; Pet's August 21, 2020 Ltr. Reply, ECF 83. On August 22, 2020 (revised on August 24, 2020), this Court ordered that Petitioner's requests were "GRANTED IN PART AND DENIED IN PART" and that Petitioner could file "a formal motion to supplement, amend and/or renew his prior 1782 application" by September 8, 2020, and that Respondent's opposition shall be filed "within 14 days thereafter" and "[a]ny reply from Petitioner shall be filed within 7 days of the opposition." August 24, 2020 Order, ECF 85.

seeks to plead events which have happened since the date of the pleading sought to be supplemented" and such leave is freely granted except for limited circumstances of bad faith, undue prejudice, or futility).

For the reasons stated in Petitioner's August 18, 2020 Letter, ECF 79, August 21, 2020 Letter Reply, ECF 83, and in this brief, Petitioner has promptly sought information from alternative sources in good faith,[11] Respondent did not[12] and cannot show any undue prejudice, and, as further shown *infra* at 12-22, the Renewed Application is not futile and should be granted as Petitioner has now exhausted all "available alternative sources."

**2.    Petitioner Should Be Given Leave To Amend His 1782 Application Under Federal Rules of Civil Procedure 15(a).**

Under Rule 15(a), the Court "should freely give leave" for a party to amend its pleading "when justice so requires." Fed. R. Civ. P. 15(a); *see also Isaac v. City of New York*, 2018 WL 1322196, at *8 (S.D.N.Y. Mar. 13, 2018) ("Where the possibility exists that [a] defect can be cured, leave to amend should normally be granted"). The considerations under Rule 15(a) are similar to those under Rule 15(d). *See Masotto v. United States*, 205 F.3d 1323, 2000 WL 19096 at *2 (2d Cir. 2000) ("It is well-established that a district court should normally permit amendment absent futility, undue delay, bad faith or dilatory motive, or undue prejudice.")

In addition to reasons stated above under Rule 15(d), justice requires that the Court grant leave for Petitioner to amend his 1782 Application so that he would not be foreclosed from seeking justice in the United Kingdom against Forger(s) and Distributor(s) of the Forged Police Report.

---

[11]   Petitioner secured four sworn affidavits within four months of this Court's Reconsideration Order amid a global pandemic.  Respondent's assertion in their August 20, 2020 Letter Response (ECF 81 at 1) that Petitioner renewed this motion "more than five (5) months" rests an incorrect calculation of time since this Court's Reconsideration Order. ECF 83 at 2, n.2.

[12]   In its August 20, 2020 Letter Response, Respondent has not even attempted to show undue prejudice except for citing its legal costs in this matter.  ECF 81 at 2.  However, as the Second Circuit has recognized,  "denial of leave to amend, based solely on delay and litigation expense, [is] an abuse of discretion."  *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) .

the interest of justice. *See, e.g., Aekyung Co., Ltd. v. Intra & Co., Inc.*, 2005 WL 1845088, at *4 (S.D.N.Y. Aug. 3, 2005) (permitting leave to amend complaint "is in the interest of justice" where it would allow plaintiff to seek relief for fraudulent activities).

> ### 3.   Petitioner Should Be Given Leave to Renew His Application Under Discovery And Section 1782 Practices.

*First*, as stated in Petitioner's August 18, 2020 Letter, courts in and outside the district frequently allow supplemented or amended 1782 applications to cure a defect in the initial applications or to renew requests for discovery. *See* ECF 79 at 3, n.8; *see also, e.g., Matter of Application of O2CNI Co., Ltd*., 2014 WL 689082, at *1 (N.D. Cal. Feb. 21, 2014) (allowing an amended application when the initial application was too broad and not sufficiently targeted); *In Matter of Application of Leret*, 51 F. Supp. 3d 66, 71 (D.D.C. 2014) (giving petitioner leave to renew application if the respondent does not voluntarily respond to foreign document requests); *In re Departments of Antioquia, Caldas, Cundinamarca, & Valle del Cauca for Judicial Assistance in Obtaining Evidence in this Dist. under 28 U.S.C. §1782*, 2017 WL 6557417, at *1 (S.D. Fla. Oct. 27, 2017), *aff'd sub nom. Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218 (11th Cir. 2019) (granting the petitioner opportunity to submit an amended application).

*Second*, where courts previously denied discovery on the basis of reporter's privilege due to the availability of alternative sources, they commonly grant the renewed discovery motions after the moving parties have sought information from the identified sources. *See* Aug. 18, 2020 Ltr., ECF 79 at 3, n.8; *see, e.g., In re Nat. Gas Commodity Litig.*, 235 F.R.D. 199, 216-18 (S.D.N.Y. 2005) (granting renewed motion to compel after plaintiffs followed the Court's suggestion to first seek discovery from defendants); *Persky v. Yeshiva Univ.*, No. 01 CIV. 5278, Dkt. No. 20 (S.D.N.Y. Feb. 24, 2004) (granting renewed motion to compel after exhaustion efforts).

**B.      As This Court Has Found, Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782.[13]**

A Section 1782 application must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

In its February 18, 2020 Order, this Court has found that Petitioner satisfies all three statutory requirements. Order at 13-16. In particular, this Court found that (1) Respondent "is a resident of New York" and "is located in this district," Order at 13; (2) Petitioner "has made the required de minimis showing that the information sought is 'for use' in the reasonably contemplated civil and criminal foreign proceedings," Order at 15; and (3) Petitioner is an "interested person" for both the contemplated civil lawsuit and criminal proceedings, Order at 16. As this Court has found, Petitioner satisfies all the statutory requirements of 28 U.S.C. § 1782.

---

[13]  The Court need not reconsider its prior findings on 28 U.S.C. § 1782 statutory requirements or discretionary factors apart from reporter's privilege. The court's prior findings are entitled to the weight of the law of the case. *See, e.g.*, *Manolis v. Brecher*, 634 F. App'x 337, 338 (2d Cir. 2016)("'[T]he law of the case doctrine forecloses reconsideration of issues that were decided … during prior proceedings' in the same case" (internal citations omitted)); *Hamlen v. Gateway Energy Servs. Corp.*, 2018 WL 1568761, at *1 (S.D.N.Y. Mar. 29, 2018) (previous rulings by a court on an issue should generally be adhered to in subsequent stages unless there is "intervening change of law, availability of new evidence, or the need to correct a clear error or prevent manifest injustice."); *Johnson v. Holder*, 564 F.3d 95, 99-100 (2d Cir. 2009) (same); *Cal Dive Offshore Contractors, Inc. v. M/V SAMPSON*, 245 F. Supp. 3d 473, 485 (S.D.N.Y. 2017) ("the Second Circuit has repeatedly stated [courts in this Circuit] will not depart from the law of the case absent 'cogent' or 'compelling' reasons." (internal quotations omitted)); *MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 571 (S.D.N.Y. 2017) ("'mere disagreement with the Court's analysis' does not constitute a compelling reason to depart from the law of the case."). When considering renewed or supplemented 1782 applications, courts take as granted those statutory requirements or discretionary factors that are not impacted by any changes in the renewed applications. *See, e.g.*, *In re Aso*, 2019 WL 3244151 at *2 (S.D.N.Y. July 19, 2019) (only considering factors that were the "only pertinent change" between the original and supplemental applications); *Ayyash v. Crowe Horwath LLP*, 2018 WL 2976017, at *2 (S.D.N.Y. June 13, 2018) (on a refiled application, only considering those statutory factors that were not satisfied from the first application); *In re Hoteles City Express, Sociedad Anonima Bursatil De,* 2018 WL 3753865, at *1-2 (N.D. Cal. Aug. 8, 2018) (listing the court's previous findings that the 1782 application satisfies the statutory requirements when deciding on an amended application).

**C.      All the Discretionary Factors Under 28 U.S.C. § 1782 Favor Granting the Renewed Application.**

Once the statutory requirements are satisfied, a court exercises its discretion, considering the four *Intel* factors: (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad;" (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;" (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States;" and (4) whether the request is "unduly intrusive or burdensome." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).  All four factors favor granting the Renewed Application.

**1.      As This Court Has Found, The First Two *Intel* Factors Favor Granting the Renewed Application.**

This Court has found that "the first two *Intel* factors weigh in Petitioner's favor" because (1) Respondent will not be a party to the contemplated proceedings in England, and (2) the English courts will be receptive to the evidence obtained through this 1782 application.  Order at 16-17. There is no pertinent change to facts relating to the first two *Intel* factors in this Renewed Application.  Accordingly, they weigh in favor of granting the Renewed Application.

**2.      The Third and Fourth *Intel* Factors Favor Granting the Renewed Application.**

On the third and fourth *Intel* factors, the Court's only remaining concern in the initial Application is reporter's privilege. On the third factor, this Court explicitly rejected two arguments from Respondent that Petitioner is attempting to circumvent foreign proof-gathering restrictions in the U.K. or "sidestep discovery mechanisms" in the U.K.  Order at 18-19.  For the initial

application, the Court only found that the third *Intel* factor weighed against granting the application, "[b]ecause it [found] that the reporter's privilege ha[d] not been overcome" at the time.  Order at 19-20.

On the fourth *Intel* factor, this Court found that the limited request "is not unduly burdensome" but only found that it would be "unduly intrusive" because of reporter's privilege. Order at 20.

As explained *infra* at Section III.D, the reporter's privilege has now been overcome because of Petitioner's exhaustion efforts.  As a result, both the third and fourth *Intel* factors now weigh in favor of granting the Renewed Application.

> ### D.     Reporter's Privilege Has Been Overcome.

Under Second Circuit law, the reporter's privilege does not apply where the party seeking discovery can show that the information sought is (1) highly material and relevant, (2) necessary or critical to the maintenance of the claim, and (3) not obtainable from other available sources.  *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 7 (2d Cir. 1982).  This Court has already found that the first two requirements have been met.  Order, ECF 52, at 22 ("The Court finds that the identity of the Confidential Source is highly material and relevant and is critical to the maintenance of the contemplated civil and criminal proceedings").  Within the reporter's privilege analysis, the Court's only reservation concerned Petitioner's showing with regard to the exhaustion of available sources.  Order at 22; Recons. Order, ECF 77, at 9.

In light of this Court's April 14 Reconsideration Order, Petitioner has now obtained four sworn declarations from Tech Source, Pishevar Source, and Definers Defendants, and therefore exhausted the available sources identified by this Court.  28 U.S.C. §1782(b) ("This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal

before any person and in any manner acceptable to him."); *see also F. Marc Schaffel Prods., LLC v. TMZ Prods., Inc.*, 2010 WL 11549388, at \*4 (C.D. Cal. Dec. 16, 2010) (exhaustion of alternative sources would be satisfied by securing declarations); *Dangerfield v. Star Editorial, Inc.*, 817 F. Supp. 833, 838-39 (C.D. Cal. 1993) (exhaustion satisfied through obtaining sworn statements where witnesses lacked personal knowledge); *In Re Grand Jury Subpoenas*, 438 F. Supp. 2d 1111, 1120 (N.D. Cal. 2006) (declarations submitted by parties on their handling of the grand jury materials sufficient to rule them out as alternative sources for the leak of same materials).

### 1. Petitioner Has Exhausted Definers Defendants As Available Sources

In its Reconsideration Order, faced with declarations filed by Definers Defendants in the Definers Lawsuit denying involvement in any purported COLP police report, this Court was concerned that (1) "none of the Definers Defendants denies knowledge about who may have seen or been involved with distribution of a police report or a purported police report involving Petitioner," and that (2) Petitioner did not state that "he asked Definers Defendants" if they were "aware of the identity of the Confidential Source, or if they knew anyone who was so aware." Recons. Order at 9-10.

Petitioner has now obtained sworn declarations, including on behalf of Definers, that affirms that Definers Defendants do not have any such knowledge or information. Joseph Pounder, the President of Definers Corp. (now known as Bullpen Strategy), has searched both his own documents, and Definers' documents, and stated under the penalty of perjury both on his own behalf and on the behalf of Definers that "Neither [he] nor Definers know who may have created, seen, or distributed the Police Report." Pounder Aff. ¶ 7. Nor does he or Definers "know of anyone who may know someone who created or distributed or have seen a Police Report, …or know anyone who was involved in the creation or distribution of the Police Report." *Id*. Neither Mr. Pounder nor Definers has any knowledge "about the identity or location of Baram's

13

Confidential Source" or any knowledge of "anyone who may have any such information."
Pounder Aff. ¶ 8.  Similarly, Mr. Pounder and Definers do not have any knowledge of what the
Confidential Source told Baram about Petitioner, and do not know "of anyone who may have" any
such information or knowledge.  Pounder Aff. ¶ 9.  Furthermore, neither Mr. Pounder nor Definers
know the Other False Allegations and neither of them "have any documents or information
referring to or reflecting" the Other False Allegations, or "know of anyone who may have any
[such] information and knowledge.  *Id*.  As Pounder states, he and Definers "simply have no
information whatsoever about this matter."  *Id*.

　　Mr. Rhoades (formerly CEO of Definers)'s sworn declaration also affirms that he "do[es]
not know who may have created, seen, or distributed the Police Report and do not know anyone
who may know someone who created or distributed or have seen a Police Report referring or
relating to" Petitioner.  Rhoades Aff. ¶ 7.  Mr. Rhoades also affirms that he "do[es] not know and
ha[s] no knowledge about the identity or location of Baram's Confidential Source" and "nor [does
he] know of anyone who have any [such] information or knowledge."  Rhoades Aff. ¶ 8.  Mr.
Rhoades also does not have any knowledge as to what the Confidential Source told Baram,
including the Other False Allegations, and does not "have any documents or information referring
to or reflecting" the Other False Allegations.  Rhoades Aff. ¶ 9.  As with Mr. Pounder,  he "simply
ha[s] no information whatsoever about this matter."  *Id*.

　　Their affidavits clearly and convincingly show that neither Mr. Pounder, Mr. Rhoades, nor
Definers can shed any light on the identity and location of Baram's Confidential Source and neither
of them were able to provide any "leads" as to anyone who may provide such information.  *See
Dangerfield*, 817 F. Supp. at 838 (C.D. Cal. 1993) (exhaustion satisfied through obtaining sworn
statements where witnesses lacked personal knowledge).

### 2.    Petitioner Has Exhausted The Tech Reporter and The Pishevar Source As Available Sources

In the Reconsideration Order, this Court found insufficient Petitioner's statement that he "believe[s]" that the Tech Reporter "would invoke the reporter's privilege to shield the name of her source who told her" the false sexual assault allegation.  Recons. Order at 10 (citing Pishevar Decl., ECF 58-1 ¶¶ 30-31).  The Court stated that "Petitioner does not state that he asked his own sources (i.e., the Pishevar Source and the Tech Reporter) if they were aware of the identity of the Confidential Source, or if they knew anyone who was so aware."  Recons. Order at 10.  Petitioner has now done so.

### (a)    The Tech Reporter

The Tech Reporter, Kate Swisher, has declared under the penalty of perjury that she "know[s] nothing about the Purported Police Report or the other information requested."  Swisher Aff. ¶ 1.  Ms. Swisher stated that she "do[es] not have any knowledge or information about a Purported Police Report or any other document … that relates to an arrest of or investigation into" Petitioner.  Swisher Aff. ¶ 4.  Ms. Swisher also "do[es] not have any knowledge or information about any of … Baram's confidential sources, including [the Confidential Source]."  Swisher Aff. ¶ 5.  In addition, Ms. Swisher "do[es] not have any knowledge or information concerning or relating to" the allegations that the Confidential Source passed to Baram, including the Other False Allegations.  Swisher Aff. ¶ 6.  Furthermore, Ms. Swisher is not able to identity or locate anyone who knows the Confidential Source, does not have "any information about, anyone that may know or have information about who created or distributed the [Forged] Police Report," and does not have "any knowledge or information about, anyone who may know or have information about any of the [Other False Allegations]" that the Confidential Source shared with Baram.  Swisher Aff. ¶¶ 5-7.

While she "recall[s] having a conversation" with Petitioner "[i]n the fall of 2017" in which she told him "something to the effect of 'I heard you [i.e. Mr. Pishevar] had a bad date in London,'" she "do[es] not recall how [she] learned that information" or "any other details relating to or concerning" the information.  After searching documents in her possession, custody and control, she was also unable to locate "any document or information related to how [she] learned the ... [i]nformation or of any further details relating to or concerning" the information. Swisher Aff. ¶ 8.  Nor was Ms. Swisher able to locate through a search of documents in her possession, custody or control, any document or information to identify the Confidential Source or the provenance, including any purported creators or purveyors of the Forged Police Report or the Other False Allegations passed to Baram by the Confidential Source.  Swisher Aff. ¶ 9.

**(b)      The Pishevar Source[14]**

The Pishevar Source has also affirmed under the penalty of perjury that he "know[s] nothing about the Purported Police Report or the other information requested."  Pishevar Source Aff. ¶ 1.  The Pishevar Source "do[es] not have any knowledge or information about a Purported Police Report or any other document … that relates to an arrest or investigation into Mr. Pishevar" and "do[es] not have any knowledge or information about any of … Baram's confidential sources" including the Confidential Source.  Pishevar Source Aff. ¶¶ 6-7.  Similarly, the Pishevar Source does not have "any information about, anyone that may know or have information about who created, distributed, or have seen the Purported Police Report" or "any knowledge or information to identify or locate anyone who may know or have information about who [the Confidential Source] is." Pishevar Source Aff. ¶¶ 7, 9.  In addition, the Pishevar Source "do[es] not have any

---

[14] Petitioner has filed concurrently herewith a letter motion to seal the Affidavit of Pishevar Source dated July 24, 2020 to protect the Pishevar Source from the reputational harm he will suffer from the disclosure of his identity. Petitioner will therefore refer to the affidavit as "Pishevar Source Aff."

knowledge or information about any allegations relating to [Petitioner's] arrest or any investigation

that may have followed his arrest," including any Other False Allegations that the Confidential

Source shared with Baram. Pishevar Source Aff. ¶ 8.[15]

Indeed, the Pishevar Source stated that he does not have "any information or knowledge

about any purported 'smear campaign' against" Petitioner "by any executive or employee of

Definers Corp. or any of its affiliated companies, or anyone else," including any of the allegations

allegedly made against Petitioner.   Pishevar Source Aff. ¶ 10.   Therefore, the Tech Reporter and

the Pishevar Source cannot shed any light on the identity and location of the Confidential Source,

nor on anyone who knows the Forger(s) or Distributor(s) of the Forged Police Report and Other

False Allegations.

### 3.    There Are No Other Available Sources

There are no other available sources Petitioner is required to exhaust.[16]   And a substantial

number of courts have found that the exhaustion requirement is met without taking any

---

[15] As consistent with March 3, 2020 Pishevar Declaration, ECF 58-1, the Pishevar Source refuses to corroborate any purported allegations against Definers that he shared with Petitioner in November 2017.  *See* Pishevar Source Aff. ¶ 10.

[16]   Respondents have argued that Petitioner's "law firms, advisors and others who had access to accurate facts in it whether from Petitioner himself or otherwise" are available sources. Resp.'s Aug. 20, 2020 Ltr. Response, ECF 81 at 2, n.2.  Not only is this an unreasonable and preposterous argument, it also has no basis in fact.  There is no basis for Respondent's previously retracted allegation that Petitioners' own advisors may have shared information to the Confidential Source or anyone else for that matter.  Hearing Tr. at 47:20-23 ("THE COURT: Do you have anything other than rank speculation to suggest that Mr. Pishevar's lawyers [in the U.K.] are looking to be disbarred and jailed? MR. BUTTERFIELD: I don't.").  The fabricated details in the Forged Police Report do not match up against the details of the arrest, further debunking this baseless allegation.  Hearing Tr. 48:23-25 ("THE COURT: … If the *details* don't line up, then your argument is not very good, right?"); ECF 51-3 (filed under seal); Petitioner's March 24, 2020 Reply Mem. in Supp. of Mot. for Recons., ECF 69 at 9-10 (redacted from public filing). Recons. Order at 13 (the Forged Police Report "contain[s] false details from an arrest and investigation that was later dropped" and "fall into the category of documents worth protecting, namely, 'records used to gratify spite or promote scandal and files that might serve as reservoirs of libelous statements for press consumption.'").  As stated in Petitioner's August 21, 2020 Letter Reply, Petitioner reserves all rights to file a sanctions motion against Respondent for, inter alia, repeating such unfounded allegations.  But in any event, the exhaustion requirement cannot be triggered by such unreasonable and far-fetched "sources."  *See, e.g., Lee v. Dep't of Justice*, 413 F.3d 53 (D.C. Cir. 2005) (not required to exhaust "a lengthy list of possible [leakers] … spanning six pages" because litigants "need not be made to carry wide-ranging and onerous discovery burdens where the path is … ill-lighted." (internal quotation omitted)); *Carey v. Hume*, 492 F.2d 631, 638 (D.C. Cir. 1974) (not required to exhaust all employees at the national office of United Mine Workers of America where the sources are identified as employees there, because exhaustion requirement cannot be "invoked by guide marks as vague as these."); *Schiller v. City of New York*, 245 F.R.D. 112, 120 (S.D.N.Y. 2007) (not requiring

---

depositions.  *See, e.g.*, *In re Nat. Gas Commodity Litig*. 235 F.R.D. 199, 204, 216-17 (S.D.N.Y. 2005) (incomplete data produced by defendants in response to discovery requests sufficient to exhaust "available" sources); *United States v. Cutler*, 6 F.3d 67, 71-73 (2d Cir. 1993) (noting the tripartite standard and finding that exhaustion was met without any depositions); *N. Y. Times Co. v. Gonzales*, 459 F.3d 160 (2d Cir. 2006) (finding exhaustion was met solely based on the government's affidavit that it has "reasonably exhausted alternative investigative means" in a national security context); *In re Ramaekers*, 33 F. Supp. 2d 312, 316 (S.D.N.Y. 1999) (exhaustion requirement was met under the tripartite test without any depositions because the "audio tape" sought is the only contemporaneous recording); *S.E.C. v. Seahawk Deep Ocean Tech., Inc.*, 166 F.R.D. 268, 272 n.9 (D. Conn. 1996) (the tripartite test was satisfied despite no deposition taken); *Schiller*, 245 F.R.D. at 120 (no depositions required before compelling disclosure of completed questionnaires); *United States v. Treacy*, 603 F. Supp. 2d 670, 673 (S.D.N.Y. 2009), *aff'd*, 639 F.3d 32, 43 (2d Cir. 2011) (no deposition required before compelling discovery from the reporter because the reporter "is the only person who can confirm that defendant actually made the statements that were attributed to him."); *United States v. Sanusi*, 813 F. Supp. 149, 160 (E.D.N.Y. 1992) (requiring no depositions under the tripartite test in compelling videotape prepared by news network).  As a practical matter, deposing the Definers Defendants, Tech Source, and Pishevar Source would be futile and have the same net result as the sworn affidavits submitted in support of the Renewed Application: those sources have no information or knowledge to help Petitioner

---

"subpoenaing and deposing the hundreds of nonparty witnesses who filled out the questionnaire" before compelling disclosure of completed questionnaires); *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5, 8, 9 (2d Cir. 1982) (exhaustion requirement must be "reasonable"); *Zerilli v. Smith*, 656 F.2d 705, 713–14 (D.C. Cir. 1981) (the alternative must be a "reasonable" one (emphasis added)); *Garland v. Torre*, 259 F.2d 545, 551 (2d Cir. 1958) (ordering disclosure where plaintiff's "reasonable efforts" to identify an informant were unsuccessful even though she could potentially have learned the informant's identity by further discovery proceedings directed to CBS) (emphasis added).

identify the Confidential Source, or the creators and distributors of the Forged Police Report and Other False Allegations.[17]

Any suggestion in *In re Petroleum* that a certain number of depositions is required relies on a D.C. Circuit decision that has later been clarified by the D.C. Circuit.[18]  *Compare In re Petroleum*, 680 F.2d at 7, n.11 (citing *Zerilli*, 656 F.2d at 714) *with Lee*, 413 F.3d at 59-61 (interpreting *Zerilli* and other precedents and finding that the requirement for exhaustion "must be determined on a case-by-case basis").

Moreover, courts have pierced the reporter's privilege where the reporter was the only witness to the alleged unlawful behavior.  *See, e.g.*, *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1175 (D.C. Cir. 2006) (Tatel, J., concurring) (recognizing that exhaustion will be easily satisfied in leak cases, because "the great majority of leaks will likely be unprovable without evidence from either leaker or leakee"); *Cutler*, 6 F.3d at 73-75 (exhaustion requirement was met

---

[17]   *See Dangerfield v. Star Editorial, Inc.*, 817 F. Supp. 833, 835, 838 (C.D. Cal. 1993) (finding no deposition needed where witnesses affirmed in sworn statements that they had no "personal knowledge of any of the incidents described in the [news article]."). Any subpoena duces tecum would likewise be futile as the sources already confirmed they have no information or knowledge about these matters. Pounder Aff. ¶¶ 6-9; Rhoades Aff. ¶¶ 6-9; Swisher Aff. ¶¶ 4-9; Pishevar Source Aff. ¶¶ 6-10; *see also Milione v. City Univ. of N. Y.*, 950 F. Supp. 2d 704, 714 (S.D.N.Y. 2013), *aff'd*, 567 F. App'x 38 (2d Cir. 2014) (precluding a deposition when the proposed deponent affirmed by affidavit that he had no "personal knowledge" of the underlying facts); *Kara Holding Corp. v. Getty Petroleum Mktg., Inc*., 2002 WL 475125, at *2 (S.D.N.Y. Mar. 28, 2002) ("requested witnesses need not be deposed if they provided affidavits stating they have no knowledge of the facts").

[18]   While it also cites to *In re Roche*, 448 U.S. 1312, 1316 (1980), as the D.C. Circuit recognized, *Roche* "is not an opinion of the Supreme Court, it is an *in-chambers opinion of a single justice granting a stay*" pending a certiorari petition, and describing *Roche* as requiring 65 depositions "is inaccurate to a point approaching deceptiveness." *Lee v. Dep't of Justice*, 413 F.3d 53, 60 (D.C. Cir. 2005). There was no subsequent order from the Supreme Court granting certiorari, and a panel of Massachusetts Supreme Judicial Court later *affirmed* the finding of contempt against Roche. *Matter of Roche*, 381 Mass. 624, 640, 411 N.E.2d 466, 477 (Mass. 1980).   In any event, *In re Roche* and *In re Petroleum Prod. Antitrust Litig.* and other Second Circuit cases denying motion to compel can be readily distinguished.  *See In re Roche*, 448 U.S. at 1316 (suggesting exhaustion of an identified list of witnesses that the reporter conceded to have *contained* the sources); *In re Petroleum Prod. Antitrust Litig.*, 680 F.2d 5 at 8 (2d Cir. 1982) (only requiring additional depositions of defendants because there was "no indication that **anyone** was asked the simple question "Have you ever communicated pricing information to Platt's [the publication]?" (emphasis added)); *Baker v. F & F Inv.*, 339 F. Supp. 942, 945 (S.D.N.Y.), *aff'd*, 470 F.2d 778 (2d Cir. 1972) (requiring exhaustion only because a search of local title and mortgage records could reveal the identity of the real estate agent and noting that the reporter's privilege under the First Amendment is qualified precisely because "the public is given *no corresponding protection* that the reporter is reporting his source correctly or *that the 'source' is not a subterfuge*.") (emphasis added).

where the only available source is the reporter and TV station); *Application of Waldholz*, 1996 WL 389261, at *4 (S.D.N.Y. July 11, 1996) (the reporter was the "only source qualified to testify fully and accurately as to his own reportorial practices"); *United States v. Treacy*, 603 F. Supp. 2d at 673 (the reporter in question was the "only available witness" who could confirm the statements that the defendant made to him); *In re Ramaekers*, 33 F. Supp. 2d at 316 (exhaustion requirement was met because the "audio tape" sought is the only contemporaneous recording).[19]  Petitioner is in a similar situation.   A fabrication of a police report based on false and salacious details manufactured by the Forger left very little hint, let alone "paper trail []or smoking gun" as to the identity of the Forger or Distributor.  Mr. Baram is also the *only* source available to disclose any information as to *who* supplied the Forged Police Report and other false information *to him*.[20] Petitioner has exhausted all potential leads that he has, and none of them shed any light as to the identity of the Confidential Source or any underlying allegations in this 1782 Application.

Any First Amendment concerns have much more limited weight when its protections are purportedly invoked to hinder the investigation of a crime.  *See Branzburg v. Hayes*, 408 U.S. 665, 691-92 (1972).  The Supreme Court noted in *Branzburg* that:

> **"[W]e cannot seriously entertain the notion that the First Amendment
> protects a newsman's agreement to conceal the criminal conduct of his source**,
> or evidence thereof, **on the theory that it is better to write about crime than to
> do something about it. Insofar as any reporter in these cases undertook not to**

---

[19]  In any event, courts often do not require exhaustion of sources that are likely to only offer indirect or unreliable evidence as to information sought. *See, e.g.*, *Schiller*, 245 F.R.D. at 120.

[20]  Further, as explained during oral argument and prior briefing, Petitioner also seeks the identity of the Confidential Source to initiate and maintain proceedings against that *specific Confidential Source* for the wrongs *that source* committed during its meeting with Respondent at the café in Washington D.C.  ECF 4 at 13-15; H'rg Tr. 28:8-25; ECF 60 at 11.  Since Mr. Baram is the *only* contemporaneous witness of that wrongdoing, he is the only person with personal knowledge of what happened at that cafe, and thus of the identity of the Confidential Source.  *In re Ramaekers*, 33 F. Supp. 2d 312, 316 (exhaustion requirement was met because the "audio tape" sought is the only contemporaneous recording).

**reveal or testify about the crime he witnessed, his claim of privilege under the First Amendment presents no substantial question**. The crimes of news sources are no less reprehensible and threatening to the public interest when witnessed by a reporter than when they are not … It is apparent … from our history and that of England, that concealment of crime and agreements to do so are not looked upon with favor."

*Id.* at 692, 697 (emphasis added); *see also United States v. Sterling*, 724 F.3d 482, 504 (4th Cir. 2013) (holding that reporter's privilege protections yield where source has engaged in criminal conduct); *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141, 1147 (D.C. Cir. 2006) (quoting *Branzburg* that "it is obvious that agreements to conceal information relevant to the commission of crime have very little to recommend them from the standpoint of public policy" and that there is no "First Amendment exemption from an ordinary duty of all other citizens to furnish relevant information to a grand jury performing an important public function."); *Quinio v. Aala*, 344 F. Supp. 3d 464, 476 (E.D.N.Y. 2018) ("Courts throughout the country have found that the public policy interest at stake, the reporting of possible crimes to the authorities, is one of the highest order" (citing *Branzburg*) (internal quotations omitted)); *People v. Rand*, 519 N.Y.S.2d 606, 608 (N.Y. Sup. Ct. 1987) ("at least in the context of a Grand Jury subpoena, the burden of proof imposed on [piercing reporter's privilege] should not be inordinately 'heavy.'").  Because 28 U.S.C. § 1782 explicitly provide for obtaining discovery in the U.S. for foreign "criminal investigations," there is no reason why a reporter should be afforded more protection when the criminal conduct is subject to foreign rather than U.S. criminal proceedings.  *See* 28 U.S.C. § 1782(a) (". . . including criminal investigations conducted before formal accusation").

21

Per the declaration of Lord MacDonald QC—the former Director of Public Prosecutions of England & Wales—the Confidential Source and other Forger(s) and Distributor(s) of the Forged Police Report have committed crimes under English law in violations of, inter alia, Sections 1-4 of the Forgery and Counterfeiting Act 1981, Section 2 of the Fraud Act 2006, Sections 6-7 of the Fraud Act 2006 and Section 1 of the Malicious Communications Act 1988.  MacDonald Decl., ECF 6 ¶¶ 26-32.  This Court also found that the 1782 Application is for use for such English criminal proceedings.  Order, ECF 52 at 15.  The Confidential Source should not be allowed to hide his criminal conduct behind a cloak of privilege simply because he sought out the press in the commission of his crimes.  The First Amendment does not protect Respondent's "agreement to conceal the criminal conduct of his sources."  *Branzburg*, 408 U.S. at 692.  As Professor Tom Goldstein—a renowned journalist who sat on the Board of the Pulitzer Prize and former Dean of two of the nation's top journalism schools (Columbia and Berkeley)—noted in his declaration, "[o]nce it became clear that the source was trafficking in a forged document, any obligation to protect that source was extinguished."   Goldstein Decl., ECF 27 ¶45.  Accordingly, "Mr. Baram should be required to disclose the identity of his confidential source." *Id.* ¶46.

## CONCLUSION

Based on the foregoing, Petitioner respectfully requests that the Court grant Petitioner's Motion to Supplement, Amend and/or Renew his 1782 Application, and order Respondent to disclose the identity and location of the Confidential Source.

Date: September 8, 2020

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

*/s/ Lucas V.M. Bento*

Lucas V.M. Bento
lucasbento@quinnemanuel.com
51 Madison Avenue, Fl. 22
NEW YORK, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

23