**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF SHERVIN PISHEVAR FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 19-mc-00503-RA |

**MEMORANDUM OF LAW IN OPPOSITION TO PETITIONER'S MOTION TO SUPPLEMENT, AMEND AND/OR RENEW APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. §1782**

TABLE OF AUTHORITIES ....................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF RELEVANT FACTS ...................................................................................3

ARGUMENT ............................................................................................................................7

I.      THE MOTION SHOULD BE DENIED BECAUSE THE AFFIDAVITS
        SUBMITTED BY PETITIONER CONTAIN NUMEROUS INCONSISTENCIES
        AND OMISSIONS THAT PETITIONER HAS FAILED TO EXPLORE ........................7

II.     THE MOTION SHOULD BE DENIED BECAUSE PETITIONER HAS MADE
        NO EFFORT TO EXHAUST OTHER OBVIOUS SOURCES OF EVIDENCE
        CONCERNING THE FORGED POLICE REPORT .......................................................12

III.    THE CONDUCT OF NEITHER BARAM NOR THE CONFIDENTIAL
        SOURCE SUPPORTS INVASION OF BARAM'S REPORTER'S PRIVILEGE...........14

CONCLUSION.........................................................................................................................16

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Branzburg v. Hayes*,
    408 U.S. 665 (1972) ................................................................................................15, 16

*Dangerfield v. Star Editorial, Inc.*,
    817 F. Supp. 833 (C.D. Cal. 1993) ...............................................................................11

*In re Grand Jury Subpoena, Judith Miller*,
    438 F.3d 1141 (D.C. Cir. 2006) ....................................................................................15

*Kara Holding Corp. v. Getty Petroleum Mktg.*,
    No. 99 Civ. 0275 (RWS), 2002 WL 475125 (S.D.N.Y. Mar. 28, 2002) ......................12

*Lee v. DOJ*,
    413 F.3d 53 (D.C. Cir. 2005) .........................................................................................12

*Milione v. City Univ. of N.Y.*,
    950 F. Supp. 2d 704 (S.D.N.Y. 2013) ...........................................................................11

*N.Y. Times Co. v. Gonzales*,
    459 F.3d 160 (2d Cir. 2006) ..........................................................................................11

*People v. Rand*,
    519 N.Y.S.2d 606 (1987) ...............................................................................................15

*In re Petroleum Prod. Antitrust Litig.*,
    680 F.2d 5 (2d Cir. 1982) ..............................................................................................16

*Quinio v. Aala*,
    344 F. Supp. 3d 464 (E.D.N.Y. 2018) ...........................................................................16

*In re Ramaekers*,
    33 F. Supp. 312 (S.D.N.Y. 1999) ..................................................................................11

*U.S. v. Cutler*,
    6 F.3d 67 (2d Cir. 1993) ................................................................................................11

*U.S. v. Sanusi*,
    813 F.Supp. 149 (E.D.N.Y. 1992) .................................................................................11

*U.S. v. Treacy*,
    603 F. Supp. 2d 670 (S.D.N.Y. 2009) ...........................................................................11

**Statutes**

28 U.S.C. §1782................................................................................................................. *passim*

Marcus Baram ("Baram" or "Respondent") respectfully submits this Memorandum of Law in opposition to Petitioner's[1] Motion to Supplement, Amend and/or Renew Application and Petition (the "Renewed Application") for an Order to Conduct Discovery for Use in Foreign Proceedings pursuant to 28 U.S.C. §1782 ("Section 1782").  For the reasons stated below, and those set forth in Baram's memoranda of law in opposition to the initial Application and to Petitioner's Motion for Reconsideration of the Court's February 18, 2020 Opinion and Order (the "Reconsideration Motion") [ECF No. 60], the Renewed Application should be denied.

## PRELIMINARY STATEMENT

It is not the job of Respondent or this Court to identify the many potential sources of evidence concerning the creation of the Forged Police Report, or to repeatedly evaluate the sufficiency of Petitioner's investigation of them in response to his successive motions.  However, that has been the unfortunate outcome of Petitioner's piecemeal approach to this proceeding.  The Renewed Application makes clear that Petitioner still has not exhausted alternative sources of evidence relating to the Forged Police Report, approximately one year after the Application was filed and almost three years after Baram and several other journalists received the Forged Police Report.  As such, it serves no purpose except to harass Baram, who is no longer employed by *Fast Company*, and his former employer, which has already incurred in excess of $200,000 in legal fees in repeatedly opposing the Application.

The "new evidence" on which Petitioner's Renewed Application depends comprises affidavits from Kara Swisher ("Swisher" or the "Tech Reporter"), the Pishevar Source (whose

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Memorandum of Law in Support of Petitioner's Application and Petition for an Order to Conduct Discovery for Use In Foreign Proceedings Pursuant to 28 U.S.C. §1782 ("Br.") [ECF No. 4], Respondent's Memorandum of Law in Opposition to the Application (the "Opposition Brief" or "Opposition Br.") [ECF No. 14], and/or the Court's February 18, 2020 Opinion and Order (the "Order") [ECF No. 52].

identity Petitioner has not disclosed publicly due to the Pishevar Source's purported but unexplained political connections and fear of reputational harm) and Joseph Pounder ("Pounder") and Matthew Rhoades ("Rhoades"; together with Pounder, the "Definers Affiants").

The Swisher Affidavit outright contradicts Swisher's previous statements to Petitioner, as previously recounted in the Pishevar Affidavit. Petitioner testified to this Court that Swisher told Petitioner in November 2017 that her confidential source spread the rumor that Petitioner "made a payment to settle a sexual assault claim in London." Pishevar Decl., ¶16. Now, Petitioner presents an affidavit from Swisher stating that she "do[es] not recall how [she] learned that information." Swisher Aff., ¶9. Petitioner does not describe any investigation of that statement, what Swisher did with that information, who else she told it to, and leads it revealed, or anything else.

The affidavit from the Pishevar Source similarly reveals a remarkable lack of investigation, but also reveals a lack of cooperation. The Renewed Application admits that the Pishevar Source "refuse[d] to corroborate any purported allegations against Definers that he shared with Petitioner in November 2017." Memorandum of Law in Support of Petitioner's Motion to Supplement, Amend, and/or Renew Application (the "Motion") [ECF No. 87], p. 17 n.15. That admission indicates Pishevar failed to exhaust any other options. As this Court's Reconsideration Opinion, as defined *infra*, pointed out, Petitioner has a number of means of compelling the Pishevar Source's cooperation. The fact that the Pishevar Source is well-connected politically does not absolve Petitioner of his failure to do so.

Finally, the Definers Affiants largely repeat the same denials contained in the December 2017 declarations of Pounder and Rhoades submitted in the Definers Lawsuit, which this Court already considered in denying the Application. In short, Pounder and Rhoades now claim to

know nothing about the Forged Police Report, and Petitioner has simply accepted their self-serving representations to that effect, even though he previously sued them and Definers itself in the California Superior Court for allegedly conducting a smear campaign against him.  Petitioner and the Definers Affiants offer no explanation of how Petitioner's lawsuit against multiple parties (some of whom were anonymous) came to be dismissed, against whom and whether any claims persisted.

These sketchy details in the Renewed Application reveal that Petitioner is more interested in protecting and/or currying favor with his high-placed sources than in obtaining relevant evidence from them or their sources.  However, the reporter's privilege does not yield to considerations of reputation (*see* Pishevar Source Aff., ¶3) or expediency (*see* Br., p. 15, identifying Baram as the "most efficient and economical" source of information relating to the Forged Police Report).  The Renewed Application demonstrates that Petitioner has once again failed to exhaust other sources or leads, as this Court specifically directed.  The Renewed Application should be denied in its entirety.

## STATEMENT OF RELEVANT FACTS[2]

On October 31, 2019, Petitioner filed the Application[3], seeking "[a]ll Documents and Communications in [Baram's] possession, including any information sufficient to identify the identity and location of the Forged Police Report Distributor and any other distributor of [a]

---

[2] Respondent incorporates by reference the Statements of Facts in both his Opposition Brief and his Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration (the "Reconsideration Opposition") [ECF No. 62].

[3] As this Court is aware, on or about August 6, 2019, Petitioner filed an *ex parte* Section 1782 application against *Fast Company* and Mansueto relating to the Forged Police Report, which was granted.  *See* In re Application of Shervin Pishevar for Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. §1782, No. 19-mc-00370-JGK-SDA, ECF No. 4-2 (S.D.N.Y. Aug. 6, 2019).  Mansueto produced documents and information about the Forged Police Report between September 17 and October 21, 2019, but declined to provide the identity and location of Baram's Confidential Source, citing the reporter's privilege.

Forged Police Report" purporting to convey the details of Petitioner's May 2017 arrest in London on suspicion of rape.[4]  Bento Aff., Ex. 2.  Petitioner filed the Application despite having failed to (1) review the true records of Petitioner's arrest, which were later submitted to this Court for *in camera* review; (2) explain the source from which he learned that Definers, its personnel and unnamed others were allegedly circulating false statements about him; and (3) submit any sworn declaration from Petitioner himself detailing his investigation to date into the creation and distribution of the Forged Police Report.

On February 18, 2020, the Court denied the Application, finding that "Petitioner ha[d] failed to make a clear and specific showing to the Court that there were no other alternative sources of the identity of the Confidential Source…"  Order [ECF No. 52], p. 23.  The Court noted that Petitioner had "failed to explain why [he] decided to drop…the Definers Lawsuit in early February 2018, after having confirmed [his] allegations in a sworn declaration…in late December 2017," and had "not submitted any sworn testimony of his own in this case."  *Id.*

On March 3, 2020, Petitioner filed the Reconsideration Motion, arguing that the Court "denied the Application without giving Petitioner an opportunity to be heard on the[] issues" relating to the Definers Lawsuit.   Reconsideration Motion, p. 2.  Petitioner filed the Reconsideration Motion notwithstanding the fact that the Order specifically referenced a letter from Petitioner's counsel arguing that "Definers is not an alternative source," and six declarations from various defendants in the Definers Lawsuit, denying their own involvement in an alleged smear campaign against Petitioner and any involvement with the Forged Police Report.  Order, p. 22.  There was (and still is) no statement from Petitioner or those associated

---

[4] Petitioner claims that the Application seeks only the identity and location of Baram's Confidential Source. However, the Application, and the Contemplated Proceedings for which the discovery is purportedly sought, concern the creation and distribution of the Forged Police Report generally.

with him describing their state of knowledge and exhaustion of other sources of information on those subjects.

Instead, Petitioner submitted the Declaration of Shervin Pishevar ("Pishevar Declaration" or "Pishevar Decl.") [ECF No. 58-1] in support of the Reconsideration Motion, in which Petitioner for the first time identified the Tech Reporter and the Pishevar Source as the basis for the specific allegations in the Definers Lawsuit.  Specifically, Petitioner testified that the Tech Reporter had told him in November 2017 that "she heard from a confidential source[5] that [Petitioner] made a payment to settle a sexual assault claim in London (the "Payoff Allegation") and had 'an incident with a prostitute in Europe'" (the "Prostitute Allegation").  Pishevar Decl., ¶16.  Petitioner also testified that the Pishevar Source told him in November 2017[6] that Definers and Rhoades were spreading false rumors about his Russian connections and business dealings. *Id.*, ¶14.

On April 14, 2020, the Court granted the Reconsideration Motion, but upon reconsideration denied the Application, finding that Petitioner had numerous other

> tools available to him to obtain discovery from the Definers Defendants, the Pishevar Source and the Tech Reporter regarding the identity of the Confidential Source, including document discovery and sworn depositions (and to follow any leads that such discovery provides).

April 14, 2020 Opinion and Order (the "Reconsideration Order") [ECF No. 77], p. 10.  The Court observed that "[a]s he has done on two occasions in this Court, Petitioner can file applications under 28 U.S.C. § 1782 to obtain such discovery."  *Id.*

---

[5] Previously, Petitioner speculated that the Tech Reporter could not be a source of information as she would invoke the reporter's privilege to avoid disclosing the identity of her confidential source.  Pishevar Decl., ¶17.  Now, however, Swisher claims not to remember that specific conversation with Petitioner, but does not invoke the reporter's privilege.  It is entirely unclear what leads her testimony or any document production might provide.

[6] Obviously, Petitioner could have disclosed this information as part of the Application, but chose not to.  Petitioner also has not disclosed what other sources of the same or similar information he had then or learned of subsequently.

Petitioner has not made use of any of these tools in the five (5) months since the Court issued the Reconsideration Order.  Instead, he just obtained four (4) self-serving affidavits from sources who allegedly lack knowledge of the Forged Police Report, and stopped his investigation there.  Petitioner sought neither document discovery nor deposition testimony from those sources, nor has he commenced any Section 1782 application against anyone, as the Court suggested.  Instead, he seeks to renew his Application against Baram.[7]

The Renewed Application discloses that Petitioner has failed to satisfy the exhaustion requirement, as is necessary to overcome Baram's reporter's privilege, for a number of reasons.  First, with respect to the four sources discussed by the Court in the Reconsideration Order, Petitioner has failed to explore demonstrable inconsistences between their previous statements to Petitioner, as summarized in the Pishevar Declaration, and their purported lack of present knowledge when asked to submit a sworn affidavit in support of the Renewed Application.

Further, the Renewed Application does not discuss any efforts by Petitioner to exhaust other potential sources of information concerning the creation and distribution of the Forged Police Report, presumably because Petitioner made no such effort.  Indeed, Petitioner maintains (without explanation) that there are no other sources, whether at the COLP, at other media outlets[8], or among the solicitors in the UK who were involved in Petitioner's various legal

---

[7] Nor has Petitioner made any attempt whatsoever to make any use or even investigate using the information that Respondent previously provided in response to the Application:  that an unnamed male lawyer in London was a source for the Forged Police Report.  To any rational observer, that information alone is the most useful lead for Petitioner's supposed investigation.

[8] At oral argument, Petitioner's counsel suggested that the other reporters who received the Forged Police Report would also invoke the reporter's privilege.  Tr. 29:25-30:8.  However, Petitioner discloses no efforts to test that assumption.  The fact that these publications "have raised the reporter's privilege in prior cases" does not mean that they would automatically do so here.  *Id.* at 30:6-7.  Swisher's non-reliance on it now suggests the opposite.

maneuverings.[9]  Likewise, Petitioner continues to maintain—against a plain reading of the documents—that no similarities exist between the Forged Police Report and the true records of Petitioner's arrest, such that the Forged Police Report holds no clues as to its creator(s) and distributor(s).  Yet the similarities are numerous, and it is clear that someone with knowledge of or access to the true records was involved in the creation of the Forged Police Report.

## **ARGUMENT**

I.   **THE MOTION SHOULD BE DENIED BECAUSE THE AFFIDAVITS SUBMITTED BY PETITIONER CONTAIN NUMEROUS INCONSISTENCIES AND OMISSIONS THAT PETITIONER HAS FAILED TO EXPLORE**

   A.   **The Swisher Affidavit Contradicts Swisher's Previous Statements to Petitioner**

In the Pishevar Declaration, submitted in March of this year in support of the Reconsideration Motion, Petitioner represented that Swisher told him that she "heard from a confidential source that [he] made a payment to settle a sexual assault claim in London and had 'an incident with a prostitute in Europe.'"  Pishevar Decl., ¶16 (the "Payoff Allegation" and the "Prostitute Allegation," respectively).  The Pishevar Declaration itself is problematic on this point, because Petitioner attempts to draw a false distinction between the "sexual assault claim in London" that formed the basis of the Payoff Allegation, and the "rape allegation" for which Petitioner was arrested in London, of which Swisher "made no mention."  *Id.*  It is doubly problematic when read in conjunction with Swisher's Affidavit in support of the Renewed Application, in which she now denies knowledge of both the Payoff Allegation and the Prostitute

---

[9] Petitioner's counsel has suggested that Baram has no basis for pointing the finger at his numerous esteemed UK solicitors, when in fact Baram's Confidential Source reported that he received information from a male lawyer in the UK.  Petitioner received that information in or about September 2019, in response to his Section 1782 application against *Fast Company* and Mansueto.  No accusation is leveled at any individual lawyer:  indeed, there are thousands of lawyers of male lawyers in London, and Petitioner himself had several different law firms who were privy of details contained in both the true police records and the Forged Police Report.

Allegation entirely,[10] and attempts to re-characterize her November 2017 conversation with Petitioner as one concerning a euphemistic "bad date [that Petitioner had] in London" (the "Date Allegation").  Swisher Aff., ¶¶6, 7.

The Swisher Affidavit provides no clarification regarding the nature of Petitioner's "bad date in London," or the relationship among the Date Allegation, the Payoff Allegation and the Prostitute Allegation.  Petitioner plainly has not exhausted Swisher as a source of evidence regarding the creation and distribution of the Forged Police Report, because he has not taken any demonstrated steps to test or obtain clarification as to her memory of their November 2017 conversation and the facts on which it was based.  Petitioner is obligated to explore the inconsistences and apparent omissions in Swisher's sworn statement, including through deposition testimony, before seeking to invade Baram's reporter's privilege.  That Swisher claims a lack of specific knowledge concerning the Forged Police Report and the identity of Baram's Confidential Source does not mean that Swisher cannot provide relevant leads for Petitioner for follow up, as this Court directed.

**B.      The Pishevar Source Refused to Cooperate With Petitioner's Investigation, and Petitioner Made No Effort to Compel Compliance**

Petitioner previously disclosed to this Court that he commenced the Definers Lawsuit based, in part, on the Pishevar Source's representation that Petitioner's "business opponents" had hired Definers to "take [him] down" (the "Smear Campaign").  Pishevar Decl., ¶14.  However, Petitioner dismissed the Definers Lawsuit when, among other things, the Pishevar Source was "unable to corroborate" the Smear Campaign and "communicated that, if subpoenaed, [he] would not support that claim."  *Id.*, ¶26.

---

[10] Swisher does not invoke the reporter's privilege, as Petitioner surmised that she would (*see* Pishevar Decl., ¶17), but rather claims a lack of knowledge as to very specific allegations she shared with Petitioner in November 2017.

The Pishevar Declaration and the Pishevar Source Affidavit together make clear that the Pishevar Source has refused to voluntarily participate in Petitioner's investigation into the Smear Campaign, and that Petitioner has taken no steps to compel his cooperation, including those steps specifically mentioned by this Court in its prior order.  For instance, the Pishevar Source failed to respond to Petitioner's inquiries concerning the factual basis of the Smear Campaign allegations in December 2017, when Petitioner faced a motion to strike the Definers Lawsuit Complaint. *Id.*, ¶24. Now, in connection with the Renewed Application, the Pishevar Source disclaims "any information or knowledge about any purported 'smear campaign' against Mr. Pishevar…by any executive or employee of Definers Corp."  Pishevar Source Aff., ¶10.  If this is true, it suggests that Petitioner had no factual basis for commencing the Definers Lawsuit.  More likely, it indicates that the Pishevar Source's apparent concern with his "political ties and political work," and the risk of "harm [to his] reputation" stemming from his "involvement in this case," has led him to be circumspect with Petitioner.  *See* Pishevar Source Aff., ¶3.  Petitioner has chosen not to explore this possibility through a deposition or any other discovery device available to him, let alone to pursue any leads such investigation might generate.

C.   **The Definers Affiants Merely Rehashed Their 2017 Affidavits, Which Were Previously Considered By This Court**

The declarations submitted by Pounder and Rhoades on or about December 6, 2017 in the Definers Lawsuit, and previously considered by this Court in denying the Application, contain identical statements that each declarant:  (1) "[did] not have and ha[d] never seen a police report or a purported police report involving Mr. Pishevar" [Pounder Decl., ¶13; Rhoades Decl., ¶13]; (2) "played [no] role in any campaign involving Mr. Pishevar including in the alleged campaign to 'smear' him" [*id.*, ¶4]; and (3) "[b]efore reading the [Definers Lawsuit] Complaint…had not read, heard or discussed with anyone that Mr. Pishevar…had been arrested for alleged sexual

assault, [or] that he had paid money to settle a claim for sexual assault [Pounder Decl., ¶6; Rhoades Decl., ¶7].

The affidavits submitted by Pounder and Rhoades in support of the Renewed Application merely repeat and rephrase their previous denials of knowledge, and clarify that the Definers Affiants also lack knowledge as to the identity of Baram's Confidential Source.  However, these denials were implicit in the Definers Affiants' previous statements, and were considered by the Court in denying the Application initially and upon reconsideration.  Further, these blanket denials do not mean that the Definers Affiants possess no relevant information that may lead to evidence concerning the creation and dissemination of the Forged Police Report, as would be necessary to demonstrate exhaustion.

### D.    Depositions Are Necessary to Explore These Inconsistencies and Omissions

As set forth in detail above, Petitioner's contention that "deposing the Definers Defendants, Tech Source[11], and Pishevar Source would be futile….[because] those sources have no information or knowledge to help Petitioner identify the Confidential Source, or the creators and distributors of the Forged Police Report and Other False Allegations" (Motion, pp. 18-19) is incorrect in light of the numerous inconsistences and omissions that are apparent upon a plain reading of the affidavits in conjunction with Petitioner's previous submissions.  Further, none of the cases cited by Petitioner compel or even support a contrary conclusion.

First, the cases Petitioner cites as holding that the "exhaustion requirement was met…without any depositions" do not even discuss the possibility of third-party depositions or testimony as an alternative source of relevant evidence.  *See, e.g.*, *In re Ramaekers*, 33 F. Supp.

---

[11] Petitioner does not define the term "Tech Source."  Respondent assumes for purposes of this response that Petitioner intended to refer to the Tech Reporter referenced in the Pishevar Declaration, and later disclosed to be Swisher.

312 (S.D.N.Y. 1999); *U.S. v. Cutler*, 6 F.3d 67 (2d Cir. 1993)[12]; *N.Y. Times Co. v. Gonzales*, 459 F.3d 160 (2d Cir. 2006); *U.S. v. Treacy*, 603 F. Supp. 2d 670 (S.D.N.Y. 2009); *U.S. v. Sanusi*, 813 F.Supp. 149 (E.D.N.Y. 1992).  These cases may thus be accurately cited only for the proposition that, in each case, the court found exhaustion on the facts before it, and the availability of third party witness testimony was not considered as part of the exhaustion inquiry. *See Gonzales*, 459 F.3d at 171 ("We emphasize that our holding is limited to the facts before us…we in no way suggest that such a showing [an affidavit by the government stating that it has 'reasonably exhausted alternative investigative means' in a matter involving national security] would be adequate in a case involving less compelling facts").

The few cases cited by Petitioner that actually address the need to depose witnesses to satisfy the exhaustion requirement are inapposite.  In *Dangerfield v. Star Editorial, Inc.*, 817 F. Supp. 833 (C.D. Cal. 1993), for instance, the court determined that plaintiff had exhausted alternative sources where he submitted 20 sworn declarations from non-confidential sources, deposed two witnesses, and "pursued other leads that resulted from that testimony…to no avail." *Id.* at 838.  *See also Milione v. City Univ. of N.Y.*, 950 F. Supp. 2d 704 (S.D.N.Y. 2013) (granting protective order precluding deposition of university chancellor in employment discrimination case where plaintiff's supervisor and his supervisor's supervisor had already been deposed, and chancellor had no involvement in termination decision).  Here, in contrast, no discovery proceedings have been filed at all, and no depositions have taken place, despite inconsistencies in the affidavits submitted.  Further, in *Kara Holding Corp. v. Getty Petroleum Mktg.*, No. 99 Civ.

---

[12] The court in *Cutler* ordered the production of a reporter's notes upon a showing of exhaustion, not the disclosure of a confidential source.  It does not support a grant of the Application in this case for the separate reason that *Fast Company* / Mansueto have already produced Baram's notes in response to Petitioner's Section 1782 application against those entities in an effort to resolve this matter.

0275 (RWS), 2002 WL 475125 (S.D.N.Y. Mar. 28, 2002), the court actually permitted the

deposition of a petroleum company executive where his sworn statement in a previous litigation

suggested that he might have relevant knowledge.  *Kara Holding Corp.*, 2002 WL 475125, at *4.

Finally, Baram has never suggested, in reliance on *In re Petroleum Prod. Antitrust Litig.*,

680 F.2d 5 (1982), "that a certain number of depositions is required to demonstrate exhaustion."

*See* Motion, p. 19.  Rather, Baram relied on that case and others in his previous submissions to

this Court to demonstrate that the exhaustion requirement is a meaningful one, and that, in

certain cases, courts have required a party to take depositions before seeking to invade the

reporter's privilege.  Baram is not suggesting that hundreds of depositions are necessary in this

case, but rather that Petitioner's previous unexplained investigation, and the four unilluminating

affidavits now submitted in support of the Renewed Application are insufficient as matter of fact

and law to demonstrate exhaustion.

## II.     THE MOTION SHOULD BE DENIED BECAUSE THE PETITIONER HAS MADE NO EFFORT TO EXHAUST OTHER OBVIOUS SOURCES OF EVIDENCE CONCERNING THE FORGED POLICE REPORT

Petitioner maintains that, other than Swisher, the Pishevar Source, and the Definers

Affiants, "[t]here are no other available sources Petitioner is required to exhaust," and cites a

string of cases for the proposition that litigants "need not be made to carry wide-ranging and

onerous discovery burdens where the path is…ill-lighted."  Motion, p. 17 and n.16 (quoting *Lee

v. DOJ*, 413 F.3d 53 (D.C. Cir. 2005)).  Here, however, the avenues of inquiry are extremely

narrow, given Petitioner's effort to limit publication of the details of his arrest, including by

obtaining a gag order against UK publication *The Sun.  See* Br., p. 5.

Petitioner's crisis manager, Mark Fabiani ("Fabiani"), is a potential source of evidence

concerning distribution of the Forged Police Report, insofar as Petitioner's own submissions to

this Court suggest that Fabiani was aware of the Forged Police Report, and had been asked to

corroborate it, prior to Baram's reporting.  *See* Watson Decl., ¶20 ("*After* being contacted by various media organizations requesting comment on the Forged Police Report, on November 8 2017, the Petitioner had no choice but to release a statement…) (emphasis added).  Petitioner does not disclose what, if any, effort he made to obtain relevant information from Fabiani.

Next, the COLP—specifically, personnel working out of the Bishopsgate Police Station, where Petitioner was detained after his arrest—are a potential source of relevant evidence. However, the Renewed Application does not disclose that Petitioner made any effort to exhaust the COLP as a source of evidence, even after Petitioner's UK counsel confirmed that a Stephen Brooks was employed there and that the COLP had conducted a "subsequent investigation" regarding the Forged Police Report.  *See* Exhibit 4 to the Bento Letter [ECF No 57-2].

Finally, the Forged Police Report itself is a key source of evidence that Petitioner has not explored.  As set forth in the February 18, 2020 chart that Respondent's counsel submitted to the Court for *in camera* review, the Forged Police Report includes many details that line up with the true records of Petitioner's arrest and detention.  Although the sealing of the true police documents prevents Baram from addressing the many overlapping details between the Forged Police Report and the true custody records on the public record, a side-by-side comparison of the documents suggests that someone with access to the true custody records was involved in the creation and distribution of the Forged Police Report.  However, Petitioner has tried to dismiss this important avenue of inquiry out of hand.  *See* Motion, p. 17 ("The fabricated details in the Forged Police Report do not match up against the details of the arrest…").  Petitioner's unwillingness to entertain this possibility makes no sense, given his professed relentlessness in pursuit of those who created and distributed the Forged Police Report.

### III.     THE CONDUCT OF NEITHER BARAM NOR THE CONFIDENTIAL SOURCE SUPPORTS INVASION OF BARAM'S REPORTER'S PRIVILEGE

Perhaps because neither the facts nor the law supports Petitioner's exhaustion argument, he closes the Motion with his favorite refrain—attacking Baram and his Confidential Source for their claimed lapses in journalistic ethics and criminal behavior, respectively.  Motion, pp. 19-22. Once again, Petitioner twists the facts to fit his own narrative.

Baram's November 8, 2017 article titled "'Smear Campaign' Or Not, Tech Investor Shervin Pishevar Really Was Arrested Earlier This Year" (the "November 8 Article"), which is at issue in this Application, neither represented that the Forged Police Report was authentic, nor reported any of the salacious details that were contained it.  Instead, Baram merely referred to "a copy of a police report seen by *Fast Company*," and acknowledged that "its authenticity ha[d] not been verified."  *See* MacDonald Decl., Ex. 2.  This is in contrast to reporting by *Forbes* and *The New York Post*, which included details from a police report obtained by those publications in Reporting on Petitioner's arrest.[13]  *See* Baram Aff., Exs. 5 and 6.

Further, when Baram received confirmation from Fabiani that the Forged Police Report was not an authentic COLP document on November 13, *Fast Company* (1) immediately updated the November 8 Article to reflect that the "police report" had been "proven false by the City of London Police" [Baram Aff., Ex. 4] and (2) published a standalone article by Baram titled "London cops say that police report for Shervin Pishevar's arrest was fabricated," which confirmed both that the police report was inauthentic, and that the COLP was "undertak[ing] its own investigation into the alleged report" (*id.*, Ex. 7).[14]

---

[13] Petitioner failed to seek the identity of the Forged Police Report Distributor from those other publications, which are larger than *Fast Company,* presumably because they are better able to fund opposition to Petitioner's improper discovery efforts.

[14] Professor Goldstein's opinion that "Mr. Baram should be required to disclose the identity of his confidential source" because "the source was trafficking in a forged document" is based on Petitioner's narrative rather than the

14

With respect to the Confidential Source, Petitioner's suggestion that he was deliberately peddling a false document is unsubstantiated.  As Baram has previously conveyed to Petitioner and the Court, he has no reason to believe that the Confidential Source was aware that there were questions surrounding the authenticity of the Forged Police Report when he provided it to Baram.  Petitioner's representation that he "seeks the identity of the Confidential Source to initiate and maintain proceedings against that *specific Confidential Source* for the wrongs *that source* committed during its meeting with Respondent at the café in Washington D.C.*" (Motion, p. 20 n.20) is entirely speculative.

The disclosure of Baram's Confidential Source is not necessary to prevent the commission of a crime, as the events in question in this proceeding took place almost three years ago and Petitioner has not alleged that the purported Smear Campaign against him is ongoing.  Further, there is no active criminal investigation by the COLP into the alleged crime.  As a result, *In re Grand Jury Subpoena, Judith Miller*, 438 F.3d 1141 (D.C. Cir. 2006), and *People v. Rand*, 519 N.Y.S.2d 606 (1987), which address the reporter's privilege specifically in the context of a grand jury subpoena, have no bearing on this case.  *See also Branzburg v. Hayes*, 408 U.S. 665, 682 (1972) ("The sole issue before us is the obligation of reporters to respond to grand jury subpoenas as other citizens do and to answer questions relevant to an investigation into the commission of crime.").[15]

---

actual facts of Baram's reporting.  It was rendered with reference to facts that were unavailable to Baram when he published the November 8 Article almost three years ago.  We trust that the Court will afford the proper weight to the Professor's declaration, which was solicited by Petitioner and drafted by his counsel.

[15] Petitioner's citation to *Quinio v. Aala*, 344 F. Supp. 3d 464 (E.D.N.Y. 2018) is, frankly, puzzling.  In that case, the court cited *Branzburg* for the proposition that "the reporting of possible crimes to the authorities[,] is one of the highest order," in discussing whether an agreement to conceal a rape for a sum of money violated public policy.  *Id.* at 476 (quoting *Branzburg*, 408 U.S. at 696-97) (alteration in original).  Although its facts are reminiscent of the Payoff Allegation, it has nothing to do with the exhaustion inquiry in this proceeding.

In this case, almost three years have passed since Baram received the Forged Police Report from his Confidential Source, and since the COLP confirmed that the Forged Police Report was not authentic.  Almost two years have passed since the COLP closed its internal investigation into the Forged Police Report without bringing charges.  *See* Br., pp. 9-10; Watson Decl., Ex. 6 (Mr. Paul Chadha, Chief Lawyer (Litigation) at the COLP, confirmed on October 25, 2018 that "there is no criminal investigation in respect of the [Forged Police Report].

Whatever animus against Baram is driving Petitioner to pursue the Renewed Application, instead of seeking discovery from any of the other journalists, friends, sworn witnesses and professional advisors whom Petitioner and his counsel have sworn had relevant information, cannot overcome Petitioner's failure to exhaust those other avenues, to which this Court specifically directed him.  Both the Court and Baram are entitled to a ruling that ends these repetitive and wasteful proceedings.

## **<u>CONCLUSION</u>**

For all of the foregoing reasons, it is respectfully requested that this Court deny the Renewed Application in its entirety and grant such other and further relief as the Court deems just and proper.

Dated:        September 22, 2020
                   New York, New York

Respectfully submitted,

**MOSES & SINGER LLP**

By: __/s Megan H. Daneshrad_____
        Toby Butterfield
        Megan Daneshrad
405 Lexington Avenue, 12th Floor
New York, New York 10174
Tel:  (212) 554-7800
tbutterfield@mosessinger.com

mdaneshrad@mosessinger.com

*Attorneys for Respondent Marcus Baram*