**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF SHERVIN PISHEVAR FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 19-mc-00503 (JGK) (SDA) |

**RESPONDENT'S OBJECTIONS TO MAGISTRATE JUDGE AARON'S ORDER**
**ENTERED ON OCTOBER 3, 2020**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................................ I

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Baker v. F&F Inv.*,
  470 F.2d 778 (2d Cir. 1972)...............................................................................1, 2

*In re DG Acquisition Corp.*,
  151 75 (2d Cir. 1998)........................................................................................12

*Euromepa S.A. v. R. Esmerian, Inc.*,
  51 F.3d 1095 (2d Cir. 1995)............................................................................12

*Giuffre v. Maxwell*,
  221 F. Supp. 3d 472 (S.D.N.Y. 2016)...........................................................2, 13

*Gonzales v. Nat'l Broad. Co., Inc.*,
  194 F.3d 29 (2d Cir. 1999)................................................................................2

*In re Petroleum Prods. Antitrust Litig.*,
  680 F.2d 5 (2d Cir. 1982)...............................................................................1, 2

*Wilcox v. Cornell Univ.*,
  2012 WL 4903181 (S.D.N.Y. Oct. 10, 2012) ...................................................12

*Zervos v. Verizon N.Y., Inc.*,
  252 F.3d 164 (2d Cir. 2001)............................................................................12

**Statutes**

28 U.S.C. §1782................................................................................. *passim*

**Other Authorities**

Rule 72(a), Fed. R. Civ. P...........................................................................1, 12

Respondent Marcus Baram ("Baram" or "Respondent"), pursuant to Federal Rule of Civil Procedure 72(a), respectfully submits these objections to the Opinion and Order of Magistrate Judge Stewart D. Aaron, entered on October 3, 2020 (the "Order"), which requires Respondent, a journalist, to disclose the identity and location of his confidential source (the "Confidential Source") pursuant to 28 U.S.C. §1782 ("Section 1782").  For the reasons stated below, and those set forth in Respondent's memoranda of law in Opposition to the Petitioner Shervin Pishevar's ("Pishevar" or "Petitioner") Application and Petition for an Order to Conduct Discovery for Use in Foreign Proceedings Pursuant to Section 1782 (the "Application") [ECF No. 14], to Petitioner's Motion for Reconsideration of the Magistrate Judge's February 18, 2020 Opinion and Order denying the Application (the "Reconsideration Motion") [ECF No. 62], and to Petitioner's Motion to Supplement, Amend and/or Renew Application and Petition (the "Renewed Application") [ECF No. 95], Respondent respectfully requests that the Court vacate the Order and deny the Application.

## PRELIMINARY STATEMENT

"Compelled disclosure of confidential sources unquestionably threatens a journalist's ability to secure information that is made available to him only on a confidential basis." *Baker v. F&F Inv.*, 470 F.2d 778, 782 (2d Cir. 1972).  *See also In re Petroleum Prods. Antitrust Litig.*, 680 F.2d 5, 8 (2d Cir. 1982) (recognizing that confidentiality is "essential to fulfillment of the pivotal function of reporters to collect information for public dissemination").  The Second Circuit has recognized that such disclosure has a "deterrent effect…upon future 'undercover' investigative reporting…[that] threatens freedom of the press…and thereby undermines values which traditionally have been protected by federal courts applying federal public policy."  *Baker*, 470 F.2d at 782.

1

In light of these important values, the Second Circuit "has long recognized the existence of a qualified privilege for journalistic information." *Gonzales v. Nat'l Broad. Co., Inc.*, 194 F.3d 29, 32 (2d Cir. 1999). A journalist may only be compelled to produce confidential information or sources upon a "clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources." *In re Petroleum Prods.*, 660 F.2d at 7 (citing *Baker*, 470 F.2d at 783-85). In short, the reporter's privilege should be invaded only as a "last resort." *Giuffre v. Maxwell*, 221 F. Supp. 3d 472, 480 (S.D.N.Y. 2016) (internal citation omitted).

The Order marks the first time that a journalist in this Circuit has been ordered to disclose the identity of a confidential source under the guise of Section 1782. It violates the mandate of Section 1782 that "[a] person may not be compelled to give his testimony or statement or to produce a document or any other thing in violation of a legally applicable privilege." 28 U.S.C. §1782. The Order also contravenes precedent requiring a party seeking confidential journalistic information to exhaust other potential sources of evidence before seeking to invade the reporter's privilege, in that it requires Baram to disclose his Confidential Source despite acknowledged inconsistencies in the many representations and submissions that Petitioner and his counsel have made in this proceeding regarding the scope of their investigation. *See* Order, p. 8 ("In any event, *regardless of any inconsistencies*, each of the witnesses is unequivocal that (s)he has no knowledge concerning the identity of the Confidential Source.") (emphasis added).

Further, the Order erroneously concludes, despite substantial evidence to the contrary, that Pishevar has exhausted as sources of relevant evidence (1) the City of London Police (the "COLP"); (2) the numerous other journalists who received the Forged Police Report; and (3) the circumscribed group of people who had access to the true records of Pishevar's arrest and

detention, many details of which are reflected in the Forged Police Report.  In fact, the record

suggests that Pishevar first sought evidence from Baram—whom he has identified as a "more

efficient and economical" source of relevant evidence relating to the Forged Police Report

(Memorandum of Law in Support of the Application ("Applicant's Br.") [ECF No. 4], p. 15)—

and thereafter undertook a piecemeal investigation designed to create the illusion of exhaustion.

　　　　　For the reasons set forth below, the Order should be vacated and the Application denied.

## **STATEMENT OF FACTS**

**Pishevar's Arrest on Suspicion of Sexual Assault**

　　　　　On May 27, 2017, Pishevar was arrested in London on suspicion of sexual assault (the

"Arrest").  *See* Declaration of Shervin Pishevar ("Pishevar Declaration" or "Pishevar Decl.")

[ECF No. 58-1], ¶11.  He was detained overnight by the COLP at its Bishopsgate Police Station,

but was not charged with any crime.  *Id.*, ¶12.  There is no dispute as to the fact of Pishevar's

Arrest.

　　　　　Pishevar's Arrest was a matter of public interest, both in the United Kingdom and the

United States, as a result of his prominence as a San Francisco-based venture capital investor,

and his involvement with a number of highly successful Silicon Valley start-ups, including Uber

and Hyperloop.  *See* Declaration of Lucas Bento ("Bento Decl."), Ex. 14 [ECF No. 5-14].

However, Petitioner kept the details of the Arrest and the allegations that led to it out of the

English media, after he obtained a gag order against English newspaper *The Sun* at a reported

cost of £100,000.  *See* Affidavit of Marcus Baram ("Baram Aff.") [ECF No. 15], ¶7 and Ex. 1.

　　　　　In the United States, without the availability of a gag order, Petitioner sought to shift the

narrative from his Arrest to a purported smear campaign of which he was allegedly a victim.  To

that end, Pishevar commenced a lawsuit in the California Superior Court against Definers Public

Affairs ("Definers"), a Washington, DC-based strategic political communications firm, alleging that it had organized a "smear campaign" against him that included an allegation that he had paid off a woman complaining of a sexual assault in London.  *Id.*, Ex. 2.

**Coverage of the Arrest By *Fast Company* and Other U.S. Media Outlets**

Baram was a Senior Editor at *Fast Company* when the events giving rise to the Application took place.  Baram Aff., ¶¶1, 3.  In July 2017, Baram learned of Pishevar's Arrest from the Confidential Source.  *Id.*, ¶6.  In September 2017, the Confidential Source gave Baram a thumb drive containing an image of a document purporting to be a police report created within the COLP documenting the Arrest.  *Id.*, ¶8.[1]  Baram believed at the time, and continues to believe, that the Confidential Source was not aware at that time that there was any question as to the authenticity of that document.  *Id.*

Pishevar commenced the Definers lawsuit on November 7, 2017.  *Id.*, ¶10.  That same day, *Fast Company* published an article written by Baram titled "Tech Investor Shervin Pishevar sues GOP oppo research firm, claiming that it conducted a 'smear campaign' against him."  *Id.*, Ex. 2.  That article summarized the allegations of Petitioner's complaint against Definers, including that Definers spread a "false, defamatory, and highly damaging" story that Pishevar "paid money to settle a claim for sexual assault in London."  *Id.*

On November 8, 2017, Pishevar's spokesperson, Mark Fabiani ("Fabiani"), issued a statement confirming the Arrest and repudiating "several false rumors that had been spread about [Pishevar], including that he purportedly paid money to settle the claim."  *Id.*, ¶11 and Ex. 3.  Thereafter, also on November 8, *Fast Company* published an article written by Baram titled

---

[1] Baram's efforts to confirm the Arrest and the authenticity of the purported police report are detailed at length in Baram's memorandum of law in opposition to the Application.  Notably, Baram, received confirmation of Petitioner's Arrest from two other sources prior to reporting on it.  Baram Aff., ¶6.

"'Smear Campaign' Or Not, Tech Investor Shervin Pishevar Really Was Arrested Earlier This Year." *Id.*, ¶12 and Ex. 4. The article referred to "a copy of a police report seen by Fast Company," but acknowledged that "its authenticity ha[d] not been verified" and did not publish any of the details contained in it. *Id.* [2]

On November 9, 2017, *Forbes* published an article titled "Shervin Pishevar Arrested But Never Charged Over Alleged Rape, Says He's Victim of 'Smear Campaign," which included "details of a police report obtained by Forbes." *Id.*, Ex. 5. Also on November 9, The New York Post published an article titled "Billionaire ally of ex-Uber CEO busted on rape charge," in reliance on "a police report obtained by The Post" and citing details allegedly contained therein. *Id.*, Ex. 6.

On November 13, 2017, *Fast Company* received an email from Fabiani, enclosing a letter from the COLP confirming that the purported police report (referred to by Petitioner as the "Forged Police Report") was not a document prepared by the COLP. In response, *Fast Company* updated its November 8 article to indicate that the referenced "police report" had been "proven false by the City of London Police." Baram Aff., Ex. 4.[3] *Fast Company* also published a follow up article by Baram on November 13, titled "London cops say that police report for Shervin Pishevar's arrest was fabricated," which acknowledged that the report was a fabrication and that the COLP was "undertak[ing] its own investigation into the alleged report." *Id.*, Ex. 7.

Even after the fabricated police report had been disavowed by the COLP, other independent media coverage of the Arrest and other alleged instances of sexual misconduct by

---

[2] In three previous rounds of briefing and three orders by the Magistrate Judge, neither Petitioner nor the Magistrate Judge have identified any false statement contained in the November 8 article.

[3] *Forbes* and *The New York Post* also updated their reporting to reflect the confirmed falsity of the report. Baram Aff., Exs. 5 and 6.

Pishevar continued, with reporting by *Bloomberg* and others.  Baram Aff., ¶16 and Exs. 8 and 9.

Over three weeks later, on December 3, 2017, Pishevar took a professional leave of absence

saying he needed to focus on his lawsuit against Definers.  Baram Aff., Ex. 9.  However, within

two months, on February 2, 2018, Pishevar discontinued that lawsuit and issued the following

statement:

> I now intend to continue to focus my full attention on those who should
> ultimately be held responsible for the smear campaign that has been waged
> against me, including the falsification and distribution of the fraudulent
> London police report. The fraudulent police report is being investigated by
> law enforcement so we are hopeful the culprits will be found and justice
> will be served.

Baram Aff., Ex. 10.

## Procedural History

On August 6, 2019, Pishevar filed an *ex parte* Section 1782 application in the United

States District Court for the Southern District of New York seeking discovery from Baram's

employer, *Fast Company* and Mansueto,[4] relating to the Forged Police Report (the "First Section

1782 Application").  Magistrate Judge Aaron granted the First Section 1782 Application on

August 9, 2019.  Pishevar subsequently served subpoenas on *Fast Company* and Mansueto

seeking

> All Documents and Communications in your possession, custody or control
> relating to the Forged Police Report, including any information sufficient to
> identify the identity and location of the Report Author and any other
> distributor of the Forged Police Report.

---

[4] Because *Fast Company* is a part of Mansueto, the subpoena was properly directed only to Mansueto and only
Mansueto responded.

*See In re Application of Shervin Pishevar for Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. §1782,* No. 19-mc-00370-JGK-SDA, ECF No. 4-2 (S.D.N.Y. Aug. 6, 2019).

Mansueto produced documents and information about the Forged Police Report between September 17, 2019 and October 21, 2019.  *See* Applicant's Br., p. 12.  Among other things, Mansueto produced Baram's notes concerning his reporting on Pishevar's arrest, and disclosed that Baram's Confidential Source obtained the Forged Police Report from a male lawyer based in the United Kingdom.[5]  However, Mansueto did not disclose the identity of the Confidential Source both because that information was not in its possession, custody or control, and because it was shielded from disclosure by the reporter's privilege.

On October 31, 2019, Pishevar filed the instant Application seeking the same information from Baram that he previously sought from *Fast Company* and Mansueto.  Baram opposed the Application because Mansueto had already produced all non-privileged information that was responsive to Pishevar's request, such that the only additional information that could be disclosed by Baram was the identity of his Confidential Source.

On February 10, 2020, the parties appeared before the Magistrate Judge for oral argument on the Application.  Respondent argued that discovery of the Confidential Source under Section 1782 was inappropriate because Petitioner had, among other things, failed to exhaust the COLP and other media outlets as sources of highly relevant information, failed to investigate other parties who had access to the details of the Arrest, and failed to conduct any comparison of the

---

[5] Pishevar has not disclosed what, if anything, he did to exhaust these potential sources of information concerning the Forged Police Report.  Rather, Pishevar contends that an exhaustion requirement requiring that he exhaust thousands of male lawyers in London as potential sources of evidence would be "highly unreasonable."   Reply Memorandum in Further Support of Petitioner's Renewed Application [ECF No. 96]. p. 9 n.11. However, as Respondent has pointed out on more than one occasion, those with knowledge of Pishevar's arrest are a very circumscribed group given Pishevar's effort to prevent the details of his Arrest from becoming public.

Forged Police Report to the authentic COLP records of the Arrest.  Respondent's counsel also

pointed out the similarity between the allegations of the Definers lawsuit referenced in

Respondent's brief --- namely that Definers provided false information to reporters about the

Arrest and an alleged subsequent payment to the victim – and Pishevar's allegations in this

action.

In response, Petitioner's counsel made a number of remarkable assertions.  First, in

response to questioning from the Magistrate Judge, Petitioner's counsel admitted that he had

never seen the true police records.

> THE COURT:  Let me ask you.  Do the salacious details line up?
>
> MR. BENTO:  Your Honor, *we have not seen the original*, but the English
> solicitors obviously have.  So we would have to ask them, but the details do not line up.
>
> THE COURT:  They do not line up?
>
> MR. BENTO:  No.

Tr. 48:13-18 (emphasis added).  Petitioner's counsel did not explain what basis he had for

representing that the details "do not line up," despite having never seen the authentic COLP

documents.  Ultimately, the Magistrate Judge ordered Petitioner to produce for *in camera*

inspection "any documentation received by Petitioner or his English criminal counsel, at around

the time of his arrest setting forth the details of his arrest."  [ECF No. 44].

On the evening of February 14, 2020, Petitioner's counsel produced the information

required by the Magistrate Judge's order[6], as well as an email exchange between Petitioner's UK

counsel and PC Steven Brooks of the COLP [ECF No. 57-1].  That email exchange revealed that

---

[6] That information is filed under seal, preventing Respondent from addressing it in detail herein.  However, there are substantial and numerous similarities between the authentic records produced by Petitioner and the Forged Police Report.

one of Petitioner's English solicitors reached out to PC Brooks *for the first time after* the parties'

February 10, 2020 oral argument, despite taking the position that the Forged Police Report must

be inauthentic because it was purportedly authored by the nonexistent "DS Brook."  Petitioner's

counsel had repeatedly represented, including at oral argument, that "the purported police officer

who authored the report **was not, in fact, an officer employed by COLP**."  *See* Applicant's Br.,

p. 7 (emphasis in original).

On February 18, 2020, Magistrate Judge Aaron denied the Application, finding that

"Petitioner ha[d] failed to make a clear and specific showing…that there were no other

alternative sources of the identity of the Confidential Source…" ECF No. 52 (the "February

Order"), p. 23.  The February Order noted that Petitioner had "failed to explain why [he] decided

to drop…the Definers Lawsuit in early February 2018, after having confirmed [his] allegations in

a sworn declaration…in late December 2017," and had "not submitted any sworn testimony of

his own in this case."  *Id.*

On March 3, 2020, Petitioner filed the Reconsideration Motion, arguing that the

February Order "denied the Application without giving Petitioner an opportunity to be heard on

the[] issues" relating to the Definers Lawsuit.[7]  Reconsideration Motion, p. 2.  In support of the

Reconsideration Motion, Petitioner submitted the Pishevar Declaration, in which Petitioner

identified the Tech Reporter and the Pishevar Source as sources for the allegations in the

Definers Lawsuit.  Specifically, Petitioner testified that the Tech Reporter had told him in

November 2017 that "she heard from a confidential source that [Petitioner] made a payment to

---

[7] Petitioner's argument to this effect misstates the record.  The February Order specifically referenced a letter from Petitioner's counsel arguing that "Definers is not an alternative source," as well as six declarations from various defendants in the Definers lawsuit, denying their own involvement in an alleged smear campaign against Petitioner and any involvement with the Forged Police Report.  February Order, p. 22.

settle a sexual assault claim in London (the "Payoff Allegation") and had 'an incident with a prostitute in Europe'" (the "Prostitute Allegation"). Pishevar Decl., ¶16. Petitioner also testified that the Pishevar Source told him in November 2017 that Definers and Matthew Rhoades ("Rhoades"), who served as CEO of Definers at the time, were spreading false rumors about his Russian connections and business dealings. *Id.*, ¶14.[8]

On April 14, 2020, Magistrate Judge Aaron granted the Reconsideration Motion, but denied the Application upon reconsideration, finding that Petitioner had numerous other

> tools available to him to obtain discovery from the Definers Defendants, the Pishevar Source and the Tech Reporter regarding the identity of the Confidential Source, *including document discovery and sworn depositions (and to follow any leads that such discovery provides).*

April 14, 2020 Opinion and Order (the "April Order") [ECF No. 77], p. 10 (emphasis added). The April Order further observed that, "[a]s he has done on two occasions in this Court, Petitioner can file applications under 28 U.S.C. § 1782 to obtain such discovery." *Id.*

On September 8, 2020, Pishevar filed the Renewed Application [ECF No. 87], which included affidavits from Kara Swisher ("Swisher" or the "Tech Reporter"), the Pishevar Source (whose identity Petitioner has not disclosed publicly due to the Pishevar Source's alleged political connections and reputational concerns) and Rhoades and Joseph Pounder ("Pounder"; together with Rhoades, the "Definers Affiants").[9]

---

[8] Given that the conversations detailed in the Pishevar Declaration precede the filing of the Application by almost two years, there is no excuse for Petitioner's failure to submit the Pishevar Declaration in support of the Application in the first instance.

[9] In response to Baram's opposition to the Renewed Motion, Petitioner also submitted the Affidavit of Mark Fabiani (the "Fabiani Affidavit" or "Fabiani Aff.") [ECF No. 97] in an effort to demonstrate that Fabiani lacked knowledge or information concerning the Forged Police Report. In fact, the Fabiani Affidavit discloses the names of two other journalists who received the Forged Police Report and contacted Fabiani for comment on it. Fabiani Aff., ¶10. Upon information and belief, Petitioner has not approached those journalists to determine if they possess relevant knowledge. In fact, both Petitioner and the Magistrate Judge assume that those journalists would invoke the reporter's privilege, even though it is not clear that they received the Forged Police Report on a confidential basis nor is it clear from whom they received it.

On October 3, 2020, Magistrate Judge Aaron issued the Order granting Pishevar's motion to supplement, amend, and/or renew the Application, and granting the Application. The Order acknowledged inconsistences between Pishevar's prior submissions in support of the Application and the affidavits submitted in the Renewed Application, but did not require Petitioner to provide clarification or engage in any subsequent discovery. Instead, the Order offered a series of assumptions that *may* explain the inconsistencies. Order, p. 7.

First, the Order observed that "statements made by laypersons in unsworn contexts *may* differ from statements made under oath." Order, p. 7 (emphasis added). Yet the Order provided no support for this statement, no application of it to the facts of this case, and still concluded that "any inconsistencies between [the] sworn and unsworn statements do not render the sworn statements untrue." *Id.*, pp. 7-8.

Next, the Order explained that "two persons to a conversation *may* have different recollections of what they said to one another." *Id.* (emphasis added). However, the Order does not provide any guidance as to how to judge the veracity of "different recollections," or how the contradictory sworn statements of Pishevar and Swisher should be weighed.

Finally, the Order determined that "*regardless of any inconsistences*, each of the witnesses is unequivocal that (s)he has no knowledge concerning the identity of the Confidential Source." *Id.*, p. 8 (emphasis added). Yet the identity of the Confidential Source is only one small part of Petitioner's broader investigation into the creation and distribution of the Forged Police Report. Mansueto and Baram have already produced all non-privileged "[d]ocuments and [c]ommunications in [their] possession, custody or control relating to the Forged Police Report." Petitioner has chosen not to follow that evidence where it may lead, now with the Magistrate Judge's implicit approval.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(a), "[a] party may serve and file objections to the order [of a magistrate judge] within 14 days after being served with a copy. . . . The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  The Rule 72(a) standard of review is deferential, and a magistrate judge's findings should be upheld unless there is "clear showing of an abuse of discretion." *In re DG Acquisition Corp.*, 151 75, 79 (2d Cir. 1998). "A district court abuses its discretion 'when (1) its decision rests on an error of law . . . or clearly erroneous factual finding, or (2) its decision-though not necessarily the product of legal error or a clearly erroneous factual finding-cannot be located within the range of permissible decisions.' " *Wilcox v. Cornell Univ.*, 2012 WL 4903181, at *1 (S.D.N.Y. Oct. 10, 2012) (quoting *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 164, 169 (2d Cir. 2001) (citations omitted)).  A court's discretion as to discovery orders is not limitless; the command that the court "in its discretion, [may] order discovery, does not mean that it is free to do so on inappropriate grounds." *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1097 (2d Cir. 1995) (reversing district court's denial of Section 1782 discovery because the district court, among other things "misapplied [Second Circuit] guiding precedents").

## ARGUMENT

I.   **THE OPINION SHOULD BE VACATED BECAUSE THE MAGISTRATE JUDGE DISREGARDED NUMEROUS INCONSISTENCIES AND OMISSIONS IN THE RENEWED APPLICATION THAT PETITIONER FAILED TO EXPLORE**

   A.   **The Inconsistences Between Swisher's Affidavit and Petitioner's Previous Submissions to the Court Remain Unexplained**

   In the Pishevar Declaration, Petitioner represented that Swisher told him that she "heard from a confidential source that [he] made a payment to settle a sexual assault claim in London

and had 'an incident with a prostitute in Europe.'" Pishevar Decl., ¶16.[10]  However, Swisher's

Affidavit in support of the Renewed Application denies knowledge of both the Payoff Allegation

and the Prostitute Allegation,[11] and re-characterizes Swisher's November 2017 conversation with

Petitioner as one concerning a euphemistic "bad date [that Petitioner had] in London" (the "Date

Allegation").  Swisher Aff., ¶¶6, 7.

The Swisher Affidavit provides no clarification as to the nature of Petitioner's "bad date

in London," or the relationship among the Date Allegation, the Payoff Allegation and the

Prostitute Allegation.  Yet the Order dismisses these inconsistences, opining that

"inconsistencies between sworn statements and unsworn statements do not render the sworn

statements untrue."  Order, p. 8.  In so holding, the Magistrate Judge contradicted the April

Order, in which he noted that Petitioner had "tools available to him to obtain discovery....*(and to*

*follow any leads that such discovery provides*)."  April Order, p. 10 (emphasis added).  Further,

the Order contravenes Second Circuit precedent permitting discovery of confidential sources

"only as a last resort."  *Giuffre*, 221 F. Supp. 3d at 480.  Ultimately, the fact that Swisher claims

a lack of specific knowledge concerning the Forged Police Report and the identity of Baram's

Confidential Source does not mean that she can provide no relevant evidence related to

Petitioner's investigation.

---

[10] The Pishevar Declaration itself lacks credibility on this point, because Petitioner attempts to draw a false distinction between the "sexual assault claim in London" that formed the basis of the Payoff Allegation, and the "rape allegation" for which Petitioner was arrested in London, of which Swisher "made no mention." *Id*

[11] Notably Swisher does not invoke the reporter's privilege, as Petitioner surmised that she would (*see* Pishevar Decl., ¶17).

**B.      The Order Does Not Address the Pishevar Source's Refusal to Cooperate With Petitioner's Investigation**

The Pishevar Declaration disclosed that Petitioner commenced the Definers Lawsuit based, in part, on the Pishevar Source's representation that Petitioner's "business opponents" had hired Definers to "take [him] down" (the "Smear Campaign").  Pishevar Decl., ¶14.  However, Petitioner dismissed the Definers Lawsuit when, among other things, the Pishevar Source was "unable to corroborate" the Smear Campaign and "communicated that, if subpoenaed, [he] would not support that claim." *Id.*, ¶26.

The Pishevar Declaration and the Pishevar Source Affidavit together make clear that the Pishevar Source has refused to voluntarily participate in Petitioner's investigation into the Smear Campaign, and that Petitioner has taken no steps to compel his cooperation, including those steps specifically mentioned by the Magistrate Judge in the April Order.   For instance, the Pishevar Source failed to respond to Petitioner's inquiries concerning the factual basis of the Smear Campaign allegations in December 2017, when Petitioner faced a motion to strike the Definers Lawsuit complaint. *Id.*, ¶24.  In connection with the Renewed Application, the Pishevar Source denied having "any information or knowledge about any purported 'smear campaign' against Mr. Pishevar…by any executive or employee of Definers Corp."  Pishevar Source Aff., ¶10. This suggests that Petitioner had no factual basis for commencing the Definers Lawsuit, and/or that the Pishevar Source's apparent concern with his "political ties and political work," and the risk of "harm [to his] reputation" stemming from his "involvement in this case," has led him to be circumspect with Petitioner.  *See* Pishevar Source Aff., ¶3.  The Order errs in sanctioning Petitioner's decision not to explore this possibility through a deposition or any other discovery device available to him, let alone to pursue any leads such investigation might generate.  This error is particularly egregious because, unlike Swisher and the other media sources identified by

the parties, the Pishevar Source has not claimed that any privilege bars his disclosure of relevant information.

**C.**   **The Order Accepted the Pounder and Rhoades Affidavits as "New" Evidence, When They Merely Rehashed Previous Evidence Considered by the Magistrate Judge**

The declarations submitted by Pounder and Rhoades on or about December 6, 2017 in the Definers Lawsuit, and specifically referenced by the Magistrate Judge in the February Order, contain identical statements that each declarant:  (1) "[did] not have and ha[d] never seen a police report or a purported police report involving Mr. Pishevar" [Pounder Decl., ¶13; Rhoades Decl., ¶13]; (2) "played [no] role in any campaign involving Mr. Pishevar including in the alleged campaign to 'smear' him" [*id.*, ¶4]; and (3) "[b]efore reading the [Definers Lawsuit] Complaint…had not read, heard or discussed with anyone that Mr. Pishevar…had been arrested for alleged sexual assault, [or] that he had paid money to settle a claim for sexual assault [Pounder Decl., ¶6; Rhoades Decl., ¶7].

The affidavits submitted by Pounder and Rhoades in support of the Renewed Application repeated and rephrased their previous denials of knowledge, and added that the Definers Affiants also lack knowledge as to the identity of Baram's Confidential Source.  These denials were implicit in the Definers Affiants' previous statements, and were relied upon by the Magistrate Judge in denying the Application initially and upon reconsideration.  *See* February Order, p. 22; April Order, p. 9.  Further, these blanket denials do not mean that the Definers Affiants possess no relevant information that may lead to evidence concerning the creation and dissemination of the Forged Police Report, as would be necessary to demonstrate exhaustion.  The Order did not consider this possibility, once it determined that "the [Definers Affiants] do not have information regarding the identity of the Confidential Source."  Order, p. 7 n.5.

II.     **THE ORDER SHOULD BE VACATED AND THE APPLICATION DENIED
         BECAUSE BOTH PETITIONER AND THE MAGISTRATE JUDGE IGNORED
         RELEVANT SOURCES OF EVIDENCE RELATING TO THE FORGED POLICE
         REPORT**

        The Order does not meaningfully address Respondent's argument that sources of relevant

evidence, other than those identified by the Magistrate Judge in the April Order, exist and must

be exhausted before Petitioner may invade Baram's reporter's privilege.  Instead, with respect to

the COLP, it relies on the Magistrate Judge's previous determination that "COLP personnel are

not an available source" because Petitioner allegedly made "extensive efforts to obtain

information from the COLP."  Order, p. 8.  With respect to other media sources, the Magistrate

Judge previously determined that they were not alternative sources of relevant information "due

to them also *likely* asserting the reporter's privilege."  February Order, p. 22 (emphasis added).

Finally, the Magistrate Judge has never addressed Respondent's argument that the true police

records hold relevant evidence related to the creation of the Forged Police Report.  The

Magistrate Judge's determination that Petitioner has reasonably exhausted other sources of

relevant evidence is in error.

        With respect to the COLP, Petitioner has not disclosed what steps he took to obtain

relevant evidence from personnel working in the Bishopsgate Police Station, where Petitioner

was detained.  The fact that Petitioner's English solicitors reached out to Mr. Brooks, whose

name appears on the Forged Police Report, only after oral argument, and that Petitioner has not

disclosed what, if any, effort, he made to obtain information about the COLP's "subsequent

investigation" into the Forged Police Report, which was referenced in Mr. Brooks' email

exchange with Petitioner's counsel [*see* ECF No. 57-2], undermines the Order's determination that Petitioner's efforts to exhaust the COLP as a source of relevant evidence were "extensive."

With respect to other media sources, including those identified in the Fabiani Affidavit, both Petitioner and the Magistrate Judge have accepted as a given that these sources would also invoke the reporter's privilege. However, neither Petitioner nor the Magistrate Judge offer any factual support for this assumption, and, notably, Petitioner's assumption that Swisher would invoke the reporter's privilege proved to be incorrect. *See* Pishevar Decl., ¶17). Petitioner should be required to exhaust these sources before returning to Baram.

Finally, the Forged Police Report itself is a key source of evidence that Petitioner has not explored. As set forth in the February 18, 2020 chart that Respondent's counsel submitted to the Court for *in camera* review, the Forged Police Report includes many details that line up with the true records of Petitioner's arrest and detention. However, Petitioner has dismissed this important avenue of inquiry out of hand. *See* Renewed Application, p. 17 ("The fabricated details in the Forged Police Report do not match up against the details of the arrest…"). The unwillingness of Petitioner and the Magistrate Judge to entertain this possibility is against the weight of the evidence.

## **CONCLUSION**

For all of the foregoing reasons, it is respectfully requested that this Court vacate the Order, deny the Application, and grant such other and further relief as the Court deems just and proper.

Dated:    October 19, 2020
          New York, New York

Respectfully submitted,

**MOSES & SINGER LLP**

By:  /s Megan Daneshrad_____
      Toby Butterfield
      Megan Daneshrad
405 Lexington Avenue, 12th Floor
New York, New York 10174
Tel:  (212) 554-7800
tbutterfield@mosessinger.com
mdaneshrad@mosessinger.com

*Attorneys for Respondent Marcus Baram*